**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Frederick J. Klorczyk III (State Bar. No. 320783)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ndeckant@bursor.com
          fklorczyk@bursor.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH JORDAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| WP COMPANY LLC, d/b/a THE WASHINGTON POST, | <u>**JURY TRIAL DEMANDED**</u> |
| Defendant. | |

Plaintiff Deborah Jordan brings this action on behalf of herself and all others similarly situated against Defendant WP Company LLC, d/b/a *The Washington Post* ("the Post," "WaPo," or "Defendant").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme with respect to its subscription plans[1] for *The Washington Post* (collectively, the "WaPo Subscriptions"), which Defendant markets sells through: (i) its website at https://www.washingtonpost.com (the "WaPo Website"); (ii) its mobile applications for iOS, Android, and set top devices (the "WaPo Apps"); and (iii) through the websites, applications, and platforms of certain third-party vendors, including but not limited to the Amazon marketplace, iTunes, Apple News, Google Play, and Google News (the "Vendor Websites").[2]  Defendant is an international media company that, among other activities, publishes and distributes *The Washington Post*, including both its print and online editions.  Relevant to Plaintiff's allegations, when consumers sign up for *The Washington Post*, Defendant actually enrolls consumers in a program that automatically renews customers' WaPo Subscriptions from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card or third party payment account (the "Payment Method").  In doing so, Defendant fails to provide the requisite disclosures and authorizations on the relevant pages of the WaPo Website, WaPo Apps, and

---

[1] The Post "offers two digital subscription packages," including: (1) the "All-Access Digital Subscription," and (2) the "Premium Digital Subscription."  *See* "Comparing subscription packages," *available at* https://helpcenter.washingtonpost.com/hc/en-us/articles/115000443968-Compare-subscription-packages.  Subscription options and pricing are available at https://subscribe.washingtonpost.com.

[2] The WaPo Subscriptions "can be used to read the [Post's] online edition on the web, or the on the go using The Washington Post's national app on iOS, Android and, of course, Amazon Fire devices."  *Amazon Prime Members Can Now Get The Washington Post Free For 6 Months*, TechCrunch (Sep. 16, 2015), *available at* https://techcrunch.com/2015/09/16/amazon-prime-members-can-now-get-the-washington-post-for-free-for-6-months/?guccounter=1.  *See also* https://www.amazon.com/The-Washington-Post-Digital-Access/dp/B072MHQFJ1 ("Your Basic Digital subscription to The Washington Post includes access to all website content and all Washington Post apps. … Buy here on Amazon.com and enjoy on any supported Apple, Android, Fire or other device.").

Vendor Websites, which are required to be made to California consumers under California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*.

2.    Pursuant to the ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (a) obtain affirmative consent prior to the consumer's purchase; (b) provide the complete auto-renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase; and (c) provide an acknowledgment identifying an easy and efficient mechanism for consumers to cancel their subscriptions.  As will be discussed below, the enrollment process for the WaPo Subscriptions, which can be completed through the WaPo Website, WaPo Apps, and/or Vendor Websites, uniformly violates each of these requirements.  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their WaPo Subscriptions.

3.    Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 17602(a)(3) and 17602(b).  Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b).  As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" under the ARL. Cal. Bus. & Prof. Code § 17603.

4.    Accordingly, Plaintiff brings this action individually and on behalf of all California purchasers of any of Defendant's WaPo Subscription offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their WaPo Subscriptions.  Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys'

fees and costs, for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (ii) conversion; (iii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (iv) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (v) unjust enrichment/restitution; (vi) negligent misrepresentation; and (vii) fraud.

## THE PARTIES

5.      Plaintiff Deborah Jordan is a citizen of California, residing in Hercules, California. In or around 2018, Ms. Jordan signed up for a free trial of Defendant's monthly digital subscription to *The Washington Post* while in California.  At the time of enrollment, Ms. Jordan was not aware that, upon the expiration of Ms. Jordan's free trial subscription, Defendant would automatically convert her free trial into a paid, automatically renewing subscription.  During the enrollment process, but before finally consenting to Defendant's subscription offering, Ms. Jordan provided her Payment Method information directly to Defendant.  At the time Ms. Jordan enrolled in her WaPo Subscription, Defendant did not disclose to Ms. Jordan all required automatic renewal offer terms associated with the subscription program or obtain Ms. Jordan's affirmative consent to those terms.  Further, after Ms. Jordan completed her initial order, Defendant sent Ms. Jordan an acknowledgment email that failed to provide Ms. Jordan with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Jordan's WaPo Subscription in a manner capable of being retained by her.  Ms. Jordan did not receive any other acknowledgment that contained the required information.  After she first signed up for her WaPo Subscription on a free trial basis, Defendant automatically renewed Ms. Jordan's WaPo Subscription and charged Ms. Jordan's Payment Method the full standard monthly rate associated with the basic paid digital WaPo Subscription in or around June 2018.  Thereafter, Defendant continued to automatically renew Ms. Jordan's WaPo Subscription on a monthly basis, charging her Payment Method an additional seven times, for a total of eight unauthorized charges amounting to $80.00 to Ms. Jordan's Payment Method.  Ultimately, Ms. Jordan emailed Defendant in or around January 2019 to notify Defendant that she did not authorize – and to request a refund of – the additional monthly charges.

However, Defendant denied Ms. Jordan's refund request.  Defendant's inadequate disclosures and refusal to issue a refund are contrary to the ARL, which deems products provided in violation of the statute to be a gift to consumers.  Cal. Bus. & Prof. Code § 17603.  Had Defendant complied with the ARL, Ms. Jordan would have been able to read and review the pertinent automatic renewal terms prior to enrollment and purchase, and she would have not subscribed to *The Washington Post* or she would have cancelled her WaPo Subscription earlier, *i.e.*, prior to the expiration of the initial free trial period.  As a direct result of Defendant's violations of the ARL, Ms. Jordan suffered, and continues to suffer, economic injury.

6.      Defendant WP Company LLC, d/b/a *The Washington Post* ("the Post" or "Defendant") is a privately-owned District of Columbia limited liability company with its principal place of business at 1301 K Street NW, Washington, D.C. 20071.  The Post is a leading newspaper that publishes *The Washington Post*, including both its print and online editions, which it markets to consumers through the WaPo Website[3] and Apps, among other third-party vendor and affiliate websites and applications.  Defendant is also responsible for the promotion, advertisement, and/or marketing of the automatically renewing subscription plans for *The Washington Post*, and it owns and operates the WaPo Website and Apps, where it markets and sells its WaPo Subscriptions.  Defendant sells WaPo Subscriptions in California and has done business throughout California and throughout the United States at all times during the Class Period.  Defendant also made automatic renewal or continuous service offers to consumers in California and throughout the United States via the WaPo Website and Apps during the Class Period.

7.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

---

[3] Note that "[i]n January 2020, more than 87.9 million people visited The Washington Post online," according to independent auditor Comscore.  *Nearly 88 million people visited The Washignton Post online in January 2020*, WashPost PR Blog (Feb. 19, 2020), *available at* https://www.washingtonpost.com/pr/2020/02/19/nearly-88-million-people-visited-washington-post-online-january-2020/.

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

9.     This Court has personal jurisdiction over Defendant.  Defendant does business in California and has sufficient minimum contacts with this state, including within this District, and/or has otherwise intentionally availed itself of the California consumer market through the promotion, marketing, and sale of its products and/or services to residents within this District and throughout California.  Additionally, Plaintiff purchased her WaPo Subscription from Defendant while in California.

