Alexei Klestoff (SBN 224016)
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2340
Facsimile: (415) 636-5965
alexei@zwillgen.com

Jacob Sommer (*pro hac vice*)
Zachary Lerner (*pro hac vice*)
ZwillGen PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
jake@zwillgen.com
zach@zwillgen.com

Attorneys for Defendant
**WP COMPANY LLC**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH JORDAN, individually and on behalf of all other similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>WP COMPANY LLC, d/b/a/ THE WASHINGTON POST,<br><br>    Defendant. | Case No. 20-cv-05218-WHO<br><br>**WP COMPANY LLC  d/b/a THE WASHINGTON POST'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Judge: Hon. William H. Orrick<br>Date:  December 2, 2020<br>Time:  2:00 p.m.<br>Courtroom 2, 17th Floor<br>San Francisco Courthouse<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THIS HONORABLE COURT, AND TO ALL PARTIES AND TO THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2020 at 2 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick, Courtroom 2, 17th floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendant WP Company LLC d/b/a The Washington Post ("WP" or "Defendant"), by and through its counsel, will and hereby does respectfully move this Honorable Court for an order dismissing the First Amended Complaint ("FAC") (ECF No. 22) of Plaintiff Deborah Jordan, on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 12. This motion is based upon this notice and motion, WP's memorandum of points and authorities, all other papers submitted and filed with this notice, the pleadings and papers on file in this action, all matters judicially noticeable, and on such further documentary evidence and oral argument as this Court may allow at the hearing.

Dated: October 19, 2020          **ZWILLGEN LAW LLP**


By:  _/s/ Alexei Klestoff_____
Alexei Klestoff (SBN 224016)
alexei@zwillgen.com
Jacob Sommer (*pro hac vice*)
jake@zwillgen.com
Zachary Lerner (*pro hac vice*)
zach@zwillgen.com
**Attorneys for Defendant**
WP Company LLC

Alexei Klestoff (SBN 224016)
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2340
Facsimile: (415) 636-5965
alexei@zwillgen.com

Jacob Sommer (*pro hac vice*)
Zachary Lerner (*pro hac vice*)
ZwillGen PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
jake@zwillgen.com
zach@zwillgen.com

Attorneys for Defendant
**WP COMPANY LLC**

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH JORDAN, individually and on behalf of all other similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>WP COMPANY LLC, d/b/a/ THE WASHINGTON POST,<br><br>     Defendant. | Case No. 20-cv-05218-WHO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WP COMPANY LLC  d/b/a THE WASHINGTON POST'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENEDED CLASS ACTION COMPLAINT**<br><br>Judge: Hon. William H. Orrick<br>Date:   December 2, 2020<br>Time:  2:00 p.m.<br>Courtroom 2, 17th Floor<br>San Francisco Courthouse<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................. 3

      A.     WP's Subscription Process. ........................................................................ 3

      B.     The FAC. ..................................................................................................... 4

      C.     Plaintiff's Claims and Requested Relief. ................................................... 6

III.    LEGAL STANDARD ............................................................................................ 6

IV.    ARGUMENT .......................................................................................................... 7

      A.     Plaintiff Fails to Allege a Violation of the ARL's Pre-Purchase
             Disclosure Requirements in § 17602(a)(1), Affirmative Consent
             Requirement in § 17602(a)(2), or Mechanism of Cancellation
             Requirement in § 17602(b). ....................................................................... 7

             1.     WP Made All Required Pre-Purchase Disclosures. ................................. 7

             2.     WP Obtained Affirmative Consent. ......................................................... 9

             3.     WP Provided a Cost-Effective, Timely, and Easy-To-Use
                   Mechanism for Cancellation. ................................................................... 11

             4.     Plaintiff's Claims based on Violations of §§ 17602(a)(1)-(2)
                   and § 17602(b) Must Be Dismissed. ...................................................... 13

                 i.       Plaintiff's Claims Depend on Violations of the ARL. ................ 13

                 ii.      Plaintiff Lacks Statutory Standing to Pursue Her CLRA,
                       FAL, and UCL Claims. ............................................................... 14

      B.     Plaintiff Cannot Allege Claims based on WP's Alleged Post-Purchase
              ARL Violations, Which, By Definition, Occurred After the
             Subscription Purchase. .............................................................................. 17

             1.     Plaintiff Fails to State a CLRA Claim Because the Post-
                   Purchase Acknowledgment Did not Intend to Lead to a Sale. ............... 18

             2.     Plaintiff Has Not Pled an FAL Claim Based on the Allegedly
                   Deficient Post-Purchase Acknowledgment, and Could Not Do
                   So. ........................................................................................................... 19

             3.     Plaintiff Fails to Plead Fraud or Negligent Misrepresentation in
                   Relation to the Post-Purchase Acknowledgment. .................................. 20

4.     Plaintiff Lacks Statutory Standing for Her UCL, FAL, and CLRA Claims Based on the Allegedly Non-Compliant Post-Purchase Acknowledgment. ................................................................. 21

C.     Plaintiff Has Not Pled Her CLRA, FAL, UCL, Negligent Misrepresentation, or Fraud Claims with Sufficient Particularity to Satisfy Rule 9(b). ........................................................................................ 22

D.     Plaintiff Has Not Plausibly Pled Conversion.......................................................... 24

E.     Unjust Enrichment Is Not a Valid Cause of Action Under California Law. ........................................................................................................................... 24

V.     CONCLUSION............................................................................................................................. 25

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
    158 Cal. App. 4th 226 (2007) ........................................................................24

*Arnold v. Hearst Magazine Media, Inc.*,
    2020 WL 3469367 (S.D. Cal. June 25, 2020) ......................................... 13-14, 17, 22, 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................6

*Avidor v. Sutter's Place, Inc.*,
    212 Cal. App. 4th 1439 (2013) ....................................................................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................6

*Californians for Disability Rights v. Mervyn's, LLC*,
    39 Cal. 4th 223 (2006) ..................................................................................14

*Chulick-Perez v. CarMax Auto Superstores Cal., LLC*,
    71 F. Supp. 3d 1145 (E.D. Cal. 2014) ..............................................................15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ................................................................... 10-11

*Darling v. Green*,
    2013 WL 11323320 (C.D. Cal. Sept. 25, 2013) ......................................... 19-20

*Daro v. Superior Court*,
    151 Cal. App. 4th 1079 (2007) ....................................................................17

*Doe v. SuccessfulMatch.com*,
    70 F. Supp. 3d 1066 (N.D. Cal. 2014)..............................................................17

*Driver v. Acquisto*,
    145 Cal. App. 2d 304 (1956) .......................................................................24

*Ferrington v. McAfee, Inc.*,
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ...................................................13

*Freeman v. Time, Inc.*,
    68 F. 3d 285 (9th Cir. 1995) ........................................................................23

*Hall v. Time, Inc.*,
    2020 WL 2303088 (C.D. Cal. Mar. 13, 2020)..........................................................10, 24

*Hall v. Time, Inc.*,
    2019 WL 8107879 (C.D. Cal. Sept. 24, 2019) ...................................................................10

*Harlan v. Roadtrek Motorhomes, Inc.*,
    2009 WL 928309 (S.D. Cal. Apr. 2, 2009)........................................................................19

*Hensley- Maclean v. Safeway, Inc.*,
    2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) .....................................................................19

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................................25

*In re Facebook Biometric Information Privacy Litigation*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016)............................................................................11

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...........................................................................13

*In re Late Fee & Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007).........................................................................24-25

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012)...............................................................................15

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .....................................................................................................14

*In re Turner*,
    859 F.3d 1145 (9th Cir. 2017) .........................................................................................17

*Johnson v. Pluralsight, LLC*,
    236 F. Supp. 3d 1176 (E.D. Cal. 2017) ......................................................................12, 16

*Johnson v. Pluralsight, LLC*,
    728 Fed. Appx. 674 (9th Cir. 2018)..................................................................................18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................................6-7

*Kissel v. Omega Nat. Sci., Inc.*,
    2016 WL 9019613 (C.D. Cal. Aug. 22, 2016) ..................................................................21

*Klett v. Sec. Acceptance Co.*,
    38 Cal. 2d 770 (1952)........................................................................................................24

iv

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ...................................................................................14

*L'Garde Inc. v. Raytheon Space and Airborne Sys.*,
  805 F. Supp. 2d 932 (C.D. Cal 2011) ............................................................20

*Ladore v. Sony Computer Entm't Am., LLC*,
  75 F. Supp. 3d 1065 (N.D. Cal. 2014) ...........................................................13

*Laster v. T- Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..........................................................17

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
  214 Cal. App. 4th 544 (2013) ........................................................................14

