1   **BURSOR & FISHER, P.A.**
    Frederick J. Klorczyk III (State Bar. No. 320783)
2   888 Seventh Avenue
    New York, NY  10019
3   Telephone: (646) 837-7150
    Facsimile: (212) 989-9163
4   E-Mail: fklorczyk@bursor.com

5   **BURSOR & FISHER, P.A.**
    Neal J. Deckant (State Bar No. 322946)
6   Julia K. Venditti (State Bar No. 332688)
    1990 North California Boulevard, Suite 940
7   Walnut Creek, CA  94596
    Telephone: (925) 300-4455
8   Facsimile: (925) 407-2700
    E-Mail: ndeckant@bursor.com
9           jvenditti@bursor.com

10  *Attorneys for Plaintiff*

11

12              **IN THE UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14  DEBORAH JORDAN, individually and on
    behalf of all others similarly situated,          Case No. 3:20-cv-05218-WHO
15
                                                       **PLAINTIFF'S NOTICE OF MOTION**
16                              Plaintiff,              **AND UNOPPOSED MOTION FOR**
                                                       **PRELIMINARY APPROVAL OF**
17            v.                                        **CLASS ACTION SETTLEMENT;**
                                                       **SUPPORTING MEMORANDUM OF**
18  WP COMPANY LLC, d/b/a THE                          **POINTS AND AUTHORITIES**
    WASHINGTON POST,
19                                                     Date:   July 7, 2021
                                Defendant.             Time:   2:00 p.m.
20                                                     Courtroom: 2, 17th Floor
                                                       Judge:  Hon. William H. Orrick
21

22

23

24

25

26

27

28

---

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:20-CV-05218-WHO

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

 **NOTICE IS HEREBY GIVEN THAT** on July 7, 2021, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 2 on the 17th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable William H. Orrick presiding, Plaintiff Deborah Jordan ("Plaintiff"), by and through her undersigned counsel of record, will and hereby does move, pursuant to Fed. R. Civ. P. 23(e), for the Court to:  (i) grant preliminary approval of the proposed Stipulation of Class Action Settlement and Release (the "Settlement" or "Settlement Agreement") submitted herewith; (ii) provisionally certify the Class for the purposes of preliminary approval, designate Plaintiff as the Class Representative, and appoint Bursor & Fisher, P.A., as Class Counsel; (iii) establish procedures for providing notice to members of the Class; (iv) approve forms of notice to Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a final approval hearing.

 This Motion is made on the grounds that terms of the proposed Settlement are fair and reasonable, and that preliminary approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met.  Accordingly, Plaintiff requests that the Court enter the accompanying [Proposed] Order Granting Preliminary Approval of Class Action Settlement (the "[Proposed] Preliminary Approval Order").

 The Motion is based on the Declaration of Frederick J. Klorczyk III (the "Klorczyk Decl.") and the exhibits attached thereto, including the Settlement Agreement; the [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Points and Authorities filed herewith; the pleadings and papers on file in this Action; and such other evidence and argument as may subsequently be presented to the Court.

1   Dated: May 28, 2021                    Respectfully submitted,

2                                          **BURSOR & FISHER, P.A.**

3                                          By:    _/s/ Frederick J. Klorczyk III_

4                                          Frederick J. Klorczyk III (State Bar No. 320783)
                                           888 Seventh Avenue
5                                          New York, NY  10019
                                           Telephone: (646) 837-7150
6                                          Facsimile: (212) 989-9163
                                           E-Mail: fklorczyk@bursor.com
7
                                           **BURSOR & FISHER, P.A.**
8                                          Neal J. Deckant (State Bar No. 322946)
                                           Julia K. Venditti (State Bar No. 332688)
9                                          1990 North California Boulevard, Suite 940
                                           Walnut Creek, CA  94596
10                                         Telephone: (925) 300-4455
                                           Facsimile: (925) 407-2700
11                                         E-Mail: ndeckant@bursor.com
                                                      jvenditti@bursor.com
12

13                                         *Attorneys for Plaintiff and the Putative Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

    A.     California's Automatic Renewal Law ......................................................... 2

    B.     Plaintiff's Allegations ................................................................................. 2

    C.     The Litigation History, Defendant's Motion To Dismiss And
           Settlement Discussions ................................................................................ 3

III.   THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS
      ACTION SETTLEMENTS ................................................................................... 4

IV.    TERMS OF THE PROPOSED SETTLEMENT .................................................. 6

    A.     Class Definition .......................................................................................... 6

    B.     Monetary And In-Kind Relief For Class Members ..................................... 7

    C.     Injunctive Relief ......................................................................................... 8

    D.     Release ........................................................................................................ 9

    E.     Incentive Award .......................................................................................... 9

    F.     Attorneys' Fees And Expenses .................................................................... 9

    G.     Notice And Administrative Expenses ......................................................... 9

V.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL
      BECAUSE THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE,
      AND REASONABLE ........................................................................................ 10

    A.     The *Hanlon* Factors ................................................................................. 11

          1.     Strength of Plaintiff's Case ........................................................... 11

          2.     Risk of Continuing Litigation ....................................................... 11

          3.     Risk of Maintaining Class Action Status ...................................... 13

          4.     The Amount Offered In Settlement ............................................... 14

          5.     The Extent Of Discovery ............................................................... 17

          6.     Experience And Views Of Counsel ............................................... 17

    B.     The Rule 23(e)(2) Factors ........................................................................ 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

|  |  | 1. | The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)) .............................18 |
|  |  | 2. | The Settlement Was Negotiated At Arm's Length.......................................18 |
|  |  | 3. | The Settlement Provides Adequate Relief To The Class ............................19 |
|  |  | 4. | The Settlement Treats All Class Members Equally ....................................22 |
| VI. | CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ...........................................................................................................23 |
|  | A. | The Class Satisfies Rule 23(a)..............................................................................24 |
|  |  | 1. | Numerosity .................................................................................................24 |
|  |  | 2. | Commonality...............................................................................................24 |
|  |  | 3. | Typicality....................................................................................................25 |
|  |  | 4. | Adequacy.....................................................................................................26 |
|  | B. | The Class Satisfies Rule 23(b)(3)........................................................................27 |
|  |  | 1. | Common Questions Predominate ................................................................28 |
|  |  | 2. | A Class Action Is A Superior Mechanism .................................................28 |
| VII. | PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.............................................................................................................................29 |
| VIII. | THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .................................29 |
|  | A. | The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)......................................................................................................................29 |
|  | B. | Distribution Of The Class Notice Will Comply With Rule 23(c)(2) .....................30 |
| IX. | CONCLUSION ...........................................................................................................30 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alaniz v. California Processors, Inc.*,
   73 F.R.D. 269 (N.D. Cal. 1976) ................................................... 5

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .................................................... 4

*Alvarez v. Farmers Ins. Exch.*,
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)............................... 22

*Alvarez v. Sirius XM Radio Inc.*,
   2020 WL 7314793 (C.D. Cal. July 15, 2020) ........................ 20, 25

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .............................................................. 23, 28

*Beaver v. Alaniz*,
   439 U.S. 837 (1978) ................................................................... 5

*Blandino v. MCM Constr., Inc.*,
   2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ............................ 21

*Boyd v. Avanquest N. Am. Inc*,
   2015 WL 4396137 (N.D. Cal. July 17, 2015) ................... 19, 23, 25

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979)................................... 4, 17, 19

*Carlotti v. ASUS Computer Int'l*,
   2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ............................. 6

*Carter v. XPO Logistics, Inc.*,
   2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ........................ 10, 17

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) .............................................. 26

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F. 3d 566 (9th Cir. 2004) ................................................... 10

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................... 4

*Dalchau v. Fastaff, LLC*,
  2018 WL 1709925 (N.D. Cal. Apr. 9, 2018)..................................................................... 25