10.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also, Plaintiff resides in this District and purchased Defendant's WaPo Subscription in this District.  Moreover, Defendant distributed, advertised, and sold the WaPo Subscriptions to the members of the Class, which is the subject of the present complaint, in this District.

**FACTUAL BACKGROUND**

**A.     Background On The Subscription e-Commerce Market**

11.     The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[4]  Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years.  According to TechCrunch.com, "[s]ubscriptions have turned into a booming business for app developers, accounting for $10.6 billion in consumer spend on the App

---

[4] *See* https://www.coredna.com/blogs/ecommerce-subscription-services.

Store in 2017, and are poised to grow to $75.7 billion by 2022."[5]  Subscription e-commerce

services now target a wide range of customers and cater to a variety of specific interests.

12.    In 2013, Amazon CEO Jeff Bezos bought the Post for $250 million,[6] and, with

Bezos at the helm, Defendant launched the subscription model that same year, placing its digital

content behind a paywall after having previously allowed unrestricted access in an effort to "shift

[its] strategy [away from bolstering ad revenue and] toward increasing reader revenue."[7]  Since

then, the Post "has been focused on signing up as many paying subscribers as possible,"[8] and its

focus has paid off in large part.  Since 2013, Defendant has been able to affect large growth in its

digital subscriber-base "through a comprehensive distribution strategy involving a massive push

through [social media platforms,] … a free 6-month trial subscription through Amazon prime,"[9]

and "a presentation for some types of material that clearly seems aimed at maximizing shares and

eyeballs."[10]  Defendant has thus been enjoying positive results at a time when newspapers

nationwide have been suffering.

---

[5] *Sneaky subscriptions are plaguing the App Store*, TechCrunch (Oct. 15, 2018),
https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[6] *See Bezos Finally Closes Sale On The Washington Post*, TechCrunch (Oct. 2, 2013), *available at*
https://techcrunch.com/2013/10/02/bezos-finally-closes-sale-on-the-washington-
post/?_ga=2.110071301.1080152057.1594753155-752401854.1594753155.

[7] *Washington Post puts emphasis on creating paths to subscription*, WAN-IFRA (Jul. 30, 2018),
*available at* https://blog.wan-ifra.org/2018/07/30/washington-post-puts-emphasis-on-creating-
paths-to-subscription (quoting Miki Toliver King, Vice President of Marketing at *The Washington
Post*).

[8] *Washington Post digital subscriptions soar past 1 million mark*, CNNMoney (Sep. 26, 2017),
*available at* https://money.cnn.com/2017/09/26/media/washington-post-digital-
subscriptions/index.html; *see also How The Washington Post is reorienting for digital
subscriptions*, Digiday (Nov. 29, 2018), *available at* https://digiday.com/media/washington-post-
digital-subscriptions-reorienting/ ("'Publishers focused on building a subscriber base need
someone who can connect marketing, technology and audience together.'  That shift has been
pronounced ***at the Post, where everything, including its advertising innovations, must be weighed
against the publisher's pursuit of subscriber growth***.") (emphasis added); *Bezos, The Digital
Midas. Turning Around the Washington Post*, HBS Digital Initiative (Feb. 1, 2018), *available at*
https://digital.hbs.edu/platform-digit/submission/bezos-the-digital-midas-turning-around-the-
washington-post/#_ftnref5 (noting the Post's "emphasis on building its paid subscriber base").

[9] *Bezos, The Digital Midas. Turning Around the Washington Post*, HBS Digital Initiative (Feb. 1,
2018), *available at* https://digital.hbs.edu/platform-digit/submission/bezos-the-digital-midas-
turning-around-the-washington-post/#_ftnref5 (internal footnotes omitted).

[10] *The Bezos Effect: How Amazon's Founder Is Reinventing* The Washington Post *– and What
Lessons It Might Hold for the Beleaguered Newspaper Business*, Harvard Kennedy School,

13.     The production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to Forbes, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[11]

14.     However, there are downsides associated with the subscription-based business model.  While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[12]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[13]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[14]  As these companies have realized, "[t]he real money is in the inertia."[15]  To facilitate consumer inertia, several subscription e-commerce companies, including Defendant, fail to fully disclose the terms of their automatic-renewal programs.

---

Shorenstein Center (Jun. 8, 2016), *available at* https://shorensteincenter.org/bezos-effect-washington-post/#_ftnref25.

[11] *The State Of The Subscription Economy, 2018*, Forbes (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[12] *Thinking inside the subscription box: New research on e-commerce consumers*, McKinsey & Company (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[13] *Id.*

[14] *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets*, Washington Post (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[15] *Id.*

15. Defendant has successfully implemented this tactic. From 2015-2016, the Post's digital subscriber-base grew by 145%.[16] In terms of digital views, the Post first eclipsed its leading competitor, *The New York Times*, in November of 2015.[17] Subsequently, the Post's lead "continued to widen as the Washington Post has been able to make massive digital view gains month over month, translating to large growth in digital subscriptions as well."[18] In fact, the Fiscal Year of 2017 marked "a milestone in [the Post's] transition from being a local print newspaper to a national news website."[19] In September 2017, the Post's publisher Fred Ryan revealed in an internal memo that the Post had "'crossed the 1 million mark for paid digital-only subscribers'" earlier that year.[20] According to Ryan, the Post's "growth [in 2017 was] exceptionally strong, with digital-only subscriptions more than doubling since January 1[, 2017, and] … more than tripl[ing] since [September 2016]."[21] Then, "[i]n December 2018, another internal memo noted the Post had passed 1.5 million" digital subscribers.[22] Since then, by all indications, the Post's subscriber-base has continued to grow. According to one media business analyst for the Poynter Institute, although

---

[16] *See Bezos, The Digital Midas. Turning Around the Washington Post*, HBS Digital Initiative (Feb. 1, 2018), *available at* https://digital.hbs.edu/platform-digit/submission/bezos-the-digital-midas-turning-around-the-washington-post/#_ftnref5.

[17] *Id.*; *see also Washington Post tops New York Times online for the first time ever*, Digiday (Nov. 13, 2015), *available at* https://digiday.com/media/comscore-washington-post-tops-new-york-times-online-first-time-ever/.

[18] *Bezos, The Digital Midas. Turning Around the Washington Post*, HBS Digital Initiative (Feb. 1, 2018), *available at* https://digital.hbs.edu/platform-digit/submission/bezos-the-digital-midas-turning-around-the-washington-post/#_ftnref5; *see also A few figures and facts about the Washington Post's digital transition under Jeff Bezos*, NiemanLab (Jun. 28, 2016), *available at* https://www.niemanlab.org/2016/06/a-few-figures-and-facts-about-the-washington-posts-digital-transition-under-jeff-bezos/ ("[In 2016, t]he Post's tablet app [] reportedly reached 100,000 paid subscribers, making it 'the Post's biggest digital success story by far.'").

[19] *Washington Post digital subscriptions soar past 1 million mark*, CNNMoney (Sep. 26, 2017), *available at* https://money.cnn.com/2017/09/26/media/washington-post-digital-subscriptions/index.html.

[20] *Id.*

[21] *Id.*

[22] *The Wall Street Journal joins The New York Times in the 2 million digital subscriber club*, Nieman Lab (Feb. 10, 2020), *available at* https://www.niemanlab.org/2020/02/the-wall-street-journal-joins-the-new-york-times-in-the-2-million-digital-subscriber-club/.