*Lopez v. YP Holdings, LLC*,
  2019 WL 2895190 (C.D. Cal. Mar. 26, 2019)................................................14

*Lynch v. Rawls*,
  429 Fed. Appx. 641 (9th Cir. 2011) .................................................................7

*Lyons v. Bank of America, N.A.*,
  2011 WL 3607608 (N.D. Cal. Aug. 15, 2011) ...............................................20

*Mayron v. Google, Inc.*,
  2016 WL 1059373 (Cal. Super. Feb. 26, 2016)..............................................15

*Mayron v. Google LLC*,
  2020 WL 5494245 (Cal. Ct. App. Sept. 11, 2020) ..........................13, 15, 16, 17

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009)...................................................................................14

*Moore v. Apple, Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014)............................................................19

*Nevarez v. Forty Niners Football Company, LLC*,
  2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ...............................................11

*Nguyen v. Barnes & Noble Inc*,
  763 F.3d 1171 (9th Cir.  2014) ......................................................................11

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008)............................................................25

*Parker-Bokelman v. Specialized Loan Serv. LLC*,
  2019 WL 3243739 (C.D. Cal. June 3, 2019) ..................................................14

*Pepsico, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ..................................................................19

*Robinson v. OnStar, LLC*,
    2020 WL 364221 (S.D. Cal. Jan. 22, 2020) ..........................................................12

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ................................................................13

*Roz v. Nestle Waters N. Am., Inc.*,
    2017 WL 6942661 (C.D. Cal. Dec. 6, 2017) ........................................................17

*Sansoe v. Ford Motor Co.*,
    2017 WL 4025218 (N.D. Cal. Sept. 13, 2017) ................................................ 18-19

*Thompson v. Auto. Club of S. Cal.*,
    217 Cal. App. 4th 719 (2013) ..............................................................................16

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................7

*Warner v. Tinder, Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ................................................................15

*Williams v. Kidiley*,
    2013 WL 6247972 (C.D. Cal. Dec. 3, 2013) ........................................................11

*Wolph v. Acer Am. Corp.*,
    2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ..................................................7, 24

*Yanese v. Auto. Club of So. Cal.*,
    212 Cal. App. 3d 468 (1989) ................................................................................24

**Statutes and Rules**

Fed. R. Civ. P. 9(b)................................................................................................22

Fed. R. Civ. P. 12(b)(6) ..........................................................................................6

Cal. Bus. & Prof. Code § 17204 ............................................................................14

Cal. Bus & Prof. Code § 17500 ............................................................................19

Cal. Bus. & Prof. Code § 17601(b) ........................................................................8

Cal. Bus. & Prof. Code § 17602(a) ........................................................................1

Cal. Bus. & Prof. Code § 17602(a)(1)................................................5, 7, 8, 9, 13

Cal. Bus. & Prof. Code § 17602(a)(2) ............................................................. 7, 9-10, 13

Cal. Bus. & Prof. Code § 17602(a)(3) ...................................................................8, 18

Cal. Bus. & Prof. Code § 17602(b) ............................................................ 7, 11-12, 13

Cal. Bus. & Prof. Code § 17602(c) ...........................................................................11

Cal. Bus. & Prof. Code § 17602(e)(1) .....................................................................18

Cal. Bus. & Prof. Code § 17603 .....................................................................6, 12, 18

Cal. Civ. Code § 1572 ..............................................................................................20

Cal. Civ. Code § 1770 ..............................................................................................22

Cal. Civ. Code § 1770(a) ..........................................................................................18

Cal. Civ. Code § 1780(a) ..........................................................................................14

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

I.     <u>**INTRODUCTION**</u>

3        Plaintiff Deborah Jordan brought a class action Complaint on behalf of all California

4  subscribers to *The Washington Post*, alleging a host of claims predicated on purported violations

5  of California's Automatic Renewal Law ("ARL") and seeking the reimbursement of all

6  subscription fees she and every other putative class member paid for a *Washington Post* digital

7  subscription over the past four years.  WP Company LLC d/b/a The Washington Post ("WP")

8  moved to dismiss.  In response, Plaintiff filed the First Amended Complaint ("FAC").  Her

9  amendments do not address, let alone remedy, any of the deficiencies highlighted in WP's prior

10  motion.  Dismissal with prejudice is warranted.

11        As before, Plaintiff's claims all fail as a matter of law for a simple reason: Plaintiff's own

12  allegations regarding the automatic renewal of her digital subscription – including the checkout

13  page embedded within her FAC – show that WP provided Plaintiff with true and accurate

14  information regarding WP's digital subscription offerings, gave her what she bargained for, and

15  did exactly what it promised, all in compliance with the ARL.  As such, the ARL (which does not

16  have a private right of action) cannot serve as the predicate for a cause of action under any of the

17  California statutory and common law claims Plaintiff relies on in her FAC– and thus it must be

18  dismissed.

19        The ARL's requirements are straightforward.  Before completing a purchase, the seller

20  must: (1) state that the subscription will continue until the consumer cancels, (2) describe the

21  cancellation policy, (3) state the amount to be charged (and any changes that may occur), and (4)

22  disclose the length of the automatic renewal period.  Cal. Bus. & Prof. Code § 17602(a) ("ARL

23  §17602").  That is precisely what the FAC alleges WP did, namely: WP told Plaintiff (1) that her

24  subscription would renew automatically every four weeks until she cancelled; (2) that she could

25  cancel at any time by selecting "Cancel Subscription" in her account settings; (3) that WP would

26  make recurring charges to her payment account; and (4) that it would charge her $10 every four

27  weeks.  In other words, the FAC shows that WP's checkout page provided all of the ARL's

28  requisite pre-purchase disclosures.  Moreover, Plaintiff does not allege that any of these

1  disclosures were false, or that any piece of information WP did not provide was material to her

2  decision to purchase the subscription.  Plaintiff's attempt to recast truthful and ARL-compliant

3  disclosures as inaccurate or fraudulent must fail.

4  Facing these facts, Plaintiff instead tries to add unwritten requirements to the ARL in

5  search of a technical violation that might support awarding WP's California subscribers a return of

6  all the subscription fees they paid.  But these attempts also fail.  First, she takes issue with WP's

7  cancellation policy disclosure.  Contrary to Plaintiff's allegations, however, the ARL does not

8  require WP to make pre-purchase disclosures about *how* to cancel a subscription.  And it does not,

9  as Plaintiff suggests, require WP to disclose to Plaintiff information about how *other* subscribers

10  that subscribed using other means may cancel their subscriptions.  WP must only describe the

11  applicable cancellation policy, which it did.  Second, the FAC alleges that WP violated the ARL

12  by failing to provide a "check box" indicating consent to the automatic renewal offer terms.  But

13  the ARL has no such requirement, and adding it would contravene California case law repeatedly

14  approving click through agreements even in cases where companies did not include additional

15  conspicuous disclosures regarding elements of the agreement prior to acceptance as WP did here.

16  Finally, the FAC's other allegations and the embedded checkout page's plain language contradict

17  Plaintiff's suggestion that WP's mechanism for cancellation was insufficient as a result of her

18  inability to determine when her subscription would renew.  Consistent with the ARL, WP

19  disclosed to Plaintiff, truthfully, that her subscription would renew *every four weeks*, not every

20  month.  And Plaintiff did not even attempt to cancel until after she was charged for the eighth

21  time, at which point, as the FAC admits, WP cancelled her subscription and did not charge her

22  further.

23  Plaintiff next asserts that WP's post-purchase acknowledgment did not comply with the

24  ARL.  Even accepting that conclusion as true on a motion to dismiss (the FAC does not attach the

25  acknowledgement), any deficiencies would have occurred post-purchase.  But her statutory claims

26  under California's False Advertising Law ("FAL"), California's Consumers Legal Remedies Act

27  ("CLRA") and her common law fraud and negligent misrepresentation claims require allegations

28  of misleading statements that *induce a sale*.  Because Plaintiff cannot plausibly plead that a *post-*

2

*purchase* acknowledgment could have impacted her *pre-purchase* behaviors, she cannot allege the injury or causation sufficient to establish statutory standing under the FAL, CLRA, or California's Unfair Competition Law ("UCL").

The Court should also dismiss the FAC because Plaintiff has failed to plead her allegations with the particularity required to satisfy the heightened pleading standard applicable to claims that sound in fraud.  Plaintiff's conversion, fraud, and negligent misrepresentation claims also fail as a matter of law because WP presented subscribers with truthful terms and obtained affirmative consent to deduct subscription fees from their payment accounts.  Finally, her unjust enrichment claim fails because, under California law, it is not a stand-alone cause of action.