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ...................................................................................... 27

*Ferrell v. Buckingham Prop. Mgmt.*,
  2021 WL 488314 (E.D. Cal. Feb. 10, 2021) ...................................................................... 4

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)............................................................ 11, 18, 21

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687829 (N.D. Cal. Apr. 22, 2010)................................................................... 22

*Gen. Tel. Co. of the Southwest Falcon*,
  457 U.S. 147 (1982) ......................................................................................................... 26

*Greko v. Diesel U.S.A., Inc.*,
  2013 WL 1789602 (N.D. Cal. Apr. 26, 2013)................................................................... 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................... passim

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989)................................................................................. 22

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ..................................................................... 13

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................................... 23

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
  2014 WL 7240144 (N.D. Cal. Dec. 19, 2014) .................................................................... 4

*In re HP Inkjet Printer Litig.*,
  716 F.3d 1173 (9th Cir. 2013) .......................................................................................... 15

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018).................................................................. 21

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ....................................................................................... 17, 21

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .................................................................. 13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................................................ 17

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................ 6, 18, 21

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................ 4, 5, 19

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 5, 22, 23

*Johnson v. Triple Leaf Tea Inc.*,
   2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ........................................................ 14

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ...................................................... 6, 14, 15, 16

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) .......................................................................... 24

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. July 11, 2014) ............................................ 12, 13, 21, 22

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................................ 14

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) .............................................................. 21

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 12, 14

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................ passim

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ................................................................................................ 28

*Pena v. Taylor Farms Pac., Inc.*,
   2021 WL 916257 (E.D. Cal. Mar. 10, 2021) .............................................................. 10

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ................................................. 19, 22, 23

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968) .................................................................................................. 6

*Ramirez v. TransUnion LLC*,
   951 F.3d 1008 (9th Cir. 2020) .................................................................................. 26

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) .............................................................................. 25

*Rodriguez v. West Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) .......................................................................... passim

*Rothfarb v. Hambrecht*,
 649 F. Supp. 183 (N.D. Cal. 1986) .......................................................................... 5

*State of California v. eBay, Inc.*,
 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ...................................................... 23

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ........................................................................... 26, 27

*Vasquez v. Coast Valley Roofing, Inc.*,
 266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................... 22

*Villegas v. J.P. Morgan Chase & Co.*,
 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................................................... 19

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ........................................................................ 21, 22

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ...................................................................................... 25, 28

*Wellens v. Sankyo*,
 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ...................................................... 22

*Zinser v. Accufix Research Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) .............................................................................. 27

**STATUTES**

28 U.S.C. § 1715 ................................................................................................... 30

Cal. Bus. & Prof. Code § 17200 .............................................................................. 2

Cal. Bus. & Prof. Code § 17500 .............................................................................. 2

Cal. Bus. & Prof. Code § 17600 ........................................................................... 1, 8

Cal. Civ. Code § 1750 ............................................................................................. 2

**RULES**

Fed. R. Civ. P. 8 ................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 12

Fed. R. Civ. P. 23 ................................................................................................ passim

Fed. R. Civ. P. 26 ...................................................................................................... 4

**OTHER AUTHORITIES**

Manual for Complex Litigation § 21.312 (4th ed. 2004) ............................................ 5

Manual for Complex Litigation § 21.62 (4th ed. 2004) ............................................ 11

Manual for Complex Litigation § 30.44 (2d ed. 1985) .............................................. 5

Newberg on Class Actions § 11.27 (4th ed. 2002) .................................................... 23

Newberg on Class Actions § 11.28 (4th ed. 2002) .................................................... 26

Newberg on Class Actions § 11.41 (4th ed. 2002) ...................................................... 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Plaintiff Deborah Jordan ("Plaintiff"), by and through Class Counsel,[1] respectfully submits this memorandum in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.  In this putative class action, Plaintiff alleges that Defendant WP Company LLC ("Defendant" or "WaPo") has failed to comply with California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., which imposes detailed information, notice, and consent requirements on businesses that make automatic renewal or continuous service offers to California consumers.  Since filing the Complaint, the Parties have engaged in informal discovery, which shows Defendant collected renewal fees from approximately 321,671 subscribers during the Class Period in a manner that allegedly did not comply with the ARL.

After mediation in March 2021, the Parties reached a class settlement agreement that, if approved, will deliver immediate and substantial monetary and in-kind relief to putative Class Members and will resolve Plaintiff's and the putative class's claims against Defendant.  The Stipulation of Class Action Settlement Agreement and Release (the "Settlement") and its exhibits are submitted as **Exhibit 1** to the contemporaneously filed Declaration of Frederick J. Klorczyk III (the "Klorczyk Decl.").  The Settlement consists of cash and non-cash benefits with a total value of approximately $6,762,480.  Under the Settlement's terms, WaPo will automatically provide over $4,362,480 worth of account credit codes (the "Automatic Account Credit Codes") to Class Members who do nothing during the claims process, and will also establish a non-reversionary cash Settlement Fund in the amount of $2,400,000, which will be used to pay all approved claims by Class Members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court.

Defendant does not oppose this motion.  Given the exceptional relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement is fair and reasonable, and warrants preliminary approval.  Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the proposed Settlement; (2) conditionally certify the settlement class under Fed. R. Civ. P. 23(b)(3); (3) appoint Frederick J. Klorczyk III of Bursor & Fisher, P.A.

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement Agreement.  *See* Klorczyk Decl. Ex. 1.

as Class Counsel; (4) appoint Plaintiff Deborah Jordan as the Class Representative for the

Settlement Class; (5) approve the Notice Plan described in the Settlement and direct its

distribution; and (6) schedule a hearing for final approval.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   California's Automatic Renewal Law

On December 1, 2010, the California Legislature enacted the Automatic Renewal Law

("ARL") with the intent to "end the practice of ongoing charging of consumer credit or debit cards

or third-party payment accounts without the consumers' explicit consent for ongoing shipments of

a product or ongoing deliveries of service." *See* First Amended Complaint (ECF No. 22) ("FAC")

¶ 21 (citing statement of legislative intent).  In 2018, the California Legislature amended the ARL

to increase consumer protections for orders that contain free trial and promotional pricing, and

subscription agreements entered into online. *See id.* ¶ 22.  Thus, the ARL's core requirements are

that: (1) businesses must clearly and conspicuously disclose automatic renewal terms of any offer,

as defined by the statute; (2) they must obtain a consumer's affirmative consent; and (3) they must

provide consumers with an acknowledgment containing the terms of the automatically renewing

offer and cancellation information. *See id.* ¶ 23.  Private citizens in California may enforce ARL

violations as predicate claims under California's Unfair Competition Law ("UCL"), Cal. Bus. &

Prof. Code §§ 17200, *et seq.*, which prohibits "any unlawful[] … business act or practice[.]" *See*

FAC ¶ 72.  Additionally, ARL violations may constitute acts of false advertising in violation of

California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.  See* FAC

¶¶ 93-97.  Finally, ARL violations may also constitute violations under California's Consumers

Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.  See* FAC ¶¶ 102-05.

### B.   Plaintiff's Allegations

Defendant is an international media company that, among other activities, publishes and

distributes to California consumers digital editions of *The Washington Post* and provides

automatically renewing subscription plans for various digital products and services under the

Washington Post brand name (the "WaPo Subscriptions").  Plaintiff alleges that Defendant

automatically renewed Class Members' WaPo Subscriptions in violation of the ARL.  FAC ¶ 1.