---

the "privately owned Post does not report its figures[,] a reasonable estimate [of the Post's paid subscriber-base in 2020] is 2 million."[23]





---

[23] *The New York Times and Washington Post each draw more paid digital readers than all local websites, a new report found*, Poynter Institute (Jun. 15, 2020), *available at* https://www.poynter.org/business-work/2020/the-new-york-times-and-washington-post-each-draw-more-paid-digital-readers-than-all-local-websites-a-new-report-found/.

  *See also The Washington Post Digital Subscriptions Strategy* (2017), *at* https://blog.wan-ifra.org/sites/default/files/field_blog_entry_file/Miki%20Toliver%20King_Reader%20Revenue%20-%20World%20News%20Media%20Congress%202018_compressed.pdf.



**wp** | Retention

## Increasing Subscriber Retention

**Monthly**
15- Month Retention Rate

**+6%**

from 6 Months Ago

**Annual**
15- Month Retention Rate

**+12%**

from 6 Months Ago

Source: The Washington Post – Digital Subscribers Database

**B.     Online Consumer Complaints About The WaPo Subscriptions**

16.      Defendant's recent growth in revenue and subscriber count with respect to its digital WaPo Subscriptions coincides with a sharp decline in subscriber satisfaction as the WaPo Website and Apps have become riddled with "dark patterns."  A dark pattern is "a user interface carefully crafted to trick users into doing things they might not otherwise do, such as … signing up for recurring bills."[24]  Indeed, one consumer complaint indicates that Defendant has been using various dark patterns to prevent user unsubscription from the WaPo Subscriptions by adopting complex cancellation procedures to increase the friction in the subscription cancellation process on the WaPo/Vendor Websites and Apps.[25]  For instance, one complaint notes that the WaPo Website "has a confusing checkbox when unsubscribing that makes it unclear whether or not the user is unsubscribing from a service."[26]  This is an example of several dark pattern strategies at work, including "interface interference,"[27] which involves "[m]anipulation of the user interface that

---

[24] *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull (PhD Cognitive Science), who coined the term "Dark Patters" in August 2010).

[25] *See, e.g., Washington Post: Confusing Checkbox When Unsubscribing*, UXP2 Lab, *available at* https://darkpatterns.uxp2.com/pattern/washington-post-confusing-checkbox-when-unsubscribing/.

[26] *Id.*

[27] *Id.*  Specifically, in this case, the WaPo Website features "aesthetic manipulation" and "Brignull's 'Trick Questions'" – two of the three main subtypes interface interference.  *Id; see also* https://darkpatterns.uxp2.com/patterns-2/interface-interference/  ("[Brignull's 'Trick Questions'

privileges certain actions over others, thereby confusing the user or limiting discoverability of important action possibilities[,]"[28] and "obstruction," which involves "[m]aking a process more difficult than it needs to be, with the intent of dissuading certain action(s)."[29]  Other types of dark patterns featured on the WaPo Website include but are not limited to "roach motel,"[30] "misdirection,"[31] and "forced continuity."[32]  Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully disclose the terms of their automatic-renewal programs (discussed further below) – has led to a reduction in churn rates by making it next to impossible for subscribers to cancel their WaPo Subscriptions.  It has further led to an increase in accidental or unintentional sign-ups by consumers for paid WaPo Subscription plans, in effect increasing subscriber count and, thus, Defendant's overall revenue from renewal fees.

17.     Defendant's conduct has drawn the attention and ire of customers across the country, with countless angry customers taking to the Internet to voice their discontent over Defendant's broken promises.  For instance, numerous subscribers to *The Washington Post* have left scathing reviews on Amazon.com:[33]

---

i]nclude[] a question that uses confusing wording, double negatives, or otherwise confusing or leading language to manipulate user interactions. Appears to be one thing, but is actually another. One common example of this tactic is the use of checkboxes to opt out rather than opt in, often paired with confusing double negatives.").

[28] *The dark side of UX Design*, UXP2 Lab, *available at* https://darkpatterns.uxp2.com.

[29] *Washington Post: Confusing Checkbox When Unsubscribing*, UXP2 Lab, *available at* https://darkpatterns.uxp2.com/pattern/washington-post-confusing-checkbox-when-unsubscribing/.

[30] "Roach motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)." https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

[31] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another."  In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening."  https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[32] One example of "forced continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning.  [The subscriber is] are then not given an easy way to cancel the automatic renewal."  https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

[33] *See* https://www.amazon.com/The-Washington-Post-Digital-Access/product-reviews/B072MHQFJ1.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28


**Karen R.**

★☆☆☆☆ **Terrible**
Reviewed in the United States on June 21, 2020
Plan Option: Basic Digital

Terrible. Try to read and pop up tells me to sign in although I am signed in. I am trying to cancel, can not find any option to cancel anywhere on Amazon App


**Annagrammer**

★☆☆☆☆ **Kept getting charged**
Reviewed in the United States on August 11, 2019
Plan Option: Basic Digital   |   Verified Purchase

Kept getting charged well after cancelling- a subscription nightmare


**John A**

★☆☆☆☆ **Washington Post**
Reviewed in the United States on December 19, 2019
Plan Option: Basic Digital   |   Verified Purchase

I tracked down this order from my credit account. While Mr Bezos, Amazon and even the Washington Post have good thoughts from me I do not know how this order came about. It is quite a job to cancel. It is much easier to not order anything than to try to cancel it.


**canyonkid**

★☆☆☆☆ **Don't do it!**
Reviewed in the United States on August 6, 2019
Plan Option: Basic Digital   |   Verified Purchase

I keep cancelling, and they keep charging me. Don't it's infuriating, and I don't have the time to jump through their hoops over and over again, so they keep stealing my money. Buy the print edition or something, but don't give them access to your Paypal or credit card info.


**joe cook**

★☆☆☆☆ **Almost impossible to cancel membership**
Reviewed in the United States on March 11, 2019
Plan Option: Basic Digital

I did not use the product often so I decided to cancel. Being that it was so easy to sign up, I thought that it would be easy to cancel membership/Autodraft. I first logged onto the webpage. I navigated through all links and tabs only to find out that it could only be canceled by phone. Being that it was the weekend and the customer care center was closed, I had to wait until Monday to talk to a customer service rep. Once I got on the phone with the rep it took exactly 7 minutes to cancel the membership. The lady kept on trying to sell me


**Oliver Ignacio**

★☆☆☆☆ **Subscription renewal?**
Reviewed in the United States on January 7, 2019
Plan Option: Basic Digital   |   Verified Purchase

I'd like to know how I was charged for this since I only did a trial for this only with no intent of renewing it. Can you please explain?





18.   Other subscribers to *The Washington Post* left similar complaints on the Apple App Store's download page for the WaPo Apps:[34]





**How to cancel a subscription?**                    2y ago
★☆☆☆☆                                              3DOTCONDOR

It's far to difficult to cancel a subscription!!
The process is one that a "not so legitimate
outfit" would use!!
If Jeff knows how it works, shame on him! If he
doesn't know how it works, still, shame on him!
Needless to say, I'm very disappointed in him!!

**Refuse to cancel my subscription**               2y ago
★☆☆☆☆                                      first app rating ever

I signed up for a free trial through amazon and
canceled shortly after. WaPo has been charging
me every month ever since. I have called
multiple times to cancel and they say no
subscription can be found. My login still works
so I know its not a third party charging me. This
has been going on for about six to eight months.