At bottom, this FAC seeks to use non-existent violations of the ARL or, at most, technical, injury-free allegations as a tool to turn every WP subscription in California into a windfall of free subscriptions for the class.  To do so, the FAC attempts to recast WP's truthful and compliant business practices as somehow unscrupulous and fraudulent conduct.  But the allegations reveal that Plaintiff (1) purchased an automatically renewing subscription, manifesting assent to unambiguous and compliant terms, (2) allowed her subscription to continue for eight billing cycles, while understanding throughout that period that she was being charged for a subscription that she continued to benefit from, and (3) upon deciding that she wanted to cancel, submitted a request, which WP honored immediately, leading to no more charges to Plaintiff's payment account.  True disclosures, an effective cancellation, and her own failure to act despite eight separate charges do not support a claim under any of the causes of action alleged.  Plaintiff's FAC should be dismissed with prejudice.

II.     **FACTUAL BACKGROUND**

    **A.  WP's Subscription Process.**

WP publishes *The Washington Post*, which it offers in print and digital formats. (FAC ¶¶ 6, 31.)  WP offers automatically renewing subscriptions, which consumers can purchase through WP's website or mobile applications.  (FAC ¶ 31.)  WP first presents consumers with subscription

choices, including term length[1] and feature options.  (FAC ¶ 32.)  WP then directs consumers to a

checkout page where they input billing information and complete their purchase.  (FAC ¶ 33.)  As

shown in the screenshot of the checkout page embedded in the FAC ("Checkout Page"), WP

provides automatic renewal offer terms immediately above a "Start your subscription" button:



(FAC ¶ 33.)

**B.  The FAC.**

Plaintiff filed her original Complaint in this action on July 29, 2020 (ECF No. 1).  WP

moved to dismiss on September 21, 2020 (ECF No. 21).  In response, Plaintiff filed a nearly

---

[1] The FAC alleges that WP offers "monthly" subscription plans.  But as evidenced by the screenshot embedded in the FAC, WP in fact offers subscriptions that renew "every 4 weeks." (FAC ¶¶ 32-33.)

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

1    identical FAC on October 5, 2020 (ECF No. 22).  The only changes were to fix one typo and

2    modify two paragraphs in Count IV to include a request for damages.  (FAC ¶¶ 106-107.)

3           Plaintiff, a California resident, alleges she purchased a subscription from WP's website in

4    2018.  (FAC ¶ 43.)[2]  She alleges that WP charged her $10 eight times.  (FAC ¶ 48.)  Plaintiff

5    asserts that "when [she] selected and paid for her [WP] Subscription in or around 2018, she was

6    unaware that Defendant enrolled her in an 'automatic renewal' program under which the

7    subscription would renew each month at varying rates[3] unless [she] chose to cancel" and further

8    claims that had she been aware of WP's automatic renewal terms, she "would not have purchased

9    [her WP subscription] or would have cancelled [her WP subscription] prior to the renewal of the

10   subscriptions, so as not to incur additional fees."  (FAC ¶¶ 47, 80.)  But the FAC reveals that she

11   understood and appreciated *throughout her subscription* that she had purchased an automatically

12   renewing subscription.  (*See, e.g.*, FAC ¶ 49.)  And it also alleges she did not try to cancel her

13   subscription until she was charged an eighth time.  (FAC ¶¶ 49, 52.)

14          Plaintiff alleges that when she subscribed, WP did not comply with the ARL (California

15   Business and Professions Code § 17600, *et seq*).  She claims that WP failed "to present the

16   automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the

17   request for consent to the offer before the subscription or purchasing agreement was fulfilled"[4] and

18   charged her without affirmative consent.  (*Id.* ¶ 35.)  She also complains that WP violated the

19   ARL's post-purchase requirements by sending her a deficient acknowledgment email that lacked

20   required information.  (*Id.*)  She does not include the allegedly deficient notice in the FAC.

21   Plaintiff also claims that WP failed to provide an "easy-to-use" "mechanism for cancellation."  (*Id.*

22   ¶ 55.)  Still, Plaintiff admits that WP allows customers to cancel "by selecting 'Cancel

23   ───────────────

24   [2] Plaintiff claims she signed up for a free trial of WP's monthly digital subscription.  (FAC ¶ 5.)
     Yet, as confirmed by her own screenshot, WP did not offer Plaintiff a free trial.  (FAC ¶ 33.)

25   Rather, WP offered Plaintiff a promotional rate of $1 for the initial 4-week term.
     [3] The FAC makes no other allegations that the rate WP charged *varied*.  Indeed, Plaintiff alleges

26   eight charges, each for $10.  (FAC ¶ 49.)
     [4] Despite these broad allegations, ultimately, Plaintiff asserts a narrow set of violations of

27   § 17602(a)(1), alleging that WP failed to present a complete description of the cancellation
     policy that applied to the offer because it contained no explanation of *how* to cancel.  (FAC ¶

28   36.)

1   Subscription' in [their] account settings."  (FAC ¶¶ 33, 36.)  Plaintiff claims that in or around

2   January 2019, she cancelled her subscription by emailing WP.  (FAC ¶ 52.)  Plaintiff does not

3   allege that she tried to cancel her subscription prior to January 2019 or that after requesting

4   cancellation, she was assessed any other charges.

5        **C.  Plaintiff's Claims and Requested Relief.**

6        Plaintiff seeks to represent a putative class of "[a]ll persons in California who, within the

7   applicable statute of limitations period, up to and including the date of final judgment in this

8   action, incurred renewal fee(s) in connection with Defendant's subscription offerings to *The*

9   *Washington Post*."  (*Id.* ¶ 59.)  Plaintiff claims that because of WP's purported technical

10  noncompliance with the ARL, her subscription, and the subscriptions of all of the California

11  subscribers in her putative class, amount to an "unconditional gift" under the ARL (*Id.* ¶ 56); *see*

12  ARL § 17603 (when a "business sends any goods . . . to a consumer . . . without first obtaining the

13  consumer's affirmative consent the goods . . . shall for all purposes be deemed an unconditional

14  gift to the consumer. . . .").  She seeks return of "all amounts charged or caused to be charged" to

15  California subscribers to *The Washington Post* in the four years before the filing of the FAC and

16  continuing until final judgment.  (*E.g.*, FAC ¶ 82.)  She also seeks damages pursuant to the CLRA,

17  including punitive damages.  (*E.g.*, FAC ¶ 107.)

18  **III.   LEGAL STANDARD**

19        Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a

20  plaintiff's allegations fail to set forth a set of facts that, if true, would entitle her to relief.  *Ashcroft*

21  *v. Iqbal*, 556 U.S. 662, 679 (2009) (claim must be facially plausible to survive a motion to

22  dismiss).  The pleadings must raise the right to relief beyond the speculative level, and a plaintiff

23  must provide "more than labels and conclusions, and a formulaic recitation of the elements of a

24  cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court

25  need not accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

26        Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply to

27  Plaintiff's UCL, CLRA, FAL, fraud, and negligent misrepresentation claims, which sound in

28  fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) (claims under the

UCL, CLRA, and FAL that sound in fraud must satisfy Rule 9(b)'s heightened pleading requirement); *Wolph v. Acer Am. Corp.*, 2009 WL 2969467, at *5 (N.D. Cal. Sept. 14, 2009) (claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements). Plaintiff must allege "more than the neutral facts necessary to identify the transaction," including the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

## IV.  **ARGUMENT**

### A.  **Plaintiff Fails to Allege a Violation of the ARL's Pre-Purchase Disclosure Requirements in § 17602(a)(1), Affirmative Consent Requirement in § 17602(a)(2), or Mechanism of Cancellation Requirement in § 17602(b).**

Plaintiff has not pled and cannot plead a violation of the ARL's pre-purchase disclosure (§ 17602(a)(1)), affirmative consent (§ 17602(a)(2)), or method of cancellation (§ 17602(b)) provisions. A plain reading of the ARL's requirements, the FAC, and its embedded screenshots render those allegations implausible. *See, e.g.*, *Lynch v. Rawls*, 429 Fed. Appx. 641, 645 (9th Cir. 2011) ("[A] court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint . . . .") (internal quotations and citation omitted).

### 1.  **WP Made All Required Pre-Purchase Disclosures.**

The ARL, Cal. Bus. & Prof. Code § 17602(a)(1), requires a business to "present the automatic renewal offer terms … in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer." Under the ARL, the "automatic renewal offer terms" mean, as relevant here:

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.

> (2) The description of the cancellation policy that applies to the offer.

> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

1    The Checkout Page screenshot embedded in Plaintiff's FAC provides all of these terms.

2    First, it informed Plaintiff that her subscription would renew automatically every four weeks until

3    she cancelled.  It also informed her that WP's cancellation policy allowed her to cancel at any time

4    by selecting "Cancel Subscription" in her account settings.  Finally, it told her that recurring

5    charges would be charged to her payment account as a part of the automatic renewal plan, what

6    the amount would be, and how often it would renew.  Nothing is missing, and all are true.  Indeed,

7    the FAC does not (and could not) assert otherwise.

8    Faced with WP's compliance, Plaintiff goes searching for some technical violation to

9    support her claim based on § 17602(a)(1).  She takes three shots, all of which miss the mark.

10   First, Plaintiff claims that WP did not adequately explain how Plaintiff could cancel her

11   subscription on the Checkout Page.  But this attempts to add a requirement to the pre-purchase

12   terms that is not in the ARL.  Put simply, the description of the cancellation policy and

13   information on how to cancel, are two different ARL requirements.  Before the purchase, WP need

14   only describe the cancellation policy, not describe how to cancel.  It did so here by describing that

15   she can "cancel at any time…"  (FAC ¶ 33.)  By contrast, the after-purchase acknowledgement

16   must contain the "cancellation policy, and information regarding how to cancel."  *Compare*

17   § 17602(a)(3) with § 17602(a)(1) & § 17601(b) (defining "automatic renewal offer terms").

18   Even if WP were required to describe *how* to cancel, Plaintiff ignores that the Checkout Page

19   states how to cancel—"by selecting 'Cancel Subscription' in your account settings."  (FAC ¶ 33.)

20   Next, Plaintiff asserts that the Checkout Page did not comply with the ARL because it did

21   not disclose how customers that subscribed *in a different way* than Plaintiff (such as through a

22   third-party service) could cancel.  (FAC ¶ 37) ("[T]he Checkout Page fails to disclose that the

23   method of cancellation available to a particular consumer varies depending on the medium

24   through which that consumer initially purchased and/or enrolled in her WaPo Subscription.").  But

25   the ARL does not require this level of detail or extraneous information pre-purchase—it only

26   requires companies to provide a "description of the cancellation policy."  WP did this when it

27   disclosed that she could cancel at any time.  Besides, there is no reason why a consumer

28   purchasing a subscription through WP's website (as Plaintiff did) would need to know how **other**

8

1   **subscribers** subscribing through a **different method** could cancel.  Claims about disclosures

2   inapplicable to Plaintiff could not have influenced her purchase decision or support her claims.

3   Finally, Plaintiff alleges that "the Checkout Page does not state that the consumer 'must

4   cancel [her] subscription before it renews each Billing Period to avoid billing of the next Billing

5   Period's subscription fees to [her] Payment Method,' or that 'when [the subscriber] cancel[s],

6   [she] cancel[s] only future charges associated with [her] subscription, and [she] will not receive a

7   refund for the current Billing Period.'"  (FAC ¶ 38.)  But the Checkout Page belies Plaintiff's

8   allegation.  As shown in the Checkout Page, WP states, "You agree to be charged $1 for the initial

9   4-week term, **then $10 every 4 weeks thereafter**."  (FAC ¶ 33.) (emphasis added).  It also states,

10  *in bold lettering*, "**Your subscription will renew automatically until you cancel.**"  (*Id.*)

11  (emphasis in original).  These disclosures satisfy the pre-purchase disclosure obligations

12  § 17602(a)(1) imposes, and unambiguously state the policy: Subscribers may cancel at any time

13  before renewal, which occurs every four weeks.  All subscribers who viewed the Checkout Page

14  were on notice that if they failed to cancel their subscription before it renewed, they would be

15  charged for the next four weeks.  The ARL does not require WP to include *every* detail of the

16  terms of sale in visual proximity to the request for consent.

17  **2.  WP Obtained Affirmative Consent.**

18  The ARL requires that businesses "obtain[] the consumer's affirmative consent to the

19  agreement containing the automatic renewal offer terms or continuous offer terms" before

20  charging the consumer.  § 17602(a)(2).  The Checkout Page establishes compliance and makes

21  implausible Plaintiff's claim that she did not affirmatively consent to her subscription.  (FAC ¶

22  33.)  WP presented information about auto-renewal on the Checkout Page, including the required

23  disclosures: "By subscribing" the user agreed to these terms. Users then had to click the "Start

24  Your Subscription" button immediately below this language to agree and start their subscription.

25  Faced with the Checkout Page's truthful language and unambiguous, common form of

26  consent, Plaintiff tries to graft on a requirement that subscribers must "check the box" for consent

27  to be valid.  (FAC ¶ 40.)  But the ARL does not require a "checkbox" or any other stand-alone

28  consent to the automatic renewal terms.  § 17602(a)(2).  Rather, it is unlawful for a business to

9

1   charge a consumer's payment method for an automatically renewing subscription "without first

2   obtaining the consumer's affirmative consent to *the agreement containing the automatic renewal*

3   *offer terms* or continuous service offer terms . . . ." § 17602(a)(2) (emphasis added).  This does

4   not, as Plaintiff suggests in her FAC, mean that there must be affirmative consent to automatic

5   renewal as a standalone contract term.  Rather, WP was required to obtain affirmative consent to

6   the subscription *agreement including* the auto-renewal provision, which the FAC shows that it did.

7       In *Hall v. Time, Inc.*, the plaintiff alleged that the defendant violated § 17602(a)(2) by

8   charging her for an automatic renewal without first obtaining her affirmative consent, asserting

9   (like Plaintiff here) that the ARL required a separate prompt or feature.  *See Hall v. Time, Inc.*,

10  2019 WL 8107879, at *3 (C.D. Cal. Sept. 24, 2019).  The court rejected that argument, finding

11  that the facts in the complaint precluded her from alleging such a violation because the ARL "only

12  requires a consumer to affirmatively consent to '*the agreement containing the automatic renewal*

13  *offer terms*,' not the automatic renewal terms themselves." *Id.* (emphasis in original).  Plaintiff

14  amended her complaint, and the Court rejected her renewed allegation that defendant failed to

15  obtain affirmative consent emphasizing that "Defendants conspicuously disclosed their renewal

16  policy in plain language" and "Plaintiff affirmatively consented to the agreement containing those

17  terms by entering her payment information and submitting her order after receiving notice of those

18  terms." *Hall v. Time, Inc.*, 2020 WL 2303088, at *4 (C.D. Cal. Mar. 13, 2020).  This process is

19  sufficient to form a contract and obtain affirmative consent under the ARL.

20      The screenshots in her FAC show that WP's Checkout Page, like the page in *Time*, secured

21  subscribers' affirmative consent to the agreement containing the automatic renewal offer terms

22  when they made the purchase.  Before Plaintiff could purchase her subscription, (1) she entered

23  her contact and billing information, (2) WP informed her that it would then charge her every four

24  weeks and her subscription would renew automatically until she cancelled, and (3) she then

25  clicked the "Start your subscription" button immediately below that language consenting to the

26  automatic renewal offer terms and agreeing to the WP Terms of Sale.[5]  The screenshot and

27  _____

28  [5] Clicking on a "click wrap" or "sign in wrap"—where consumers are told in visual proximity to
    the request for consent (e.g., "Start your subscription" button) that by completing the

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

allegations detailing this process establish that WP complied with the ARL's affirmative consent requirement.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not . . . required to accept as true allegations that contradict exhibits attached to the [c]omplaint . . . ."); *Williams v. Kidiley*, 2013 WL 6247972, at *2 (C.D. Cal. Dec. 3, 2013) (same), *aff'd*, 588 Fed. Appx. 658 (9th Cir. 2014).  Plaintiff cannot plausibly plead that she did not provide affirmative consent to the clear and conspicuous automatic renewal terms.

### 3.       WP Provided a Cost-Effective, Timely, and Easy-To-Use Mechanism for Cancellation.

The FAC establishes that WP provided mechanisms for cancellation in compliance with § 17602(b).  That provision provides that "[a] business that makes an automatic renewal offer or continuous service offer shall provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, *or* it shall provide *another* cost-effective, timely, and easy-to-use mechanism for cancellation . . . ."  § 17602(b) (emphasis added).  As is stated clearly and conspicuously on the Checkout Page, subscribers "can cancel at any time by selecting 'Cancel Subscription' in [their] account settings."  (FAC ¶ 33.)  Plaintiff acknowledges this (FAC ¶ 36) and quotes a WP Help Center page explaining that subscribers "can go to [their] Account Profile to cancel."  (FAC ¶ 37.)  This method of cancellation adhered to WP's obligations under § 17602(b)—navigating to their account settings and clicking a "Cancel Subscription" button is cost-effective, timely, and easy-to-use.  Plaintiff does not allege that she tried to use this method.  Instead she emailed WP to cancel, and even though the ARL does not require businesses to offer or honor multiple cancellation methods, WP processed her request.  (FAC ¶ 52.)  This too was a cost-effective, timely, and easy-to-use mechanism of cancellation.  These mechanisms also fulfilled WP's obligation in § 17602(c) to provide an "exclusively online" method of cancellation for subscribers who purchased the subscription online.