Specifically, Plaintiff alleges that when consumers sign up for a WaPo Subscription through the WaPo Website or App, Defendant enrolls consumers in an automatically renewing subscription that results in monthly or annual charges to the consumer's payment method. *Id.*  Plaintiff further alleges that Defendant engages in these autorenewal practices without first providing California consumers the requisite disclosures and authorizations required under the ARL. *Id.*  Furthermore, Plaintiff alleges that every violation of the ARL constitutes an "unlawful" practice under the UCL. *Id.* ¶¶ 72-74.  Plaintiff contends Defendant also violated the FAL and CLRA. *Id.* ¶¶ 94-95, 104-05. On that basis, Plaintiff also brought common law claims against Defendant for conversion, unjust enrichment, negligent misrepresentation, and fraud. *Id.* ¶¶ 4, 89, 111, 115-17, 123-24.

### C.   The Litigation History, Defendant's Motion To Dismiss And Settlement Discussions

On July 29, 2020, Plaintiff filed her initial Class Action Complaint in the United States District Court for the Northern District of California, alleging that Defendant's renewal charge was in violation of the ARL, thus giving rise to claims under California's UCL, FAL, CLRA, and other common law claims. *See* Klorczyk Decl. ¶ 5; *see also* ECF No. 1.  On September 21, 2020, Defendant moved to dismiss under Rule 12(b)(6), arguing, that Plaintiff had failed to state a claim. ECF No. 21.  On October 5, 2020, Plaintiff filed the operative FAC.  ECF No. 22.  In addition to claims for relief brought by Plaintiff's initial Complaint, the FAC contains a request for damages under the CLRA at Count IV.  *See id.* ¶ 104.  On October 19, 2020, Defendant moved to dismiss the FAC under Rule 12(b)(6).  ECF No. 23.  In its motion, Defendant argued that its pre-checkout disclosures complied with the ARL because they provided all of the information required, in a clear and conspicuous manner, and further argued that Plaintiff's had not stated a claim for fraud and negligent misrepresentation because, among other reasons, Plaintiff had not identified a false statement or any specific omissions from the pre-purchase disclosures, and because any omissions in the post-purchase disclosures could not have influenced Plaintiff's decision to purchase her subscription. *Id.*  On November 19, 2020, before Plaintiff's opposition brief was due, the Parties filed a Joint Stipulation and Proposed Order with the Court, indicating that the Parties had agreed to engage in private mediation and requesting that the Court enter an order staying all upcoming

deadlines pending settlement discussions.  ECF No. 28.  The following day, on November 20, 2020, the Court entered an order granting the Parties' request.  ECF No. 29.

From the outset, the Parties engaged in direct communications regarding early resolution as required by Fed. R. Civ. P. 26, and discussed the prospect of an early resolution.  Those discussions eventually led to an agreement between the Parties to engage in early mediation, which the Parties agreed would take place before Jill R. Sperber, Esq., an experienced neutral affiliated with Judicate West.  *See* Klorczyk Decl. ¶ 11.  Prior to the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, representative web and mobile pay flow and check out pages, digital acknowledgement emails, during the relevant time period showing the content and presentation of the ARL disclosures, and Defendant's current and historical Terms of Sale and Terms of Service, which recap the ARL terms and other relevant provisions related to subscriptions.  *Id.* ¶ 12.  The Parties participated in two mediation sessions Ms. Sperber, which were both conducted by Zoom.  *Id.* ¶ 13.  The first session took place on March 16, 2021, and lasted approximately nine hours.  *Id.*  The parties promptly arranged for a second mediation session which took place on March 25, 2021, and lasted nearly six hours.  *Id.*  During the second mediation session, the Parties reached an agreement to settle the case.  *Id.*  The Parties engaged in good faith negotiations, which at all times were at arms' length and which culminated in an agreement to settle the case.  *Id.* ¶ 20; *see also id.* ¶¶ 13-18.

## III.    THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

The law favors compromise and settlement of class action suits.  *See Ferrell v. Buckingham Prop. Mgmt.*, 2021 WL 488314, at *3 (E.D. Cal. Feb. 10, 2021) (slip op.) ("The Ninth Circuit has repeatedly affirmed that a strong judicial policy favors settlement of class actions.") (citing *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).[2]  Ultimately, the approval of a proposed class action

---

[2] *See also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (acknowledging the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2014 WL 7240144, at *4 (N.D. Cal. Dec. 19, 2014); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979) (Orrick, J.) ("[T]he court should remain cognizant of the overriding public interest in settling large class actions[.]"); Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ("*Newberg*"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

settlement is left to the discretion of the trial court.  *See Rothfarb v. Hambrecht*, 649 F. Supp. 183, 237 (N.D. Cal. 1986) (Orrick, J.) ("The fee award is left to the discretion of the trial court.").

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837 (1978).[3]  This first step in the settlement process allows notice to issue to the class and for class members to object or opt-out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

The purpose of a preliminary approval hearing is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within *the range of possible approval*."  *Id.* (emphasis added) (internal quotation marks omitted) (*quoting* Manual for Complex Litigation, Second § 30.44 (1985)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, because that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See id.*  Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval. One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (*citing Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983)).  While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private

---

[3] If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual for Complex Litigation*, § 21.312 at 293-96 (4th ed. 2004).

consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.

1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a

presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th

Cir. 1995); *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019)

("Class settlements are presumed fair when they are reached 'following sufficient discovery and

genuine arms-length negotiation.'") (citations omitted).  Ultimately, the Court's role is to ensure

that the settlement is fundamentally fair, reasonable and adequate.  *Id.*, 2019 WL 6134910, at *3.

Beyond the public policy favoring settlements, the principal consideration in evaluating the

fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the

benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare

the terms of the compromise with the likely rewards of litigation."  *Protective Committee for*

*Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

That said, courts give "proper deference to the private consensual decision of the parties."  *Hanlon*,

150 F.3d at 1027.  Indeed, "the court's intrusion upon what is otherwise a private consensual

agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to

reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

reasonable and adequate to all concerned."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 830 (N.D.

Cal. 2017) (Orrick, J.) (quoting *Officers for Justice*, 688 F.2d at 625); *see also id.* ("[I]t must not be

overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.

This is especially true in complex class action litigation.") (internal quotation marks omitted);

*accord* Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate").

## IV.     TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement are briefly summarized as follows:

### A.     Class Definition

The proposed Class consists of "all persons who, from July 29, 2016, to and through April

1, 2021, enrolled in an automatically renewing WaPo Subscription using a California billing

address and who, during that time period, were charged and paid one or more automatic renewal

fees in connection with such subscription." Settlement ¶ 1.46. Excluded from the Class are: (1) any Judge or Magistrate presiding over this Action and members of their families, (2) Defendant and any subsidiaries or affiliated entities, (3) persons who properly submit a timely request for exclusion, and (4) any legal representatives, successors, or assigns of any excluded persons. *Id.*

**B.      Monetary And In-Kind Relief For Class Members**

The Settlement consists of cash and non-cash benefits and has a total value of approximately $6,762,480. *Id.* ¶ 1.49. WaPo will establish a non-reversionary cash Settlement Fund of $2,400,000.00 USD, which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court. *Id.* ¶ 1.48. WaPo will also automatically provide over $4,362,480 worth of Automatic Account Credit Codes to Class Members who do nothing during the claims process. *Id.* ¶¶ 1.8, 2.2.

Class Members are entitled to the following relief:

- Class Members with **<u>Active Annual</u>** WaPo Subscriptions will be entitled to receive either an Automatic Account Credit Code for eight (8) weeks of free subscription services (valued at $20), or, if they file a valid claim, a *pro rata* cash payment from the Settlement Fund (which the Parties estimate to be $20 per Active Annual Class Member, based on the expected claims rate). *Id.* ¶ 2.2(a).

- Class Members with **<u>Active Four-Week</u>** WaPo Subscriptions will be entitled to receive either an Automatic Account Credit Code for four (4) weeks of free subscription services (valued at $10), or, if they file a valid claim, a *pro rata* cash payment from the Settlement Fund (which the Parties estimate to be $10 per Active Four-Week Class Member, based on the expected claims rate). *Id.* ¶ 2.2(b).