**Subscription**                                     1y ago
★☆☆☆☆                                     didpleasedincolorado

The only thing that works in this app is the
monthly charge. I've never been able to sign in
or cancel charges.

**No customer service**                              2y ago
★☆☆☆☆                                       PrettyPhotograph

You can't manage the subscription or visit the
'help center' because they don't exist,
apparently. There's no way to kill the
subscription. I didn't know I'd have to be a lifer.

**Never works**                                      2y ago
★☆☆☆☆                                               dom r.

Ordeal of preposterous magnitude. Idiotic mix
between kindle web & iOS app options ensures
IT NEVER WORKS. Been subscribed & paying for
months without ever able to use app & waiting
on phone for tech support

**Subscription**                                     2y ago
★☆☆☆☆                                           Mary 5653

Make payment every month and I continue to
have a problem logging in. Never get through.
Want to cancel but can't get through. Will
contact credit card company
To stop payments.

**No way to cancel**                                 1y ago
★☆☆☆☆                                             Branbenj

I have been trying to cancel for months and
can't seem to find the right way to stop being
charged for this paper I don't read at all. Seems
to me the free trial is a way to get you in as there
is no exit. Hotel California much. 6months worth
of money gone.

**Cancelling is a nightmare**                        2y ago
★☆☆☆☆                                           Dknyc425

Was not reading as much as I thought I would.
No way to easily cancel in the app. Have to call
and jump through a lot of hoops to get a person
on the phone to cancel the subscription. Then, a
month later, they charged me again, so now I
have to call and deal with all that again.

I will NEVER re-subscribe.

**Impossible to cancel**                             2y ago
★☆☆☆☆                                             Titus412

Once you subscribe you will have to jump
through so many hoops to cancel that you will
lose money before you are able to.

**REALLY**                                           2y ago
★☆☆☆☆                                             Jacarley

Just want to unsubscribe. Not possible. Emails,
calls. Problems.  Beating around the bush. What
is going on? Currently I am being double booked
from Credit Card and can't reach a real person.
This has been going on for weeks. Fed up.

**Taking my money without permission...**           2y ago
★☆☆☆☆                                             Pink egg

I am sick and tired of the Washington post
stealing money from my account without my
authorization. I have authorized payment in the
past for a couple of months service quite some
time ago and had cancelled the subscription.
Obviously WP has ignored my request. THIS IS
StEALING.
I put money into my I tunes account to purchase
music and apps of my choosing.  I did not
authorize this purchase. I would never purchase
anything else.  Ever.    This is fraud.  RETURN
MY MONEY.    BOYCOTT THE WASHINGTON
POST

**Too hard to cancel**                               3y ago
★☆☆☆☆                                             DCpuzzler

Used to be you could cancel your subscription
online, or stop it indefinitely. No more! You have
to call customer service Monday-Friday only,
during East Coast business hours. Imagine my
surprise when I learned the customer service
rep I was speaking to was in Asia. Definitely not
business hours there! They try really hard to get
you to keep at least your online subscription.
Sorry, Wapo. You lost me. I'm buying the NYT
from the newsstand now. Any service that's a
good value doesn't need to make cancelling
difficult.

19.     WaPo digital subscribers also complained of the unclear billing practices and confusing cancellation policy associated with the WaPo Subscriptions on the "Washington Post Customer Service" webpage at CustomerServiceScoreboard.com:[35]

**Posted by Anonymous** 🚩

**01 Jun**   *6/1/20 12:02PM*

I paid $1 for one month of the Washington Post online. I never intended to subscribe. I saw nothing that would have indicated that I was signing up for the long term, but was nevertheless charged for two additional months. It only stopped because I cancelled my subscription (I hope)!

When I called to complain and ask for my $20 back, the customer service rep. argued with me that I signed up willingly and should have known that to stop a subscription after one month I had to call the Post. He refused to believe that I saw no such "clear" statement that I was signing up with my $1 for an ongoing subscription. I will never read the Washington Post again.

**Posted by winfishh** 🚩

**27 Nov**   *11/27/17 9:00AM*

After trying to get some help from Washington Post Customer Service for FOUR days, I'm wondering how this 'service' even got ONE star. It's shocking that a newspaper of this stature has such inept customer service. I subscribed to a digital subscription, for which I am paying. However, I can't access Washington Post content. I have called WaPo customer service, (always in the Philippines with someone who doesn't speak understandable English, only to be disconnected, 'transferred' to someone who never answers the transfer, or put on hold so long I finally hang up. This is a big waste of my time. Why is Customer Service at WaPo so incompetent?

**Posted by RHEA** 🚩

**07 Jul**   *7/7/16 7:01AM*

I've tried multiple times in the last week, at different hours, to reach the Washington, DC accounting office of the Washington Post newspaper, and, if I reach any live person, he/she is in the Philippines. This is a billing problem that has to be corrected at the source: billing for multiple accounts for which I don't subscribe; attempted corrections that resulted in new accounts being opened; no delivery on an account I give someone as a gift, although I get bills for that, too; and, NO LIVE PERSON AT THE WASHINGTON OFFICE, NOT EVEN A CHAT ROOM, AND NOBODY CALLS BACK.

20.     Yet more unhappy subscribers left negative reviews on the Better Business Bureau website:[36]



Karina
⭐☆☆☆☆                                                      08/26/2018

I attempted to email 4 times/ I have called 4 times each time I was told the savings now would be cancel . I get these paper every week . My first attempt was April 28,2018 . We are now pushing into September 2018 with no resolution . Poor customer service now sure what part of cancel do they not understad? The person who had signed up for the

---

[35] *See* https://www.customerservicescoreboard.com/Washington+Post.

[36] *See* https://www.bbb.org/us/dc/washington/profile/newspaper/the-washington-post-0241-18576.



Patricia W
★☆☆☆☆                                                    01/28/2020

How do I cancel this paper? I call, I email and my subscription is still active. There is no
way to remove your credit card so they can't hit it again. I was quoted a price of $24 for 8

21.     The above reviews are just a sampling of numerous negative reviews consumers

have left about Defendant's WaPo Subscriptions and the unclear cancellations policy and

confusing billing practices associated with the Subscriptions.

### C.     California's Automatic Renewal Law

22.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"),

Cal. Bus. & Prof. Code §§ 17600, *et seq*., with the intent to "end the practice of ongoing charging

of consumer credit or debit cards or third party payment accounts without the consumers' explicit

consent for ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. & Prof.

Code § 17600 (statement of legislative intent).  More recently, in 2018, California's Senate Bill

313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer

protections for, among other things, orders that contain free trial and promotional pricing, and

subscription agreements entered into online.

23.     The ARL makes it "unlawful for any business making an automatic renewal or

continuous service offer to a consumer in this state to do any of the following:"

> (1)  Fail to present the automatic renewal offer terms or continuous
> service offer terms in a clear and conspicuous manner before the
> subscription or purchasing agreement is fulfilled and in visual
> proximity, or in the case of an offer conveyed by voice, in temporal
> proximity, to the request for consent to the offer.  If the offer also
> includes a free gift or trial, the offer shall include a clear and
> conspicuous explanation of the price that will be charged after the
> trial ends or the manner in which the subscription or purchasing
> agreement pricing will change upon conclusion of the trial.
>
> (2)  Charge the consumer's credit or debit card, or the consumer's
> account with a third party, for an automatic renewal or continuous
> service without first obtaining the consumer's affirmative consent to
> the agreement containing the automatic renewal offer terms or
> continuous service offer terms, including the terms of an automatic
> renewal offer or continuous service offer that is made at a
> promotional or discounted price for a limited period of time.
>
> (3)  Fail to provide an acknowledgment that includes the automatic
> renewal offer terms or continuous service offer terms, cancellation

> policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

24.     Section 17602(b) of the ARL further provides:

> A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(b).