---

transaction, they are bound to terms in a hyperlinked agreement—amounts to consent to a business' terms, even one that contains an arbitration agreement.  *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) (approving a "click wrap" contract) (citing *Nguyen v. Barnes & Noble Inc*, 763 F.3d 1171 (9th Cir. 2014); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110, *8-9 (N.D. Cal. Aug. 15, 2017).

11

1    Plaintiff also alleges that WP violated § 17602(b) because "the 'mechanism for

2  cancellation' that exists is not one [Plaintiff] and other reasonable consumers would consider

3  'easy-to-use'" ostensibly because Plaintiff allegedly could not figure out when WP would charge

4  her for the subscription.  (FAC ¶ 55.)  In fact, Plaintiff dedicates an entire section of the FAC to

5  describe WP's alleged "inconsistent billing practices" expressing confusion about why her

6  subscription did not renew on the same day each month.  (FAC ¶¶ 49-58.)  But other parts of her

7  FAC, most notably the Checkout Page, belie these assertions.  WP informed her at the time she

8  purchased her subscription that it would renew "*every four weeks*"—and that is what it did.  Each

9  charge in the FAC (save one that is off by two days and is likely a scrivener's error) comes four

10  weeks after the prior one.  (FAC ¶ 49.)  Plaintiff's apparent misapprehension of the length of a

11  renewal term that was presented to her in an ARL-compliant manner cannot sustain a claimed

12  violation of § 17602(b).  Moreover, none of the FAC's allegations explain why Plaintiff did not

13  try to cancel her subscription until she had been charged for the eighth time.

14    Finally, Plaintiff alleges that as a result of WP's alleged failure to comply with the ARL,

15  "all goods, wares, merchandise, or products sent to Plaintiff and the Class … are deemed to be

16  'unconditional gifts'" pursuant to Cal. Bus. & Prof. Code § 17603.  But Plaintiff ignores that the §

17  17603 applies only to "goods, wares, merchandise, or products" that are "sent" to consumers, and

18  does not apply to a purely digital subscription.  *See, e.g.*, *Robinson v. OnStar, LLC*, 2020 WL

19  364221, at *23 (S.D. Cal. Jan. 22, 2020) (Section 17603 of the ARL "applies to 'goods' and not

20  'services.'"); *Johnson v. Pluralsight, LLC*, 236 F. Supp. 3d 1176, 1183 (E.D. Cal. 2017), *aff'd in

21  part, rev'd in part*, 728 F. App'x 674 (9th Cir. 2018) ("The Court finds it significant that the

22  provisions of § 17600 distinguish between 'shipments of a product' and 'deliveries of service,'

23  whereas § 17603 omits the phrase 'deliveries of service' entirely.  This distinction supports a

24  finding that § 17603 applies only to tangible products that are shipped to a consumer, and not to

25  intangible services like the online video subscriptions at issue here.  Indeed, the title of § 17603

26  itself bolsters a finding that it only applies to tangible goods.").

27

28

1

2

### 4.      Plaintiff's Claims based on Violations of §§ 17602(a)(1)-(2) and § 17602(b) Must Be Dismissed.

3

Because the ARL lacks its own private right of action, Plaintiff must instead assert a

4

variety of statutory and common law claims based on alleged ARL violations.  See *Mayron v.*

5

*Google LLC*, 2020 WL 5494245, at *3 (Cal. Ct. App. Sept. 11, 2020) ("Seeing no clear indication

6

of intent to create a private right of action in either the statutory text or its legislative history, we

7

conclude there is no such right under the automatic renewal law.").  Her UCL, FAL, CLRA,[6]

8

fraud, and negligent misrepresentation claims all must be dismissed because (i) they depend on

9

violations of §§ 17602(a)(1)-(2) and § 17602(b) and should be dismissed for the reasons above,

10

and (ii) she lacks statutory standing to pursue such claims.

11

### i.      Plaintiff's Claims Depend on Violations of the ARL.

12

Plaintiff does not allege any basis for her claims independent of the ARL.  Because

13

Plaintiff cannot establish a violation of ARL § 17602(a)(1) (clear and conspicuous pre-purchase

14

disclosures), § 17602(a)(2) (affirmative consent), or § 1702(b) (method of cancellation), her

15

derivative FAL, UCL, CLRA, and common law claims based on those non-existent ARL

16

violations must be dismissed.  *See, e.g.*, *Arnold v. Hearst Magazine Media, Inc.*, 2020 WL

17

3469367, at *7 (S.D. Cal. June 25, 2020) ("Arnold does not allege any basis for her FAL claim

18

19

_____

[6] Plaintiff's CLRA claims must also be dismissed because WP's digital subscriptions are not

20

goods or services under the CLRA.  Subscribers to WP's digital subscriptions have access to
digital content made available through WP's website and mobile application, which are

21

software.  "California law does not support [the] contention that software is a tangible good or a
service for purposes of the CLRA . . . ."  *Ferrington v. McAfee, Inc.*,  2010 WL 3910169, at *14

22

(N.D. Cal. Oct. 5, 2010) (holding that an automatically renewing subscription to software was
neither a good nor a service under the CLRA).  *See also In re iPhone Application Litig.*, 844 F.

23

Supp. 2d 1040, 1070 (N.D. Cal. 2012) ("[T]o the extent Plaintiffs' allegations are based solely
on software, Plaintiffs do not have a claim under the CLRA.").  WP's digital subscriptions are

24

sold online and provide access to content which is exclusively online.  Many courts have held
that software utilized online is not subject to the CLRA.  *See, e.g.*, *Rojas-Lozano v. Google, Inc.*,

25

159 F. Supp. 3d 1101, 1117 (N.D. Cal. 2016) ("Plaintiff has cited to no case, and indeed the
Court is unaware of even one, that holds that software utilized entirely online constitutes a

26

CLRA good or service.  For this reason, too, the CLRA claim fails."); *Ladore v. Sony Comput.*

27

*Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1073 (N.D. Cal. 2014) (distinguishing between software
purchased at a brick-and-mortar store (subject to the CLRA) and intangible software or a game

28

played online (not subject to the CLRA)).

13

independent of the Automatic Renewal Law. Arnold fails to state a claim for violation of the FAL."); *Lopez v. YP Holdings, LLC,* 2019 WL 2895190, at *4 (C.D. Cal. Mar. 26, 2019) (plaintiff's "UCL claim fail[ed] to the extent it [was] predicated on her claim for violation of the ARL"); *Parker-Bokelman v. Specialized Loan Serv. LLC*, 2019 WL 3243739, at *4 (C.D. Cal. June 3, 2019) ("[R]egardless of the prong, the UCL claim fails since Plaintiff predicates her UCL claim on the same allegations underlying Plaintiff's other claims against BOA.  Because these claims fail, the UCL claim fails as well.").

### ii.      Plaintiff Lacks Statutory Standing to Pursue Her CLRA, FAL, and UCL Claims.

Plaintiff has failed to allege statutory standing under the UCL, FAL, or the CLRA.  To have statutory standing under those statutes, a plaintiff must allege (i) an injury in fact;[7] and (ii) reliance on the allegedly misleading conduct. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); Cal. Civ. Code § 1780(a); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009).[8]

Plaintiff (1) purchased an automatically renewing subscription, manifesting assent to unambiguous and compliant terms; (2) allowed her subscription to continue for eight billing cycles, benefitting from her subscription throughout that period; and (3) upon deciding that she wanted to cancel her subscription, submitted a request, which WP honored immediately, making no more charges to Plaintiff's payment method.  She does not allege that WP billed her for a service she did not receive or that she tried to cancel the subscription prior to any renewal.  She does not allege that WP provided false information about her subscription on which she relied.

---

[7] The reference to "injury in fact" incorporates the standing requirements imposed by Article III of the U.S. Constitution.  *Kwikset*, 51 Cal. 4th at 322.

[8] The UCL was amended in 2004 to put an end to longstanding abuses of the statute by "prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact."  *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006) (quoting Prop. 64, § 1, subd. (e) (2004)); *see also, e.g., Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 547 (2013) (UCL has been "crafted to preclude the shakedown lawsuit").  A private UCL plaintiff must establish "injury in fact and [that she] has lost money or property as a result of the unfair competition." Bus. & Prof. Code § 17204 (emphasis added).