- Class members with **<u>Inactive Annual</u>** WaPo Subscriptions will be entitled to receive either an Automatic Account Credit Code for eight (8) weeks of a free Washington Post premium digital subscription (valued at $20), or, if they file a valid claim, a *pro rata* cash payment from the Settlement Fund (which the Parties estimate to be $20 per Inactive Annual Class Member, based on the expected claims rate). *Id.* ¶ 2.2(c).

- Class members with **<u>Inactive Four-Week</u>** WaPo Subscriptions will be entitled to receive either an Automatic Account Credit Code for four (4) weeks of a free Washington Post premium digital subscription (valued at $10), or, if they file a valid claim, a *pro rata* cash payment from the Settlement Fund (which the Parties estimate to be $10 per Inactive Four-Week Class Member, based on the expected claims rate). *Id.* ¶ 2.2(d).

Settlement Class Members wishing to receive cash must make an election to receive cash by

submitting a valid Claim Form to the Settlement Administrator by the Claims Deadline.  *Id.*

¶ 2.2(f).  Settlement Class Members who do not submit a valid Claim Form electing to receive cash

will receive an Automatic Account Credit Code as described above, based on whether the Class

Member's WaPo Subscription was active or inactive as of April 1, 2021, and whether the Class

Member's WaPo Subscription is deemed an Active Annual, Active Four-Week, Inactive Annual,

or Inactive Four-Week subscriber.  *Id.* ¶ 2.2(e).  In all cases, no payment or billing information will

be required for an Inactive Class Member to use the Automatic Account Credit Code, which will

be issued to Class Members via email by the Settlement Administrator, will not expire, and may be

freely transferred.  *Id.*  If an Active Class Member whose WaPo Subscription was purchased on or

through a third-party platform or service (the Apple App Store, the Google Play Store, or Amazon)

is unable to redeem an Automatic Account Credit Code, WaPo may provide that Active Class

Member with substitute compensation of equal value.  *Id.*

### C.     Injunctive Relief

WaPo has agreed to provide automatic renewal terms on its checkout pages in a manner

that is consistent with the requirements of Cal. Bus. & Prof. Code §§ 17600, *et seq*.  Specifically,

WaPo has agreed to present to California subscribers on the checkout page for any WaPo

Subscription that will automatically renew, the automatic renewal offer terms associated with such

subscription (including by when a user must cancel) in a clear and conspicuous manner before the

subscription or purchasing agreement and in visual proximity to the request for consent to the offer.

WaPo has also agreed to obtain affirmative consent to the agreement containing the automatic

renewal terms in a manner that complies with the ARL.  WaPo has further agreed to disclose, in a

manner that complies with the ARL, how to cancel and by when in an acknowledgment email that

California consumers can retain.  Additionally, WaPo has agreed to provide California subscribers

enrolled in an active annual WaPo Subscription (as of the execution of the Settlement Agreement)

who have not yet renewed as of 60 days after the execution of the Settlement Agreement with a

one-time additional acknowledgement email at least 30 days before their next renewal date that

provides those subscribers with notice that their subscription will renew and includes a clear link to

directions on how to cancel that subscription.  WaPo also agreed to provide California subscribers

enrolled in an active four-week WaPo Subscription (as of 30 days after the execution of the Settlement Agreement) who have not yet renewed as of 60 days after the execution of the Settlement Agreement with a one-time additional acknowledgement email at least 7 days before their next renewal date that provides those subscribers with notice that their subscription will renew and includes a clear link to directions on how to cancel that subscription. *See* Settlement ¶ 2.3.

### D.  Release

In exchange for the relief described above, Defendant and each of its related and affiliated entities as well as all "Released Parties" as defined at ¶ 1.42 of the Settlement will receive a full release of all claims arising out of or related to or arising from Defendant's automatic renewal and/or continuous service programs in California from July 29, 2016 to April 1, 2021. *See id.* ¶¶ 3.1-3.2 for full release language.

### E.  Incentive Award

In recognition for her efforts on behalf of the Settlement Class, subject to Court approval, Defendant has agreed to pay Plaintiff Jordan an incentive award of up to $5,000 from the Settlement Fund as appropriate compensation for her time and effort serving as Class Representative and as a party to the Action. Plaintiff has spent substantial time on this action, has assisted with the investigation of this action and the drafting of the complaint, has been in contact with counsel frequently, and has stayed informed of the status of the action, including settlement. Defendant will not oppose any request up to this amount. *Id.* ¶ 8.3.

### F.  Attorneys' Fees And Expenses

Defendant has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court. *Id.* ¶ 8.1. Plaintiff will petition the Court for an award of attorneys' fees, costs, and expenses not to exceed $2,000,000.00. *Id.* Defendant agrees to not object to or otherwise challenge, directly or indirectly, Plaintiff's counsel's petition for attorneys' fees, costs, and expenses if limited to this amount.

### G.  Notice And Administrative Expenses

The Settlement Fund will be used to pay the cost of Notice set forth in the Agreement and

any other notice as required by the Court, as well as all other costs of settlement administration. *See id.* ¶¶ 1.30, 1.32-1.33, 1.44, 1.48.  The Parties have selected JND Legal Administration ("JND") to act as the Settlement Administrator.  JND will implement the Settlement and Notice Plan agreed to by the Parties.  The Parties selected the Settlement Administrator after Plaintiff solicited a bid from JND, which estimated that its notice program would have 98 percent reach, and that the cost of its implementation would be $113,102.  *See* Klorczyk Decl. ¶ 23.

## V.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL BECAUSE THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  When making this determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" and (5) "the extent of discovery completed and the stage of the proceedings."[4]  *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir. 2004) (same); *Pena v. Taylor Farms Pac., Inc.*, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019) (Orrick, J.) (same).

In addition to these factors, courts should also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each

---

[4] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval and will be addressed at that time.

other.  Fed. R. Civ. P. 23(e)(2).  There is significant overlap between the Rule 23(e)(2) and *Hanlon*

factors, which complement, rather than displace each other.

### A. The *Hanlon* Factors

#### 1. Strength of Plaintiff's Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the

district court's determination is nothing more than an amalgam of delicate balancing, gross

approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks

omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator

arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

*Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010)

(citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories,

and defenses on both sides before engaging in arms-length negotiations with Defendant's counsel.

*See* Klorczyk Decl. ¶¶ 12-13, 20.  Although Plaintiff and Class Counsel had confidence in their

claims, they recognize that a favorable outcome was not assured and that they would face risks at

class certification, summary judgment, and trial.  *Id*. ¶¶ 21-22.  Defendant vigorously denies

Plaintiff's allegations and asserts that neither Plaintiff nor the Class suffered any harm or damages.

In addition, Defendant would no doubt present a vigorous defense at trial, and there is no assurance

that the Class would prevail – or even if they did, that they would be able to obtain an award of

damages significantly more than achieved here absent such risks.  The Settlement abrogates these

risks to Plaintiff and the Class.  *See Rodriguez*, 563 F.3d at 965-66 ("[O]ne factor 'that may bear on

review of a settlement" is "the advantages of the proposed settlement versus the probable outcome

of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and

individual class members[.]'") (citing Federal Judicial Center, Manual for Complex Litigation §

21.62, at 316 (4th ed. 2004)).  Thus, in the eyes of Class Counsel, the proposed Settlement provides

the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

#### 2. Risk of Continuing Litigation

Next, approval of the proposed settlement is appropriate given the risks associated with

continued litigation.  By reaching a favorable settlement now, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class.  "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (Orrick, J.) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)) (internal quotation marks omitted).  "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal."  *Id.* (citing *Rodriguez*, 563 F.3d at 966).