25.     Additionally, following the 2018 amendment to the ARL, the updated law requires e-commerce sellers doing business in California to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(c) provides:

> [A] consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service *exclusively online*, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

Cal. Bus. & Prof. Code § 17602(c) (emphasis added).  The updated ARL also requires a seller who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged.  Sellers must also explain the price to be charged when the promotion or free trial ends.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *Id.*

26.     Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

27.     Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures:  (1) That the subscription or purchasing

agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 17601(b).

28.     Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601(c).

29.     Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent," the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business."  Cal. Bus. & Prof. Code § 17603.

30.     As alleged below, Defendant's practices on the WaPo/Vendor Websites and Apps systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the ARL.

**D.      Defendant's Business: The Subscription Enrollment Process**

31.     At all relevant times, Defendant offered, via the WaPo/Vendor Websites and Apps, various WaPo Subscriptions for *The Washington Post*, a news publication available in digital and print formats.  Defendant offers the paid WaPo Subscriptions on a recurring basis for monthly and/or yearly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels.  For example, customers that sign up for a *monthly* WaPo Subscription are, at the end of the initial one-year period, automatically renewed and charged the full amount for the next month, and every month thereafter if they do not cancel.  Similarly,

customers enrolled in a *yearly* WaPo Subscription are, after the initial one-year term, automatically charged the full amount for the subsequent year, and every year thereafter if they do not cancel. Defendant's monthly and yearly WaPo Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

32.     Consumers can sign up for one of Defendant's subscription plans through the WaPo Website, on either its mobile or desktop format, through Defendant's various mobile and set top television applications, or through certain third-party vendor websites, such as that of Amazon Prime.  In all cases, Defendant provides various monthly and/or yearly subscription plans, as shown in the screen shots below:[37]



[37] These screen shots were captured from the WaPo Website on June 24, 2020.  While the prices contained therein accurately reflect the costs associated with the various WaPo Subscriptions as of that date, exact costs on other dates may vary based on the pricing structure in place on the date of purchase and the availability of a promotional discount offer at that time, among other factors.

1

2   33.   After selecting a subscription option, consumers are directed to a subsequent, final

3   webpage on the WaPo Websites and/or Apps (the "Checkout Page") where they are prompted to

4   input their contact and billing information, and then are invited to complete their purchases.  On

5   the Checkout Page, potentially relevant information regarding the automatic renewal offer terms

6   associated with the WaPo Subscriptions is featured in the block of text located immediately above

7   the "Start your subscription" button.  This block of text contains the following language:

8

9

10

11

12

13

14

15

16

17

18

19

20  

21

22

23

24

25

26

27

28

34.     Regardless of how the consumer subscribes (via the WaPo Website, on their mobile or desktop formats, through the WaPo Apps, or through a Vendor Website) or which WaPo Subscription plan the consumer selects, Defendant fails to disclose the full terms of its auto-renewal program either before or after checkout, and it never requires the individual to read or affirmatively agree to any terms of service, *i.e.*, by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for WaPo Subscriptions.  Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – its subscribers before charging consumers' Payment Methods on a recurring basis.

**E.     Defendant Violates California's Automatic Renewal Law**

35.     At all relevant times, Defendant failed to comply with the ARL in three ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant charged Plaintiff's and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).

i.     <u>**Defendant Fails To Clearly And Conspicuously Present The WaPo Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**</u>

36.     First, the relevant portion of the Checkout Page does not present the complete "automatic renewal offer terms," as defined by Cal. Bus. & Prof. Code §17601(b), in violation of Section 17602(a)(1) of the ARL.  Specifically, Defendant fails to present a complete "description of the cancellation policy that applies to the offer."  Cal. Bus. & Prof. Code § 17601(b)(2).  With respect to cancellation, the relevant portion of the Checkout Page states: "You can <u>cancel at any</u>

time by selecting 'Cancel Subscription' in your account settings." However, the Checkout Page contains no explanation of *how* to cancel. For example, the Checkout Page does not mention that subscribers can "view the date of [their] next scheduled payment" – as well as generally cancel their WaPo Subscriptions – by visiting [the WaPo W]ebsite and clicking on the 'My Account' link."[38]

37.     Even more crucially, the Checkout Page fails to disclose that the method of cancellation available to a particular consumer varies depending on the medium through which that consumer initially purchased and/or enrolled in her WaPo Subscription. For instance, it does not disclose that those who purchased their digital only WaPo Subscriptions directly through the WaPo Website "can go to [their] Account Profile to cancel," while subscribers who signed up through the WaPo Apps and Vendor Websites must cancel by contacting the Customer Representatives of those mediums in order to cancel their WaPo Subscriptions, which they can do through certain webpages on Vendor Websites or by calling various toll-free numbers during particular hours set forth on other pages of the WaPo Website.[39]

38.     Additionally, the Checkout Page does not state that the consumer "must cancel [her] subscription before it renews each Billing Period to avoid billing of the next Billing Period's subscription fees to [her] Payment Method,"[40] or that "when [the subscriber] cancel[s], [she] cancel[s] only future charges associated with [her] subscription, and [she] will not receive a refund

---

[38] "Terms of Sale for Digital Products" (last updated Jun. 4, 2018), *available at* https://www.washingtonpost.com/terms-of-sale-for-digital-products/2014/05/06/b7763844-cbf9-11e3-93eb-6c0037dde2ad_story.html [hereinafter "*Terms of Sale*"].

[39] *See* "How to cancel your digital only subscription[,]" *available at* https://helpcenter.washingtonpost.com/hc/en-us/articles/360000177571-How-to-cancel-your-digital-only-subscription.

[40] *Terms of Sale, available at* https://www.washingtonpost.com/terms-of-sale-for-digital-products/2014/05/06/b7763844-cbf9-11e3-93eb-6c0037dde2ad_story.html.

Note that *Terms of Sale* is itself contradictory as to this deadline. *See id.* ("***We automatically bill your Payment Method on the <u>last day of each Billing Period</u>***. We reserve the right to change the timing of our billing[.]") (emphasis added); *but cf. id.* ("We will charge the subscription fee at the commencement of your subscription or, if applicable, at the end of your free trial period, and ***automatically on <u>the first calendar day of each Billing Period</u>*** thereafter unless and until your subscription is cancelled.") (emphasis added).

for the current Billing Period," as is set forth on the "Terms of Sale for Digital Products" Page.[41] Defendant therefore failed to place consumers on notice of these aspects of Defendant's cancellation policy in accordance with statute because the ARL requires that companies provide such information "in visual proximity to the request for consent to the [automatic renewal] offer," and in this case Defendant has failed to do so.  Cal. Bus. & Prof. Code § 17602(a)(1).

39.    Defendant therefore fails to present pertinent information regarding cancellation "before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," as the ARL requires.  Cal. Bus. & Prof. Code § 17602(a)(1).