14

1  For those reasons, Plaintiff cannot plausibly allege that she suffered economic harm.  *See Chulick-*
2  *Perez v. CarMax Auto Superstores Cal., LLC*, 71 F. Supp. 3d 1145, 1149–51 (E.D. Cal. 2014)
3  (consumer did not sufficiently plead injury under UCL or CLRA, based on claim that used vehicle
4  dealership failed to provide her with authentic vehicle inspection certificate, absent plausible
5  allegation that she suffered even minor pecuniary damage); *In re Sony Gaming Networks &*
6  *Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (dismissing UCL,
7  FAL, and CLRA claims because consumer had not sufficiently plead injury under those statutes).
8      Just because a plaintiff "expended" money, does not mean that plaintiff "lost" money,
9  where, as here, the Plaintiff actually received the subscription WP promised.  *See Warner v.*
10  *Tinder, Inc.*, 105 F. Supp. 3d 1083, 1094-95 (C.D. Cal. 2015) ("[B]eing induced to purchase a
11  product one would not otherwise have purchased is not loss of money or property within the
12  meaning of [the UCL] as long as one still receives the benefit of the bargain.") (citation omitted).
13  In *Mayron v Google*, the court reached a similar result when considering similarly inadequate
14  allegations.  The superior court concluded the plaintiff failed to allege standing to bring a UCL
15  claim based on alleged ARL violations when the plaintiff's allegations made clear he paid for a
16  service he received and used.  *Mayron v. Google, Inc.*, 2016 WL 1059373, at *4 (Cal. Super. Feb.
17  26, 2016) ("Plaintiff does not allege that he did not receive and use Google Drive. . . . There are no
18  allegations that Plaintiff tried to cancel the service, or even that he did not want the service.").
19  The appellate court reached the same conclusion, holding that "the relevant inquiry for standing
20  purposes is whether a defendant's unlawful conduct caused the plaintiff to part with money."
21  *Mayron*, 2020 WL 5494245, at *4.  Where a complaint fails to allege "a loss caused by the
22  defendant's conduct" (like the FAC), it must be dismissed.  *See id.* at *4-5 (affirming dismissal
23  because plaintiff did not "properly allege[] causation of an economic loss as required to bring a
24  claim under section 17200").
25      The FAC shows that Plaintiff understood and appreciated *throughout her subscription* that
26  she purchased and was being charged for an automatically renewing subscription.  (FAC ¶ 49.)
27  While she contends that she struggled to discern WP's billing pattern during the course of her
28  subscription (even though it matched the four-week period disclosed on the Checkout Page), she

15

1   does not allege that she did not want, receive access to, or use the subscription, nor that she

2   attempted to cancel at any time prior to being charged eight times.  (FAC ¶¶ 49-51.)  That Plaintiff

3   recognized all of this and chose not to cancel until January 2019, despite eight separate charges to

4   her payment account, underscores Plaintiff's lack of economic injury, especially because when she

5   did try to cancel her subscription, she successfully unenrolled and WP did not charge her further.

6   (FAC ¶ 52.)  Indeed, the fact that Plaintiff knowingly allowed her subscription to renew *for eight*

7   *billing cycles* on top of her acceptance of the automatic renewal offer terms on the Checkout Page

8   fatally undermines the claim that "she was unaware that Defendant enrolled her in an 'automatic

9   renewal' program under which the subscription would renew" and "would not have purchased [her

10  WP subscription] or would have cancelled [her WP subscription] prior to the renewal of the

11  subscriptions, so as not to incur additional fees."  (FAC ¶¶ 47, 80.)  *See Mayron*, 2020 WL

12  5494245, at *5; *Thompson v. Auto. Club of S. Cal.*, 217 Cal. App. 4th 719, 733 (2013) ("[Plaintiff]

13  focuses on his 2005 (for the 2006 year) and 2007 renewals, for which he alleges he received no

14  disclosure, selectively ignoring the year he did receive such a disclosure and chose to proceed

15  anyway. . . . [T]his seriously calls in doubt whether the disclosure was material or would have

16  been material in the earlier years.").

17          Confusingly, Plaintiff alleges she "struggled immensely with the cancellation process,"

18  despite (i) an alleged Checkout Page that instructs her to cancel by selecting "Cancel

19  Subscription" in her account settings and (ii) admitting that relevant cancellation terms and

20  instructions appear on WP's website in the WP Terms of Sale, which are linked in the Checkout

21  Page, and WP Help Center.  (FAC ¶ 53.)  Plaintiff's alleged struggles arise from her

22  misconception that her subscription would renew each month rather than every four weeks

23  (despite the Checkout Page's language to the contrary).  Even so, upon her first attempt to

24  unsubscribe, Plaintiff succeeded without hardship or delay and WP did not charge her again. (FAC

25  ¶ 52.)  As a result, Plaintiff fails to allege she suffered an economic injury stemming from her

26  purported confusion.  *See Johnson*, 236 F. Supp. 3d at 1183 (dismissing UCL claims for lack of

27  standing because alleged violation of the ARL could not show economic harm).

28

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

Plaintiff also has not plausibly alleged (and cannot plead) a causal linkage between the offending conduct and an alleged injury. *See Laster v. T- Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing UCL claim where plaintiff failed to allege causation), *aff'd*, 252 Fed. Appx. 777 (9th Cir.2007). "A plaintiff fails to satisfy this causation requirement if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'" *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017) (quoting *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007)). Plaintiff does not identify an alleged misrepresentation or omission that she relied on, which would have led to her alleged harm—she would have subscribed even if WP did everything that Plaintiff claims it did not. *See Arnold*, 2020 WL 3469367, at *9 ("[A] plaintiff must plead that the alleged misrepresentation was directly related to the plaintiff's injurious conduct and that the plaintiff actually relied on the alleged misrepresentation.").

That Plaintiff continued to subscribe to *The Washington Post* for eight billing cycles after learning she was being charged belies the notion that alleged ARL violations caused any harm she may have suffered. *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("If Plaintiffs purchased or continued to purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct, then Plaintiffs may have no claim under either the UCL or the CLRA."). If Plaintiff suffered harm, it resulted from her own miscomprehension and inaction. *See Roz v. Nestle Waters N. Am., Inc.*, 2017 WL 6942661, at *4 (C.D. Cal. Dec. 6, 2017) (UCL's causation requirement for an alleged ARL violation demands that plaintiff plead and prove that defendants' "nondisclosure was an immediate cause of the plaintiff's injury-producing conduct") (citation omitted). Accordingly, like the plaintiff in *Mayron*, Plaintiff "misses the crucial requirement of causation." *Mayron*, 2020 WL 5494245, at *5. As a result, she has not alleged either an injury in fact or causation, and the UCL, FAL, and the CLRA claims must be dismissed for failure to allege statutory standing.

**B. Plaintiff Cannot Allege Claims based on WP's Alleged Post-Purchase ARL Violations, Which, By Definition, Occurred After the Subscription Purchase.**

Unable to plausibly plead that WP violated the ARL through its pre-purchase disclosures or induced her purchase through a pre-purchase misrepresentation, Plaintiff tries to plead alleged

17

deficiencies in WP's actions *after* she purchased her subscription.  Plaintiff claims that WP sent her a deficient "acknowledgment" email after purchase.  (FAC ¶ 41.)[9]  The ARL requires businesses "to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer."  § 17602(a)(3).  It also clarifies that such acknowledgment "may be fulfilled after completion of the initial order."  § 17602(e)(1).

Plaintiff's CLRA, FAL, fraud, or negligent misrepresentation claims stemming from the alleged *post-purchase* deficiency fail because the post-purchase email cannot cause or induce the sale.  Plaintiff cannot plausibly plead that the failure to receive certain information post-purchase influenced her pre-purchase decisions.  And all her statutory claims based on that post-purchase acknowledgment fail in any event because Plaintiff lacks statutory standing to pursue them.[10]

1.     **Plaintiff Fails to State a CLRA Claim Because the Post-Purchase Acknowledgment Did not Intend to Lead to a Sale.**

Acts *after* a purchase cannot sustain a CLRA claim.  The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by a person in a transaction *intended to result or which results in the sale* or lease of any goods or services to any consumer."  Cal. Civ. Code § 1770(a) (emphasis added).  For that reason, according to the plain language of the statute, a non-compliant *post-sale* statement cannot be an "act or practice" that is "intended to result or which results in the sale."  As a result, even if there were any unfair or deceptive acts in the form of WP's post-sale acknowledgement—and there were not—they are

---

[9] Plaintiff does not attach or embed a copy of the acknowledgement email she received.  Rather, she alleges, in a conclusory fashion, that she received a post-purchase acknowledgement email from WP, but it was deficient under the ARL because it did not include the automatic renewal offer terms, the cancellation policy, and information on how to cancel.  (FAC ¶ 41.)