As discussed above, the Parties engaged in informal written discovery prior to mediation.  Klorczyk Decl. ¶ 12.  The next steps in the litigation would have been for Plaintiff to oppose Defendant's Motion to Dismiss and resolution of the Motion by the Court, the start of discovery, including Party depositions, substantial document discovery, and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.  *See* Settlement ¶¶ J-K.  For example, Plaintiff is aware that Defendant would continue to assert defenses on the merits, including that Plaintiff's allegations are insufficient under Fed. R. Civ. P. 8 and 12(b)(6) because, according to Defendant, it provided all of the requisite pre-purchase disclosures under the ARL, presented them in a clear and conspicuous manner, and obtained Plaintiff's affirmative consent to the automatically renewing subscription, and any alleged omissions in the post-purchase subscription acknowledgment sent to Plaintiff do not rise to the level of fraud or negligent misrepresentation.  Defendant would also challenge Plaintiff's standing under California's consumer protection statutes, including Plaintiff's ability to show that Defendant's conduct caused Plaintiff economic injury.  Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, including because Defendant would contend that Plaintiff is not entitled to bring at least some of her claims on a class-wide basis and that Plaintiff cannot present a workable damages model.  Plaintiff and Class Counsel further understand that Defendant would prepare a competent defense at trial.  Even assuming that Plaintiff were to survive summary judgment, she would likely face the risk of

establishing liability at trial as a result of conflicting expert testimony between her own expert

witnesses and Defendant's expert witnesses.  In this "battle of experts," it is virtually impossible to

predict with any certainty which testimony would be credited, and ultimately, which expert version

would be accepted by the jury.  The experience of Class Counsel has taught them that these

considerations can make the ultimate outcome of a trial highly uncertain.  Additionally, looking

beyond trial, WaPo could appeal the merits of any adverse decision.  Even if Plaintiff were to

prevail at every stage of this litigation, there remains a substantial likelihood that Class Members

would not be awarded significantly more than (or even as much as) is offered to them under this

Settlement.  *See, e.g.*, *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6,

1991) (overturning jury verdict for plaintiffs awarding over $100 million in damages, entering

judgment in favor of individual defendants, and ordering new trial for corporate defendant).

In sum, "[i]n the absence of settlement now, the parties would incur significant additional

costs in discovery, including depositions, … a survey of [defendant's] customers regarding the

materiality of the alleged misrepresentations, and expert discovery."  *Larsen*, 2014 WL 3404531, at

*4 (Orrick, J.).  The Settlement, on the other hand, permits a prompt resolution of this action on

terms that are fair, reasonable and adequate to the Class.  This result will be accomplished years

earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty.

"Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving

the settlement."  *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### 3.      Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiff would also face risks in

certifying a class and maintaining class status through trial.  The Court has not yet certified the

proposed Class and the Parties anticipate that such a determination would be reached only after

decision on Defendant's Motion to Dismiss, after discovery is completed, and after exhaustive

class certification briefing is filed.  Moreover, even assuming that the Court were to grant a motion

for class certification, the class could still be decertified at any time.  *See In re Netflix Privacy*

*Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could

decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).

From their prior experience, Class Counsel anticipates that, should the Court certify the class, Defendant may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.   Risk, expense, and delay permeate such a process. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).   The Settlement eliminates these risks, expenses, and delay.

### 4.    The Amount Offered In Settlement

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'"  *Knapp*, 283 F. Supp. 3d at 832 (Orrick, J.) (citing *Rodriguez*, 563 F.3d at 965).   Instead, the Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice."  *Id.*  In assessing the consideration available to Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628).   Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.   Indeed, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."   *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).[5]

---

[5] In Plaintiff's operative complaint, the damages sought are alleged to be the full amount of renewal charges charged to California Class Members' payment methods during the Class Period. *See* FAC ¶¶ 3-4.   The proposed Settlement Class includes approximately 321,671 persons who enrolled in and were charged renewal fees in connection with the WaPo Subscriptions during the Class Period.   Klorczyk Decl. ¶ 14.   The amount charged to each Class Member per renewal period varied by the type of subscription—$10.00 per month for Basic Four-Week WaPo Subscribers, $15.00 per month for Premium Four-Week WaPo Subscribers, $100 per month for Basic Annual WaPo Subscribers, and $150 per month for Premium Annual WaPo Subscribers.   *See* https://subscribe.washingtonpost.com/checkout.   Assuming WaPo's subscriber base is evenly split between Basic Four-Week, Premium Four-Week, Basic Annual, and Premium Annual WaPo Subscribers, and that each Class Member's WaPo Subscription was automatically renewed once during the Class Period at the full standard rate associated with the Class Members' WaPo

1    In this case, the total value of the proposed Settlement is $6,762,480, consisting of cash and

2  in-kind relief.  Settlement ¶ 1.49.  Settlement Class Members that submit a valid Claim Form to the

3  Settlement Administrator are eligible to receive a *pro rata* cash payment from the $2,400,000 non-

4  reversionary Settlement Fund, which the Parties estimate will be $20 per Annual Class Member

5  and $10 per Four-Week Class Member, based an expected claims rate of 5%.[6]  *Id*. ¶¶ 2.2(a)(2),

6  (b)(2), (c)(2), (d)(2), (f).  Settlement Class Members who neither submit a valid Claim Form nor

7  opt-out of the settlement will be automatically provided with an Automatic Account Credit Code

8  for up to eight (8) weeks of free subscription services.  *Id.* ¶¶ 2.2(a)(1), (b)(1), (c)(1), (d)(1), (e).

9  Specifically, Annual Class Members who do nothing will receive an Automatic Account Credit

10  Code for up to eight (8) weeks of free WaPo Subscription services (valued at $20), *see id.* ¶¶

11  2.2(a)(1), (c)(1), and Four-Week Class Members who do nothing will receive an Automatic

12  Account Credit Code for up to four (4) weeks of free WaPo Subscription services (valued at $10),

13  *see id.* ¶¶ 2.2(b)(1), (d)(1).  In all cases, the Codes will not expire and may be freely transferred.

14  *See* Settlement ¶¶ 1.8, 2.2(e).  The Automatic Account Credit Codes therefore provide Class

15  Members with a real and substantial dollar value.  *See Knapp*, 283 F. Supp. 3d at 833 (Orrick, J.)

16  ("[C]lass members who choose to use their voucher have the opportunity to realize a $10 value.");

17  *cf. In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013) (noting that in-kind relief "is

18  likely to provide less value to class members if[ the non-monetary benefits] … are non-

19  transferable, expire soon after their issuance, and cannot be aggregated").  In addition, Defendant

20  has agreed to provide injunctive relief, and to pay the costs of notice, administration, and

21  reasonable attorneys' fees and costs for Class Counsel from the all-in fund established by the

22  Settlement.  Settlement ¶ 2.3; *see also Knapp*, 283 F. Supp. 3d at 833 ("The Settlement Agreement

23

24  _____

25  Subscriptions, Defendant's total exposure would be approximately $22,114,884.25.  If each Class
   Member's WaPo Subscription renewed multiple times, the estimated total exposure would be
   greater.  However, Plaintiff's and Class Members' entitlement to relief in that amount is not
26  certain, and they would be unlikely to fully prevail for the reasons discussed above.  *See supra* §§
   V.A(2)-(3).

27  [6]As *cy pres*, funds for checks not cashed within 180 days of issuance shall revert to the Legal Aid
   Association of California, a 501(c)(3) entity, or, if it is unable to receive these funds, another
28  California-based, non-sectarian, not-for-profit organization(s) with a similar mission recommended
   by Class Counsel and Defendant, and approved by the Court.  Settlement ¶¶ 2.2(i), 5.8.

also provides for injunctive relief, so class members that choose to continue doing business with Art.com will benefit from this aspect as well.").