**ii.    Defendant Fails To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With The WaPo Subscriptions.**

40.    Second, at no point during the checkout process does Defendant require consumers to read or affirmatively agree to any terms of service associated with the WaPo Subscriptions, *i.e.*, by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process.  Accordingly, when Defendant automatically renews customers' WaPo Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

**iii.    Defendant Fails To Provide A Post-Checkout Acknowledgment That Includes Clear And Conspicuous Disclosures Of Required WaPo Subscription Offer Terms.**

41.    Finally, after Plaintiff and the members of the Class subscribed to one of Defendant's WaPo Subscription plans, Defendant sent to Plaintiff and the Class email follow-ups regarding their purchases.  The acknowledgment emails contain even less of the required information than is featured on the relevant portion of the Checkout Page, discussed above. Namely, the purchase confirmations do not provide:  that the WaPo Subscription "will continue until the consumer cancels," Cal. Bus. & Prof. Code § 17602(b)(1); a "description of the cancellation policy that applies to the offer," Cal. Bus. & Prof. Code § 17602(b)(2); or a statement

---

[41] *Id.*

of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change[, and,] if that is the case, and the amount to which the charge will change," Cal. Bus. & Prof. Code § 17602(b)(3).  As such, the acknowledgment fails to "include[] the automatic renewal offer terms … , cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer" in violation of Section 17602(a)(3) of the ARL.

42.     By and through these actions, Defendant has charged Plaintiff's and Class members' Payment Methods in direct violation of the ARL.  As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

## **PLAINTIFF'S INDIVIDUAL ALLEGATIONS**

43.     Plaintiff Deborah Jordan is an individual consumer who signed up for a monthly digital WaPo Subscription while in California in or about 2018.  At the time of enrollment, Ms. Jordan provided her Payment Method information directly to Defendant.

44.     Before Ms. Jordan purchased her WaPo Subscription, Defendant did not disclose to Ms. Jordan all required automatic renewal offer terms associated with the subscription program. Additionally, although the Checkout Page from which Ms. Jordan made her purchase included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Ms. Jordan on notice.  Specifically, prior to completing her initial WaPo Subscription order, the relevant screens and buttons presented to Ms. Jordan did not clearly and conspicuously state that her WaPo Subscription would automatically renew every month until she cancelled, and they did not describe the full cancellation policy that applied to her purchase.

45.     At no point prior to completing her initial purchase did Defendant obtain Ms. Jordan's affirmative consent to an agreement containing the automatic renewal offer terms.

46.     After Ms. Jordan completed her initial order, Defendant sent Ms. Jordan an acknowledgment email that her WaPo Subscription had been activated.  However, that acknowledgment email failed to provide Ms. Jordan with the complete automatic renewal terms

that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Jordan's WaPo Subscription in a manner capable of being retained by her.  Ms. Jordan did not receive any other acknowledgments that contain the required information.

47.     As a result of Defendant's missing and otherwise deficient disclosures, when Ms. Jordan selected and paid for her WaPo Subscription in or around 2018, she was unaware that Defendant enrolled her in an "automatic renewal" program under which the subscription would renew each month at varying rates unless Ms. Jordan chose to cancel.

48.     Nevertheless, on or around June 29, 2018, upon the expiration of Ms. Jordan's free trial WaPo Subscription, Defendant automatically converted her free trial into a paid subscription and began charging monthly renewal fees to Ms. Jordan's Payment Method at the full standard monthly rate of $10.00 per month.  Defendant continued to automatically renew Ms. Jordan's WaPo Subscription every month thereafter and charge Ms. Jordan's Payment Method an additional seven times, for a total of eight unauthorized charges amounting to $80.00 to Ms. Jordan's Payment Method without her knowing consent.

### Defendant's Inconsistent Billing Practices

49.     During the course of her WaPo Subscription, Ms. Jordan found Defendant's billing practices confusing and unpredictable.  As shown by the table below, the monthly renewal fees that Defendant charged to Ms. Jordan's Payment Method from June 2018 to January 2019 posted to her Payment Method at different points each month, which came as a surprise to Ms. Jordan:

| Billing Date | Amount |
|---|---|
| 06/27/2018 | $10.00 |
| 07/25/2018 | $10.00 |
| 08/22/2018 | $10.00 |
| 09/19/2018 | $10.00 |
| 10/19/2018 | $10.00 |
| 11/14/2018 | $10.00 |
| 12/12/2018 | $10.00 |

| 01/09/2019 | $10.00 |
|---|---|
| | **Total: $80.00** |

50.     Throughout the life of Ms. Jordan's WaPo Subscription, Defendant's practices with respect to billing varied widely from month-to-month and were therefore a source of continual frustration for Ms. Jordan.  Because Defendant tended to charge Ms. Jordan's Payment Method at different points of each month, Ms. Jordan could not discern any regular monthly billing schedule.

51.     Ms. Jordan's confusion and surprise with respect to Defendant's billing practices is the direct result of Defendant's failure to place Ms. Jordan on notice of the recurring amount that would be charged to Ms. Jordan's Payment Method as part of her WaPo Subscription.  Because Defendant failed to disclose this material information in the manner required by statute, Ms. Jordan was unable at the point of sale to accept Defendant's offer or knowingly enter into to the purchase agreement.

<strong>Defendant's Undisclosed Cancellation Policy</strong>

52.     Frustrated with Defendant's confusing billing practices and other hidden automatic renewal terms, Ms. Jordan finally attempted to cancel her WaPo Subscription in or around January 2019.  However, finding no useful guidance in the vague and incomplete terms that were presented to her on the Checkout Page at the point of sale and no assistance in the opaque directions set forth on other pages of the WaPo Website, Ms. Jordan struggled immensely with the cancellation process.  Ultimately, on or around January 9, 2019, Ms. Jordan successfully cancelled her WaPo Subscription via an email sent in reply to one of the emails she had previously received from Defendant concerning her WaPo Subscription.

53.     Notably, neither the Checkout Page nor the acknowledgment email contain any explanation whatsoever regarding how to cancel the WaPo Subscription.  As a result, based on the pre- and post-check out disclosures featured on the Checkout Page and in the acknowledgment email, Ms. Jordan did not know that a subscriber "must cancel [her WaPo S]ubscription before it renews each period to avoid billing of the next Billing Period's subscription fees to [her] Payment Method," or that "when [the subscriber] cancel[s], [she] cancel[s] only future charges associated

with [her] subscription, and [she] will not receive a refund for the current Billing Period," as is set forth on the "Terms of Sale for Digital Products" Page.[42]  Additionally, Defendant does not specify anywhere on the Checkout Page that digital products purchased from Vendor Websites or the WaPo Apps may have different cancellation policies and processes than digital products purchased directly from the WaPo Website, as do terms set forth on other pages of Defendant's website.[43]

54.     Ms. Jordan was not previously aware of any of the above aspects of Defendant's cancellation policy.  At no point during her WaPo Subscription was Ms. Jordan required or even prompted to navigate to or otherwise examine any of the terms disclosed on the on any other page of the WaPo Website aside from the Checkout Page.  Further, Defendant neglected to disclose this information to Ms. Jordan at the point of purchase on the Checkout Page or in the acknowledgment email that Defendant sent to Ms. Jordan after she completed the checkout process.  Accordingly, Defendant failed to place Ms. Jordan on notice of its cancellation policy or provide Ms. Jordan information regarding how to cancel in a manner that is capable of being retained by her, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3).