[10] Even if a WP digital subscription was a good, ware, merchandise, or product sent to subscribers (which it is not, *see supra* Section IV(A)(3)), § 17603 only makes goods and products sent to a consumer an "unconditional gift" when a business "fails to obtain affirmative consent" prior to purchase.  As a result, any alleged deficiency in the post-purchase acknowledgment *cannot* trigger § 17603's "unconditional gift" provision where, as here, the Defendant has obtained affirmative consent.  *See Johnson v. Pluralsight, LLC*, 728 Fed. Appx. 674, 678 (9th Cir. 2018) ("By its terms, section 17603 applies only where the business sends 'goods, wares, merchandise, or products to a consumer . . . without first obtaining the consumer's affirmative consent as described in Section 17602.'").

18

excluded from the CLRA.  *See e.g.*, *Sansoe v. Ford Motor Co.*, 2017 WL 4025218, at *2 (N.D. Cal. Sept. 13, 2017) ("The CLRA claim fails because the challenged conduct occurred after the sale of the vehicles, and thus could not have constituted deceptive acts that were intended to or did result 'in the sale or lease of goods or services to [a] consumer.'"); *Harlan v. Roadtrek Motorhomes, Inc.*, 2009 WL 928309, at *17 (S.D. Cal. Apr. 2, 2009) (conduct occurring after the sale of the product at issue "could not have constituted 'deceptive acts ... intended to result ... in the sale or lease of goods or services" under [the CLRA].") (ellipses in original).[11]

> **2.  Plaintiff Has Not Pled an FAL Claim Based on the Allegedly Deficient Post-Purchase Acknowledgment, and Could Not Do So.**

Nor can post-purchase acts support an FAL claim.  The FAL makes it unlawful to "induce the public to enter into any obligation" relating to "the dispos[ition] of . . . personal property or to perform services" by distributing "in any advertising device," among other advertising mechanisms, a statement about "personal property or those services . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  (FAC ¶¶ 93–94, citing Cal. Bus & Prof. Code § 17500; emphasis added.)  "Courts interpret the term 'disposition' to mean the sale of property or services."  *Darling v. Green*, 2013 WL 11323320, at *11 (C.D. Cal. Sept. 25, 2013).  *See also Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Plaintiffs must prove that Defendant made a 'statement,' in connection with the sale of personal property . . . .").

WP's alleged failure to send a compliant ARL acknowledgment email following Plaintiff's subscription purchase falls outside the scope of the FAL for the same reasons it falls outside the CLRA.  Plaintiff has not pled and cannot plead that WP sent the post-purchase acknowledgment

---

[11] That Plaintiff broadly pleads that WP's practices consisted of omissions and representations does not alter the analysis.  *See, e.g.*, *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200–01 (N.D. Cal. 2014) ("Plaintiff cannot contend that she relied on Apple's representations or omissions regarding the delivery of iMessages or the Messages application in deciding whether to purchase the iPhone because those representations and omissions had not yet taken place."); *Hensley-Maclean v. Safeway, Inc.*, 2014 WL 1364906, at *6 (N.D. Cal. Apr. 7, 2014) ("The flaw in plaintiffs' approach [to CLRA claim] is that Safeway's post-sale failure to warn does not occur in the context of a transaction.  Rather, these omissions occur after the transaction had been completed.").

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

with the "intent to dispose of . . . personal property or to perform services" nor that statements

therein were advertisements because WP sent the acknowledgment email post-purchase. *Darling*,

2013 WL 11323320,  at *11 (dismissing FAL claims that relied on representations made in a

conversation two years after the sale of a motor home because the "FAL triggers only when a

party makes a statement during the sale of personal property or services").  Indeed, Plaintiff

seemingly concedes as much given that she has not even try to plead such a claim.  Rather, she

pleads that the "representations and omissions *on the Checkout Page*"—i.e., the statements made

pre-purchase—are the only statements that "constitute . . . advertisements."  (FAC ¶ 95.)

Plaintiff's FAL claim must be dismissed.

### 3. Plaintiff Fails to Plead Fraud or Negligent Misrepresentation in Relation to the Post-Purchase Acknowledgment.

An alleged post-purchase deficiency also cannot support claims for fraud or negligent

misrepresentation.  Fraud is "[t]he suggestion, as a fact, of that which is not true, by one who does

not believe it to be true."  Cal. Civ. Code § 1572.  The elements of a claim for fraud are: "(a)

misrepresentation . . .; (b) knowledge of falsity . . .; (c) intent to defraud, i.e., to induce reliance;

(d) justifiable reliance; and (e) resulting damage."  *L'Garde Inc. v. Raytheon Space and Airborne

Sys.*, 805 F. Supp. 2d 932, 944 (C.D. Cal 2011) (citation omitted).  Similarly, to state a claim for

negligent misrepresentation, a plaintiff must plead (1) a misrepresentation; (2) made without

reasonable grounds for believing it to be true; (3) intent to defraud, and to induce reliance; (4)

justifiable reliance; and (5) resulting damage.  *See Lyons v. Bank of America, N.A.*, 2011 WL

3607608, at *6 (N.D. Cal. Aug. 15, 2011).

Plaintiff has not (and cannot) allege that the purported failure to send a compliant post-

purchase acknowledgement induced reliance when she made the purchase.  *Darling*, 2013 WL

11323320, at *12 ("Because such alleged misrepresentations occurred *after* the motor home's title

passed to Plaintiffs, Plaintiffs have not shown with particularity that Defendant committed fraud

before or at the time of sale.") (emphasis in original).  In fact, Plaintiff limits her fraud and

negligent misrepresentation claims to actions taken by WP before the purchase, asserting that the

alleged misrepresentations and omissions "were intended to induce and actually induced Plaintiff

---

20

1   and Class Members *to purchase* the [WP] Subscription." (FAC ¶ 124; FAC ¶ 118.)  Her claims

2   should be dismissed.

3       **4.**    **Plaintiff Lacks Statutory Standing for Her UCL, FAL, and CLRA Claims Based on the Allegedly Non-Compliant Post-Purchase Acknowledgment.**

4

5           Plaintiff also lacks statutory standing to bring claims based on the alleged failure to send a

6   compliant post-purchase acknowledgment.  A plaintiff must allege actual harm "as a result of the

7   alleged failure to provide the acknowledgement"; otherwise, she lacks standing.  *See Kissel v.*

8   *Omega Nat. Sci., Inc.*, 2016 WL 9019613, at *4 (C.D. Cal. Aug. 22, 2016).  Plaintiff's allegations

9   of "economic injury" are devoid of any allegations that pertain solely to the allegedly deficient

10   acknowledgment email.  (FAC ¶ 57) ("As a direct result of Defendant's unlawful conduct

11   described above, [Plaintiff] suffered economic injury.  Had Defendant complied with the ARL by

12   adequately disclosing the terms associated with her [WP] Subscription purchase, [Plaintiff] would

13   have been able to read and review the auto renewal terms **prior to purchase**, and she would have

14   not subscribed to *The Washington Post* or she would have cancelled her [WP] Subscription earlier,

15   *i.e.*, prior to the expiration of the initial subscription period.") (emphasis added).  Thus, Plaintiff

16   has not adequately pled and cannot plead economic injury from the allegedly deficient post-

17   purchase acknowledgment.

18           Although Plaintiff alleges she "struggled immensely with the cancellation process," she

19   attributes that to her contention that WP provided incomplete information "on the Checkout Page

20   *and* later in the acknowledge[ment] email" (FAC ¶ 53)—not *solely because* of the purportedly

21   deficient email.  In any event, despite her vague and conclusory allegation that she "struggled"

22   with cancellation, Plaintiff admits (i) that WP truthfully disclosed instructions about how to cancel

23   on the Checkout Page and on WP's website in the WP Terms of Sale and WP Help Center and (ii)

24   that she was able to successfully cancel when she emailed WP.  That being so, the cancellation

25   process is not itself "unlawful" and Plaintiff has not alleged, much less with the required

26   particularity, how it is "unfair" under the UCL.

27           Even if Plaintiff could state some sort of pecuniary harm from the acknowledgment, she

28   cannot plausibly allege sufficient causation.  In fact, she alleges that all of her monetary injuries

21

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

1   are causally related to WP's pre-purchase disclosures, not those in the acknowledgement.  (*See,*

2   *e.g.*, FAC ¶ 80) (UCL: "Plaintiff and the members of the Class have suffered a substantial injury

3   in fact and lost money by virtue Defendant's acts of unfair competition, *which caused them to*

4   *purchase* the [WP] Subscriptions.") (emphasis added).  Nowhere does Plaintiff allege that she

5   would not have purchased her automatically renewing subscription to *The Washington Post* had

6   she known she would receive a deficient acknowledgement email.  Nor would any such

7   allegations pass the plausibility test.