Moreover, in judging the adequacy of this Settlement, it is appropriate to compare the relief offered here to settlements in other ARL matters.  Viewed in this light, the relief offered under this Settlement plainly meets or exceeds settlements in other ARL matters.  For example, the Southern District of New York recently granted preliminary approval to a similar class-wide settlement under California's ARL, negotiated by the same proposed Class Counsel, in *Moses v. The New York Times Company*, No. 1:20-cv-04658-RA (S.D.N.Y.).  *See* Klorczyk Decl. ¶ 19; *see also id.* Ex. 4, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement in *Moses v. The New York Times Company*, No. 1:20-cv-04658-RA (S.D.N.Y.) (ECF No. 42) ("*Moses* Preliminary Approval Brief").  Under the terms that settlement, the defendant agreed to "automatically provide over $3,900,000 worth of access codes … to Class Members who do nothing during the claims process," and to "establish a non-reversionary $1,650,000 cash Settlement Fund which will be used to pay all approved claims by class members."  Klorczyk Decl. ¶ 19; *id.* Ex. 4, *Moses* Preliminary Approval Brief at 1.  Thus, the total value of the *Moses* settlement was approximately $5,563,000, with a class of approximately 855,166 California subscribers.  *Id*.  The *Moses* court granted preliminary approval on May 12, 2021, and the final approval hearing is set for September 10, 2021.  *See* Klorczyk Decl. Ex. 5, Order Granting Preliminary Approval in *Moses v. The New York Times Company*, No. 1:20-cv-04658-RA (S.D.N.Y.) (ECF No. 43) ("*Moses* Preliminary Approval Order").

The proposed Settlement here distributes more cash and more credits to fewer persons than the *Moses* settlement, ultimately resulting in significantly more relief per Class Member.  *See supra* at 15 ("Settlement Class Members that submit a valid Claim Form … are eligible to receive a *pro rata* cash payment …, which the Parties estimate will be $20 per Annual Class Member and $10 per Four-Week Class Member[.]") (emphasis added); *cf.* Klorczyk Decl. Ex. 4, *Moses* Preliminary Approval Brief at 14 (estimating a *pro rata* cash payment from the Settlement Fund of "$5.00 per Class Member[.]") (emphasis added).  Thus, if the *Moses* settlement can be said to "provide[] substantial relief to the Settlement Class[,]" (and it has been, *see* Klorczyk Decl. Ex. 4, *Moses*

Preliminary Approval Order ¶ 3), then the proposed Settlement, which provides more value to class members, does so as well.

Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.  *See Carter*, 2019 WL 5295125, at *3 (Orrick, J.) ("The amount of the settlement is fair, adequate and reasonable given the risks of continued litigation.").

### 5.   The Extent Of Discovery

Under this factor, courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Plaintiff, by and through her counsel, has conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation, through: (i) review of documents produced by Defendant through informal discovery; (ii) the review of other publicly available reports and tests concerning the WaPo Subscriptions; and (iii) review of publicly available information regarding Defendant, its business practices, and prior litigation involving it.  *See* Klorczyk Decl. ¶ 12.  The parties also held numerous telephonic and written discussions regarding Plaintiff's allegations, discovery, and the prospects of settlement, as well as two mediation sessions with Jill Sperber of Judicate West.  *Id.* ¶¶ 6, 10-13.  Thus, the proposed Settlement is the result of fully-informed negotiations.

### 6.   Experience And Views Of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.* [hereinafter *Betchel Corp.*], 485 F. Supp. 610, 622 (N.D. Cal. 1979) (Orrick, J.); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same).  Deference to Class Counsel's evaluation of the Settlement is appropriate because "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs."  *Betchel Corp.*, 485 F. Supp. at 622; *see also Rodriguez*, 563 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  Here, the

Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Klorczyk Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A.  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

**B.      The Rule 23(e)(2) Factors**

**1.      The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))**

As is discussed further below, Plaintiff's interests here are aligned with other class members' interests because she claims she suffered the same injuries:  paying a fee to Defendant due to its automatic renewal scheme.  Because Plaintiff and the Class suffered these alleged injuries as a result of Defendant's common course of conduct, Plaintiff has an interest in vigorously pursuing the claims of the class.  Further, as is briefly mentioned above and elaborated upon below, numerous other courts in this Circuit have previously found that Plaintiff's attorneys adequately meet the obligations and responsibilities of Class Counsel.  *See* Klorczyk Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A.; *see also id.* Ex. 3, Preliminary Approval Hearing Transcript in *Russett, et al. v. The Northwestern Mutual Life Ins. Co.*, Case No. 19-cv-07414-KMK (S.D.N.Y.) ("NWM Hearing Tr.") at 21:1-4 ("[Bursor & Fisher, P.A.] has extensive experience in litigating precisely these types of actions, and that's why they've been appointed in numerous cases to be lead counsel.").  This factor thus favors preliminary approval.

**2.      The Settlement Was Negotiated At Arm's Length**

In preliminarily evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations.  When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378; *Garner*, 2010 WL 1687832, at *9. Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate.  *See In re Syncor*, 516 F.3d at 1100.

Here, counsel for both Plaintiff and Defendant are experienced in class action litigation,

engaged in protracted settlement discussions, and reached this settlement with the assistance of an experienced neutral.  Klorczyk Decl. ¶¶ 11-13, 19.  In other words, the negotiations were conducted at arm's length, non-collusive, well-informed (in that they were conducted after an assessment of the strengths and weaknesses of the claims on both sides), conducted between counsel on both sides with decades of class action experience, and utilized at the appropriate time the assistance of a well-respected mediator.  Under such circumstances, the proposed Settlement is entitled to a presumption of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments.  *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("[T]he Court found that Class Counsel have substantial experience in litigating and settling consumer class actions.  Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case. … The Settlement was also the product of arm's-length negotiations through mediation sessions and follow-up communications supervised by [an experienced neutral].  There is no indication of any collusion between the parties."); *Boyd v. Avanquest N. Am. Inc* [hereinafter *Avanquest*], 2015 WL 4396137, at *3 (N.D. Cal. July 17, 2015) (Orrick, J.) ("[U]se of mediator 'tends to support the conclusion that the settlement process was not collusive.'") (quoting *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Bechtel Corp.*, 485 F. Supp. at 622-25 (Orrick, J.).  Accordingly, the second Rule 23(e)(2) factor has been met.

### 3.   The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).  These factors subsume several *Hanlon* factors including: "the risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor 2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the amount offered in settlement" (*Hanlon* Factor 4).  As noted above, the Settlement has met each of

the *Hanlon* factors.  *Supra* §§ V.A(1)-(5).  As to "any agreement required to be identified by Rule 23(e)(3)[,]" no such agreement exists in this case other than the Settlement.

As to "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes).  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *Id*.  Here, under the terms of the Settlement, Settlement Class Members will receive Automatic Account Credit Codes for up to eight (8) weeks' free access to WaPo Subscriptions services, without having to file any claim.  Settlement ¶ 2.2.  Alternatively, Settlement Class Members can submit a claim form and, if approved, receive a *pro rata* payment from the Settlement Fund.  *Id*. ¶ 2.2(f).  The claims process is only required for Settlement Class Members who opt to elect cash and it "requires logging on to the Settlement Website and submitting a Claim there, or a Settlement Class Member may print the Claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer."  *Alvarez*, 2020 WL 7314793, at *6.  The Court should find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective."  *Id*.

Next, as to "the terms of any proposed award of attorney's fees," Class Counsel will apply for attorneys' fees, costs, and expenses "not to exceed $2,000,000," which constitutes approximately 29 percent of the Settlement Value.  Settlement ¶ 8.1.  The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiff and the Class.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  Here, Proposed Class Counsel has easily satisfied each factor.