55.     Moreover, even if the acknowledgment email *had* contained Defendant's complete cancellation policy (it did not), the "mechanism for cancellation" that exists is not one Ms. Jordan and other reasonable consumers would consider "easy-to-use" for two reasons.  First, the "cancellation deadline" terms presented on the Terms of Sale Page are potentially conflicting in that it is unclear based on those terms whether Defendant will charge renewal fees on the first day of the month, the last day of the month, or any day in between.  However, that information is crucial if a subscriber is to successfully "avoid billing of the next Billing Period's subscription fees to [her] Payment Method," because, as the Terms of Sale Page provides, avoiding additional renewal fees requires that the subscriber cancel her WaPo Subscription *before* she is billed for the

---

[42] *Terms of Sale.*

[43] *See* "How to cancel your digital only subscription[,]" *available at* https://helpcenter.washingtonpost.com/hc/en-us/articles/360000177571-How-to-cancel-your-digital-only-subscription.

subsequent month, which in turn requires that a definite billing date be capable of identification.[44]
The pre- and post-checkout disclosures failed to identify a definite billing date that Ms. Jordan
could use as a deadline for when to cancel her WaPo Subscription, and no such date is capable of
identification based on the terms set forth in the Terms of Sale Page on the WaPo Website.
Second, Ms. Jordan's ability to comply with the "no refund" and "cancellation deadline" terms on
the Terms of Sale Page was further frustrated by Defendant's failure to disclose or otherwise
indicate through a pattern of conduct any regular monthly billing date.  Given Defendant's
inconsistency in this regard, Ms. Jordan had no way of knowing when she would be charged for
the next month and thus could not reasonably be expected to cancel her WaPo Subscription prior
to that date.  Defendant therefore failed to provide Ms. Jordan with an "easy-to-use mechanism for
cancellation" or describe any such mechanism in an acknowledgment email, in violation of Cal.
Bus. & Prof. Code § 17602(b).

56.     Defendant's pre- and post-checkout disclosures therefore fail to comply with the
ARL, which deems products provided in violation of the statute to be unconditional gifts to
consumers.  Cal. Bus. & Prof. Code § 17603.

57.     As a direct result of Defendant's unlawful conduct described above, Ms. Jordan
suffered economic injury.  Had Defendant complied with the ARL by adequately disclosing the
terms associated with her WaPo Subscription purchase, Ms. Jordan would have been able to read
and review the auto renewal terms prior to purchase, and she would have not subscribed to *The
Washington Post* or she would have cancelled her WaPo Subscription earlier, *i.e.*, prior to the
expiration of the initial subscription period.

58.     The facts giving rise to Ms. Jordan's claims are materially the same as the Class she
seeks to represent.

---

[44] *Terms of Sale* ("You must cancel your subscription before it renews each Billing Period to avoid
billing of the next Billing Period's subscription fees to your Payment Method.  Accordingly, when
you cancel, you cancel only future charges associated with your subscription, and you will not
receive a refund ….").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLASS ACTION ALLEGATIONS

59.     **Class Definition**: Plaintiff brings this action pursuant to Rule 23(a) of the Federal

Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows

(the "Class"):

> All persons in California who, within the applicable statute of
> limitations period, up to and including the date of final judgment in
> this action, incurred renewal fee(s) in connection with Defendant's
> subscription offerings to *The Washington Post*.

60.     Specifically excluded from the Class are Defendant and any entities in which

Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this

action is assigned, members of the judge's staff, and the judge's immediate family.

61.     Plaintiff reserves the right to amend the definition of the Class if discovery or

further investigation reveals that the Class should be expanded or otherwise modified.

62.     ***Numerosity.***  Members of the Class are so numerous that their individual joinder

herein is impracticable.  On information and belief, the Class comprises at least thousands of

consumers throughout California.  The precise number of Class members and their identities are

unknown to Plaintiff at this time but may be determined through discovery.  Class members may

be notified of the pendency of this action by mail and/or publication through the distribution

records of Defendant.

63.     ***Commonality and Predominance***.  Common questions of law and fact exist as to

all Class members and predominate over questions affecting only individual Class members.

Common legal and factual questions include, but are not limited to:  (a) whether Defendant's

WaPo Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof.

Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or

continuous service offer terms, in a clear and conspicuous manner before the subscription or

purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer,

in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and

Class members' Payment Method for an automatic renewal service without first obtaining their

affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof. Code§

17602(a)(2); (d) whether Defendant failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (g) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiff and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiff and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

64.     ***Typicality.***  The claims of Plaintiff Jordan are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiff's and the Class' affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the WaPo Subscriptions before charging their Payment Methods.

65.     ***Adequacy***.  Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

66.     ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

67.     Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

68.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

69.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

<u>COUNT I</u>
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

70.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

72.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

73.     As alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class.

74.     Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its

violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*  Specifically, Defendant failed, and continues to fail, to: (a) provide the auto-renewal terms associated with its WaPo Subscription "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Method, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their WaPo Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

75.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

76.     All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq.*, constitute "unconditional gifts."  *See* Cal. Bus. Prof. Code § 17603.  As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the Class in the form of payments made by Plaintiff and the Class for their WaPo Subscriptions.  Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.

77.     Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

78.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

79.     Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

80.     Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue Defendant's acts of unfair competition, which caused them to purchase the WaPo Subscriptions.  Had Defendant complied with its disclosure obligations under the ARL, Plaintiff and members of the Class would not have purchased their WaPo Subscriptions or would have cancelled their WaPo Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

81.     Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the WaPo Subscriptions are still used by Defendant today.

82.     Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's Payment Method in connection with their WaPo Subscriptions during the four years preceding the filing of this Complaint.  Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

83.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

84.     Plaintiff Jordan brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest.  Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

**COUNT II**
**Conversion**

85.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

86.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

87.     As a result of charges made by Defendant to Plaintiff's and Class members' Payment Methods without authorization and in violation of California law, Defendant has taken money that belongs to Plaintiff and the Class.

88.     The amount of money wrongfully taken by Defendant is capable of identification.

89.     Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of Cal. Civil Code § 3294(c).

90.     As a result of Defendant's actions, Plaintiff and the Class have suffered damages.

**COUNT III**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

91.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

92.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

93.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

94.     Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general

public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

95.     Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's WaPo Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  Such representations and omissions on the Checkout Page constitute false and deceptive advertisements.

96.     Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

97.     Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their WaPo Subscriptions, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well.  Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions.  Plaintiff and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's WaPo Subscription.  They relied on Defendant's statements and omissions to their detriment.

98.     Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the WaPo Subscriptions on the same terms if the true facts were known about the product and the WaPo Subscriptions do not have the characteristics as promised by Defendant.

99.     Plaintiff Jordan, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or

property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

**<u>COUNT IV</u>**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***

100.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

101.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

102.    Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

103.    Defendant's selection and/or subscription offers are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b).  The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

104.    The acts and practices of Defendant as described above were intended to deceive Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the WaPo Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

105.    Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase WaPo Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid.  Had Defendant fully and clearly disclosed the terms associated with the WaPo Subscriptions, Plaintiff and the

Class would have not subscribed to *The Washington Post* or they would have cancelled their WaPo Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

106.    Plaintiff Jordan, on behalf of herself and all other members the Class, seeks an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

107.    In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on July 2, 2020, and again on July 29, 2020, informing Defendant of her intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return request, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  A true and correct copy of the letter dated July 2, 2020, is attached hereto as **Exhibit A**.  If Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d).