8   ### C.  Plaintiff Has Not Pled Her CLRA, FAL, UCL, Negligent Misrepresentation, or Fraud Claims with Sufficient Particularity to Satisfy Rule 9(b).

9

10   Plaintiff's CLRA, FAL, UCL, fraud, and negligent misrepresentation claims must be

11   dismissed because she has not pled them plausibly or as required by Federal Rule 9(b).

12   *CLRA.* Plaintiff alleges that WP violated two specific provisions of the CLRA: (1)

13   representing that the subscriptions have "characteristics, uses, and/or benefits that they do not" and

14   (2) advertising "the goods in question without the intent to sell them as advertised."  (FAC ¶ 104.)

15   But she does not describe how WP is alleged to have engaged in these prohibited acts beyond

16   stating that "[t]he acts and practices of Defendant as described above," referencing the entire

17   factual allegation section of the FAC.  Plaintiff's allegations are but mere conclusory statements

18   parroted from the statute. *Compare* FAC ¶ 104 *with* Cal. Civ. Code § 1770.  The allegations are

19   unsupported by facts.  Plaintiff makes no attempt to allege or explain what, specifically, WP

20   "falsely represented" to her or why any such statement was false when made.  That failure by itself

21   is grounds for dismissal.  *See, e.g., Arnold*, 2020 WL 3469367, at *9 (dismissing as conclusory

22   plaintiff's allegations that defendants failed to "present the automatic renewal offer terms or

23   continuous service offer terms in a clear and conspicuous manner").  And even if the Court reads

24   factual allegations into Plaintiff's bald recitations, the Checkout Page in the FAC shows that WP

25   made a series of true statements, gave Plaintiff precisely what she bargained for, and did exactly

26   what WP promised it would do.

27   *FAL.*  Without identifying any particular statement that WP has made that is untrue or

28   misleading, Plaintiff's FAL claim simply recites the statutory language.  (*See generally*, FAC ¶¶

22

92-99.)  Plaintiff also fails to plead any facts showing that any such unspecified statement was known or should have been known to WP to be false.  *Id*.  Restatement of the statutory language fails to meet the heightened pleading standard for FAL claims.  *See Arnold*, 2020 WL 3469367, at *7 (dismissing plaintiff's FAL cause of action where plaintiff relied on conclusory allegations, failed "to allege facts from which the Court can identify any violation of the Automatic Renewal Law," and "[did] not allege any basis for her FAL claim independent of the [ARL]").

   ***UCL.***  Plaintiff's UCL claim cannot stand as alleged.  Like Plaintiff's other statutory claims, her UCL allegations fail to allege how WP violated the statute or articulate the activities directly supporting her claim.  Plaintiff fails to explain how the alleged violations of the ARL amount to a representation that WP's "goods and services had certain characteristics that they do not" or how WP advertised goods and services "with the intent not to sell them as advertised."

   ***Fraud and Negligent Misrepresentation.***  Plaintiff has not (and cannot) state a claim for fraud or negligent misrepresentation.  Fatal to Plaintiff's fraud and negligent misrepresentation claims is that she has not alleged that WP made a misrepresentation.  The FAC alleges that WP made a series of true statements,[12] gave Plaintiff precisely what she bargained for, and did exactly what the company promised it would do.  Plaintiff admits that WP disclosed all relevant details of her subscription on the Checkout Page and elsewhere on WP's website, for example in the WP Terms of Sale and WP Help Center.  (FAC ¶¶ 48, 53, 55.)   It is indisputable that the provisions outlined in the Terms of Sale (which she explicitly agreed to when she purchased her subscription) and the details set out in the WP Help Center are relevant to and proscribe her common law claims for fraud and negligent misrepresentation.  Courts routinely dismiss consumer fraud claims where, as here, the allegedly undisclosed or misleading information was actually provided.  *See, e.g., Freeman v. Time, Inc.*, 68 F. 3d 285, 290 (9th Cir. 1995) (affirming dismissal of UCL and FAL claims alleging nondisclosure after reviewing promotional materials at issue).

---

[12] Any allegation that how often WP charged Plaintiff for her subscription stems from a misrepresentation is belied by the plain language of the Checkout Page and other disclosures made by WP, which disclose she would be charged every four weeks, not every month.

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO

1    Finally, Plaintiff's negligent misrepresentation claim cannot survive as alleged because the

2  FAC fails to identify a *positive assertion* to support her claim.  *See Apollo Capital Fund LLC v.*

3  *Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) ("[A] positive assertion is

4  required; an omission or an implied assertion or representation is not sufficient."); *Yanese v. Auto.*

5  *Club of So. Cal.*, 212 Cal. App. 3d 468, 473 (1989) ("Since the tort requires a 'positive assertion,'

6  the doctrine does not apply to implied representations.") (internal citations omitted).

7    **D.  Plaintiff Has Not Plausibly Pled Conversion.**

8    A conversion claim requires a defendant's conversion of property by a wrongful act

9  resulting in damages to plaintiff.  *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1452

10  (2013).  Plaintiff cannot state such a claim.  As the Checkout Page shows, Plaintiff accepted WP's

11  offer of a subscription at a set price and agreed to pay for it.  She entered her contact and billing

12  information and WP informed her that it would charge her every four weeks and her subscription

13  would renew automatically until she cancelled.  She then clicked the "Start your subscription"

14  button immediately below that language.  This series of voluntary acts constitutes consent to the

15  purchase of a subscription at the price stated as well as agreement to the referenced Terms of Sale.

16  Plaintiff's consent to the subscription agreement bars a claim for conversion; as does the fact that

17  she *received access to that subscription*.  *See Klett v. Sec. Acceptance Co.*, 38 Cal. 2d 770, 789

18  (1952); *Driver v. Acquisto*, 145 Cal. App. 2d 304, 308 (1956); s*ee also Hall*, 2020 WL 2303088,

19  at *5 ("Because Plaintiff fails to plausibly allege any ARL violations, the Court also finds that she

20  fails to plausibly state a claim for theft or conversion.").  Further, because Plaintiff consented to

21  the transfer, she likewise has not pled damages as required to state a claim for conversion.  As a

22  result, Plaintiff's conversion claim should be dismissed with prejudice.

23    **E.  Unjust Enrichment Is Not a Valid Cause of Action Under California Law.**

24    Plaintiff's purported unjust enrichment claim must be dismissed because under California

25  law, there is no such thing as a stand-alone cause of action for unjust enrichment.  *Wolph,* 2009

26  WL 2969467, at *5 ("unjust enrichment does not constitute a stand-alone cause of action"); *In re*

27  *Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 966 (N.D. Cal. 2007) ("there simply is no

28  cause of action in California for unjust enrichment") (citation and internal quotations omitted),

1   *aff'd*, 741 F.3d 1022 (9th Cir. 2014); *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802

2   F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (collecting cases).  Even if unjust enrichment were a

3   stand-alone cause of action, the only basis for this claim is "Defendant's failure to disclose

4   material terms of the purchase agreement" which "induced Plaintiff and the Class to purchase the

5   [WP] Subscriptions."  (FAC ¶ 111.)  But none of WP's pre-purchase disclosures were deficient or

6   untrue, so WP cannot have been unjustly enriched by them.  *See Oestreicher v. Alienware Corp.*,

7   544 F. Supp. 2d 964, 975 (N.D. Cal. 2008) (holding unjust enrichment claim failed where fraud-

8   based claims failed), *aff'd*, 322 Fed. Appx. 489 (9th Cir. 2009).  In short, WP has neither done

9   anything unjust nor been unjustly enriched—and the FAC does not allege otherwise.  Plaintiff's

10  unjust enrichment claim should be dismissed with prejudice.

11  **V.    CONCLUSION**

12         For these reasons, this Court should grant this motion and dismiss the FAC with

13  prejudice.

14

15  Dated: October 19, 2020            **ZWILLGEN LAW LLP**

16                                     By: /s/ Alexei Klestoff
                                           Alexei Klestoff (SBN 224016)
17                                         alexei@zwillgen.com
                                           Jacob Sommer (*pro hac vice*)
18                                         jake@zwillgen.com
                                           Zachary Lerner (*pro hac vice*)
19                                         zach@zwillgen.com
20                                     **Attorneys for Defendant**
                                       WP Company LLC
21

22

23

24

25

26

27

28

DEFENDANT WP COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 20-cv-05218-WHO