First, with respect to the results achieved, Class Counsel's efforts have secured a settlement consisting of a mix of monetary and in-kind relief, with a total value of $6,762,480.  As discussed

1    in detail above, this is an excellent result.  *See supra* § V.A(4).

2         Second, Plaintiff has established that there are significant risks in entering a protracted

3    litigation.  *See supra* §§ V.A(2)-(3).  Thus, "[i]n the absence of settlement now, the parties would

4    incur significant additional costs in discovery, including depositions, … a survey of [defendant's]

5    customers regarding the materiality of the alleged misrepresentations, and expert discovery."

6    *Larsen*, 2014 WL 3404531, at *4.  "Moreover, settlement is favored where, as here, significant

7    procedural hurdles remain, including class certification and an anticipated appeal." *Id.* (citing

8    *Rodriguez*, 563 F.3d at 966).  "Avoiding such unnecessary and unwarranted expenditure of

9    resources and time would benefit all parties, as well as conserve judicial resources." *Id.* (citing

10   *Garner*, 2010 WL 1687832, at *10).  "Accordingly, the high risk, expense, and complex nature of

11   the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

12        Third, as noted above, *see supra* § IV.E, Class Counsel's time and efforts in this litigation

13   have generated benefits beyond the Class settlement fund.  *See also* Settlement ¶ 2.3.

14        Fourth, Plaintiff's counsel's requested fee is consistent with market rates as reflected by

15   awards made in similar cases.  Indeed, courts in this Circuit routinely approve fee requests for up to

16   one-third of a common fund.  *See*, *e.g.*, *Blandino v. MCM Constr., Inc.*, 2014 WL 11369763, at *3

17   (N.D. Cal. Mar. 6, 2014) (Orrick, J.) (awarding 33% of settlement fund in attorneys' fees); *In re*

18   *Lidoderm Antitrust Litig.*, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (Orrick, J.) (awarding

19   33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 460 (9th Cir. 2000) (affirming

20   33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18,

21   1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming 33.3% fee award) ("The $2,000,000

22   requested by class counsel amounts to one-third of this common fund. … Courts in this district

23   have consistently approved attorneys' fees which amount to approximately one-third of the relief

24   procured for the class.") (citations omitted); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379

25   (affirming 33% fee award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal.

26   2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to

27   33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D.

28   Cal. 1989) (awarding fee of 32.8%); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687829,

at *1 (N.D. Cal. Apr. 22, 2010) ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases."); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee award); *Larsen*, 2014 WL 3404531, at *9 (Orrick, J.) ("[Counsel's] request for attorneys' fees in the amount of 28% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.") (citations omitted); *Wellens v. Sankyo*, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (Orrick, J.) (awarding 36% of $8,200,000 settlement fund in fees).[7]

Finally, the requested fees are also fair given the significant time Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all absent a successful resolution. Thus, because of the contingent nature of the fee and the financial burden carried by Plaintiff and the Class, Plaintiff's Counsel's requested fee award of 29% of the total Settlement Value is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

The Settlement therefore provides adequate relief to the Class under Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

### 4. The Settlement Treats All Class Members Equally

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). In assessing this factor, "the Court considers whether the proposal "'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079).

Here, in addition to providing Automatic Account Credit Codes to those who do nothing, the Settlement also distributes Automatic Account Credit Codes (or cash relief to those who submit a claim) on a *pro rata* basis, and the amount each Class Member will receive depends on whether a given Class Member's most recently active WaPo Subscription was for an Annual or Four-Week renewal term, which had different renewal costs. Settlement ¶ 2.2. Settlement Class Members with Annual WaPo Subscriptions, whether active or inactive, will receive an Automatic Account

---

[7] *See also Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) (Orrick, J.) ("Fee award percentages generally are higher in cases where the common fund is below $10 million.") (citations omitted); *accord Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *11 (N.D. Cal. Apr. 26, 2013).

1    Credit Code for eight (8) weeks of free subscription services, valued at $20 (or a *pro rata* cash

2    payment from the Settlement Fund, which the Parties estimate to be $20).  *Id.*  Settlement Class

3    Members with Four-Week WaPo Subscriptions, whether active or inactive, will receive an

4    Automatic Account Credit Code for four (4) weeks of free subscription services, valued at $10 (or

5    a *pro rata* cash payment from the Settlement Fund, which the Parties estimate to be $10).  *Id.*

6    Courts in this Circuit have found that allocating Settlement benefits among Class Members in this

7    manner is equitable.  *See Perks*, 2021 WL 1146038, at *6 ("This *pro rata* distribution is inherently

8    equitable because it treats Class Members fairly based on the amount of each member's potential

9    damages."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22,

10   2019) (finding *pro rata* distribution equitable); *Avanquest*, 2015 WL 4396137, at *3 (Orrick, J.)

11   ("[T]he proposed settlement agreement 'does not improperly grant preferential treatment to class

12   representatives or segments of the class[]' because all class members are treated in the same way

13   and there is no difference in treatment throughout the class.") (internal citations omitted) (quoting

14   *State of California v. eBay, Inc.*, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014)).  Thus, this

15   factor weighs in favor of granting approval.

16   **VI.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE**

17            Plaintiff respectfully requests that the Court conditionally certify the Settlement Class for

18   purposes of effectuating the settlement.  *See Newberg*, § 11.27 (4th ed. 2002) ("When the court has

19   not yet entered a formal order determining that the action may be maintained as a class action, the

20   parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

21   The Court should determine that the proposed Settlement Class satisfies the requirements of Rule

22   23(a) and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521

23   U.S. 591, 620 (1997), and provisionally certify the settlement class, appoint Plaintiff's counsel as

24   Class Counsel, and appoint Plaintiff as the Class Representative.

25            Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are

26   met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

27            (1) the class is so numerous that joinder of all members is
                  impracticable;

28

---

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL                    23
CASE NO. 3:20-CV-05218-WHO

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  As discussed below, all applicable Rule 23 requirements are met, and Defendant consents to provisional certification for settlement purposes.  Thus, preliminary approval should be granted.

## A.    The Class Satisfies Rule 23(a)

### 1.    Numerosity

Rule 23(a)(1) requires is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed at a level of 40 members.  *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) (Orrick, J.) ("Courts generally find numerosity satisfied if the class includes forty or more members.") (citations omitted).  Here, the proposed Settlement Class includes approximately 321,671 persons who enrolled in and were charged renewal fees in connection with the WaPo Subscriptions during the Class Period.  Klorczyk Decl. ¶ 14.  Numerosity is therefore satisfied.

### 2.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is established if Plaintiff and Class Members' claims "depend on a common contention … of such a nature that it is capable of class-wide resolution[,] which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Although the claims need not be identical, they must share common questions of fact or law.  *See Alvarez*, 2020 WL 7314793, at *7.  "For instance, a class meets the commonality requirement if members share the same legal issues but have different factual foundations."  *Id.*  Courts construe

the commonality requirement liberally.  Because the commonality requirement may be satisfied by a single common issue, it is easily met.  Indeed, "[f]or purposes of Rule 23(a)(2), 'even a single common question will do.'"  *Dalchau v. Fastaff, LLC*, 2018 WL 1709925, at *7 (N.D. Cal. Apr. 9, 2018) (Orrick, J.) (quoting *Dukes*, 564 U.S. at 359).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation.  Plaintiff alleges that WaPo made identical misrepresentations and omissions regarding the terms of payment for and cancellation of the WaPo Subscriptions, and that it "uniformly fail[ed] to obtain any form of consent … before charging consumers' Payment Methods on a recurring basis."  FAC ¶ 34; *see also Avanquest*, 2015 WL 4396137, at *2 (Orrick, J.) ("[T]here are questions of law and fact common to all class members, because all bought the same software from Avanquest and suffered the same general type of injury.").  Common questions include:  (1) whether WaPo failed to disclose the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer; (2) whether WaPo failed to obtain consumers' affirmative consent to the automatic renewal offer terms; and (3) whether WaPo failed to provide an acknowledgement, capable of being retained by the consumer, that contained the automatic renewal offer terms and information on how to cancel.  FAC ¶ 63. Courts considering similar claims resulting from uniform unlawful conduct routinely certify classes based on evidence of a common policy.  *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar," involving consumer products).  Further, Plaintiff's claims are brought under legal theories common to the Class as a whole and that alone is enough to establish commonality.  *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  Here, all of the legal theories asserted by Plaintiff are common to all Class Members.  *See* FAC ¶¶ 70-125.  Accordingly, commonality is satisfied.