**COUNT V**
**Unjust Enrichment / Restitution**

108.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

109.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

110.    Plaintiff and the Class conferred benefits on Defendant by purchasing the WaPo Subscriptions.

111.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the Class's purchases of the WaPo Subscriptions.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiff and the Class to purchase the WaPo Subscriptions.  These omissions caused injuries to Plaintiff and the Class

because they would not have purchased the WaPo Subscriptions at all, or on the same terms, if the true facts were known.

112.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class for its unjust enrichment, as ordered by the Court.

**COUNT VI**
**Negligent Misrepresentation**

113.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

114.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

115.     As discussed above, Defendant made misrepresentations and omissions to consumers before and after enrollment in Defendant's WaPo Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  Such representations and omissions on the Checkout Page constitute false and deceptive advertisements.  Defendant omitted, failed to disclose, and intentionally concealed from such advertisements and related statements material facts concerning billing, shipping, cancellation, and automatic payment terms, policies, and requirements.

116.     At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

117.     At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the WaPo Subscriptions and their associated terms.

118.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase and enroll in Defendant's WaPo Subscription program.

119.    Plaintiff and Class members would not have purchased the WaPo Subscriptions if the true facts had been known.

120.    The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT VII**
**Fraud**

121.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

122.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

123.    As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the WaPo Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy and billing practices and policies.  These misrepresentations and omissions were made by Defendant with knowledge of their falsehood.

124.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the WaPo Subscriptions.

125.    The fraudulent actions of Defendant caused damage to Plaintiff and the members of the Class, who are entitled to damages and other legal and equitable relief as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jordan, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 29, 2020                              Respectfully submitted,

                                                  **BURSOR & FISHER, P.A.**

                                                  By:     */s/ Neal J. Deckant*
                                                           Neal J. Deckant

                                                  Neal J. Deckant (State Bar No. 322946)
                                                  Frederick J. Klorczyk III (State Bar. No. 320783)
                                                  1990 North California Boulevard, Suite 940
                                                  Walnut Creek, CA  94596
                                                  Telephone: (925) 300-4455
                                                  Facsimile:  (925) 407-2700
                                                  E-Mail:  ndeckant@bursor.com
                                                            fklorczyk@bursor.com

                                                  *Attorneys for Plaintiff*

1

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

2

I, Neal J. Deckant, declare as follows:

3      1.      I am an attorney at law licensed to practice in the State of California and a member

4    of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff

5    Deborah Jordan in this action.  Plaintiff Jordan resides in Hercules, California.  I have personal

6    knowledge of the facts set forth in this declaration and, if called as a witness, I could and would

7    competently testify thereto under oath.

8      2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code

9    Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the

10   Northern District of California.  Additionally, Plaintiff resides in this District.

11      I declare under the penalty of perjury under the laws of the State of California and the United

12   States that the foregoing is true and correct and that this declaration was executed at Oakland,

13   California, this 29th day of July, 2020.

14

15                                                    */s/ Neal J. Deckant*
                                                     Neal J. Deckant

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

**1990 N. CALIFORNIA BLVD., SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**FREDERICK J. KLORCZYK III**
Tel: **925.300.4455**
Fax: **925.407.2700**
**fklorczyk@bursor.com**

July 2, 2020

***Via Certified Mail – Return Receipt Requested***

WP Company LLC
1301 K Street NW
Washington, D.C., 20071

Re:     *Notice And Demand Letter Pursuant To California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by WP Company LLC, d/b/a *The Washington Post* ("the Post"), pursuant to the California Consumers Legal Remedies Act ("CLRA"), Civil Code § 1782(a), and any other state law cause of action requiring pre-suit notice, on behalf of our client, Deborah Jordan, and a class of all similarly situated persons in the State of California who were charged renewal fees in connection with the Post's newspaper subscription offerings (the "Class").

Ms. Jordan allege that the Post has engaged in an illegal automatic renewal scheme with respect to its newspaper subscriptions (the "WaPo Subscriptions"). On the final webpages of the Post's website at https://www.washingtonpost.com and mobile applications (the "WaPo Website" and the "WaPo Apps") where prospective subscribers are invited to complete their purchases (the "Checkout Page"), as well as in the confirmation email the Post subsequently sent to consumers after completing the checkout process (the "Acknowledgment Email"), the Post intentionally made and disseminated statements concerning the WaPo Subscriptions to consumers in California and the general public, including our client and the Class, which are untrue and misleading on their face and by omission. The Post's untrue and misleading statements include but are not limited to representations and omissions regarding the terms of payment for and cancellation of a consumer's automatic payments. These representations and omissions constitute false and deceptive advertisements.

The acts and practices of the Post as described herein violated, and continue to violate, the CLRA in at least the following respects:

      a.     in violation of Section 1770(a)(5), the Post has represented that the WaPo Subscriptions have characteristics and benefits they do not have; and

BURSOR&FISHER
P.A.

      b.     in violation of Section 1770(a)(9), the Post has advertised the WaPo Subscriptions with an intent not to sell them as advertised.

On behalf of our client and the Class, we hereby demand that the Post immediately:  (1) cease, and desist from engaging in, the foregoing violations of the CLRA by fully and clearly disclosing any of the terms associated with the WaPo Subscriptions (the "Terms") to consumers on the Checkout Page and in the Acknowledgment Email in the manner required by statute; and (2) make full restitution to all California subscribers to the *The Washington Post* of all purchase and renewal money obtained from sales thereof.

We also demand that the Post preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.  All documents that disclose any information listed below concerning renewal fees charged by the Post with respect to the WaPo Subscriptions:

    a.  Net revenues generated from renewal fees;

    b.  The total number of people in California who paid renewal fees; and

    c.  The average amount of renewal fees paid.

2.  All reports, memoranda, summaries, excel sheets, databases or similar documents that track aggregate information regarding renewal fees paid by California purchasers of a WaPo Subscription.

3.  All documents concerning the advertisement and marketing of the WaPo Subscriptions.

4.  All documents and communications that discuss disclosure of the Terms by the Post on the WaPo Website and/or the WaPo Apps:

    a.  Documents and communications discussing how the Terms should be disclosed;

    b.  Documents and communications discussing whether consumers see and understand disclosures about the Terms;

    c.  Documents and communications discussing whether to display the Terms more prominently, or less prominently; and

    d.  Documents and communications discussing any actual or potential changes to how the Terms are disclosed.

5.  Exemplar screenshots showing, at all relevant times, what information was shown to consumers when they purchased WaPo Subscriptions from the WaPo Website and/or the WaPo Apps.

6.  All consumer surveys, research, or memoranda discussing the Terms or the disclosure of the Terms generally, and any email attaching or discussing such surveys, research or memoranda.

7.  All documents and communications concerning the Post's decision to exclude any of the Terms from the Checkout Page of the WaPo Website and/or the WaPo Apps.

8.  All documents, communications, consumer surveys, research, or memoranda discussing how to retain customers or prevent churn through the adoption of policies or practices related to cancellation and/or billing.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

This letter also serves as a thirty (30) day notice and demand requirement under Cal. Civ. Code § 1782 for damages.  Accordingly, should you fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, our client will amend her class action complaint against the Post, and seek actual and punitive damages against the Post for violations of the CLRA on behalf of herself and the Class seeking monetary damages and equitable relief.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Sincerely,

Frederick J. Klorczyk III