### 3. **Typicality**

Rule 23(a)(3) requires that the claims of the representative Plaintiff be "typical of the

claims … of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  To meet the typicality requirement, the representative Plaintiff simply must demonstrate that the members of the settlement class have the same or similar grievances.  *See Gen. Tel. Co. of the Southwest Falcon*, 457 U.S. 147, 161 (1982).

Here, Plaintiff alleges that Defendant's practice of charging renewal fees for its WaPo Subscriptions to consumers' payment methods without first obtaining their affirmative consent to the transaction violated the ARL and other California statutes because Defendant failed to fully comply with the ARL in its WaPo Subscription offerings.  FAC ¶¶ 1-4, 31-58.  Plaintiff further contends that Defendant's automatic renewal process is done in the exact same manner and was directed at, or affected, both Plaintiff and putative Class Members in the same exact way. Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class.  Thus, Plaintiff's claims are typical because they arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and h[er] claims were based on the same legal theory."  *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (internal citations omitted); *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (typicality satisfied where named plaintiff alleged substantially the same misrepresentation regarding products as that suffered by class).

### 4.  <u>Adequacy</u>

The final requirement of Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A plaintiff and class counsel will adequately represent the Class where they: (1) do not have conflicts of interests with other Class Members; and (2) prosecute the action vigorously on behalf of the class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length.  *See Newberg*, § 11.28, at 11-59.

In this case, Plaintiff – like every Settlement Class Member – enrolled in a WaPo Subscription that automatically renewed during the Class Period.  FAC ¶¶ 5, 59.  Plaintiff and

Settlement Class Members thus have the same interest in recovering the damages to which they are entitled.  Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class, and her pursuit of this litigation is clear evidence of that.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. – have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Klorczyk Decl. ¶ 19; *see also id.* Ex. 2, Firm Resume of Bursor & Fisher, P.A.  Class Counsel regularly engages in major complex litigation involving consumer products, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country.  *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in [six] class action jury trials since 2008.").  Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, pursuing those claims through motion practice, conducting informal discovery, participating in private mediation, and negotiating a favorable class action settlement.  Klorczyk Decl. ¶¶ 5-18.  In sum, proposed Class Counsel has vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

## B.     The Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also meet one of the three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently, which protects class members' due process rights.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can

be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.  As shown below, Plaintiff has met the Rule 23(b)(3) requirements.

### 1.   <u>Common Questions Predominate</u>

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability may be resolved on a classwide basis, *see Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. As the Supreme Court has explained, when addressing whether to certify a settlement class, courts consider the fact that a trial will be unnecessary and manageability is not an issue. *Amchem*, 521 U.S. at 620.  Here, Plaintiff's allegations here all center around Defendant's "automatic renewal scheme."  FAC ¶ 1.  Moreover, as noted above, common questions of law and fact exist in this case. *See supra* § VI.A(2); FAC ¶ 63.  Plaintiff explicitly and repeatedly alleges that Defendant engaged in a common course of conduct.  FAC ¶¶ 2, 34, 64.  Predominance is therefore satisfied.

### 2.   <u>A Class Action Is A Superior Mechanism</u>

Rule 23(b)(3)'s superiority requirement examines whether the class action device is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. *Id.*  Here, Plaintiff and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.  Employing the class device here will not only achieve economies of scale for Settlement Class Members, but will also conserve judicial system resources and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive

supervision by a single court.   Thus, a class action is the most suitable mechanism to fairly,

adequately, and efficiently resolve the putative Settlement Class Members' claims.

## VII.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and

adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this

determination, the Court considers proposed Class Counsel's: (1) work in identifying or

investigating the potential claim, (2) experience in handling class actions, other complex litigation,

and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4)

resources that it will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  As

discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class

actions in general.  *See supra* § II.D.  As a result of their zealous efforts in this case, proposed

Class Counsel have secured substantial monetary relief to the Settlement Class Members.  Thus,

the Court should appoint Frederick J. Klorczyk III of Bursor & Fisher, P.A., as Class Counsel.

## VIII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.   The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including
> individual notice to all members who can be identified through
> reasonable effort.  The notice must concisely and clearly state in
> plain, easily understood language: the nature of the action; the
> definition of the class certified; the class claims, issues, or defenses;
> that a class member may enter an appearance through counsel if the
> member so desires; that the court will exclude from the class any
> member who requests exclusion, stating when and how members
> may elect to be excluded; and the binding effect of a class judgment
> on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Here, the proposed Notice will provide detailed information about the

Settlement, including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to

request attorneys' fees, reimbursement of expenses, and an incentive award for the Named

Plaintiff; and (3) a detailed explanation of the Released Claims.  Settlement ¶ 4.2.  The Notice will

also provide information about the Fairness Hearing date, the right of Class Members to seek

exclusion from the Class or to object to the proposed Settlement (and the deadlines and procedure for doing so), and how to receive additional information.  *Id.* ¶¶ 4.2-4.6.  In short, the Notice Plan will fully inform Class Members of the lawsuit and the proposed Settlement, and to provide them with the information necessary to make informed decisions about their rights.  The detailed information in this proposed Notice goes well beyond the requirements of the Federal Rules.

### B.      Distribution Of The Class Notice Will Comply With Rule 23(c)(2)

The Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and due process.  First, the Parties will provide the Class List identifying individual subscribers to the Settlement Administrator.  *Id.* ¶ 4.1(a).  The Settlement Administrator will then send email direct notice to all Settlement Class Members for whom a valid email address is identified in Defendant's records.  *Id.* ¶ 4.1(b).  The email will contain a link to the online claim form.  *See id.* Ex. B.  If a no valid email address available, the Settlement Administrator will send direct notice by First Class U.S. Mail, with a postcard claim form including return postage, to all the Settlement Class Members who did not receive an email.  *Id.* ¶¶ 4.1(b)-(d).  Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice," and access to important Court documents, upcoming deadlines, and the ability to file claim forms online.  *Id.* ¶¶ 1.30, 1.32, 1.50, 4.1(e).  Finally, the Settlement Administrator will provide notice to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Settlement ¶ 4.1(f).  These proposed methods for providing Notice to the Class comport with both Rule 23 and due process, and the Notice Plan should thus be approved.

### IX.      CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion for Preliminary Approval of the Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.

1

Dated: May 28, 2021                    Respectfully submitted,

2

**BURSOR & FISHER, P.A.**

3

By:      _/s/ Frederick J. Klorczyk III_

4

Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue

5

New York, NY  10019
Telephone: (646) 837-7150

6

Facsimile: (212) 989-9163
E-Mail: fklorczyk@bursor.com

7

**BURSOR & FISHER, P.A.**

8

Neal J. Deckant (State Bar No. 322946)
Julia K. Venditti (State Bar No. 332688)

9

1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596

10

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

11

E-Mail: ndeckant@bursor.com
          jvenditti@bursor.com

12

13

*Attorneys for Plaintiff and the Putative Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28