1

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
2
888 Seventh Avenue
New York, NY  10019
3
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
4
E-Mail: fklorczyk@bursor.com

5

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
6
Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, Suite 940
7
Walnut Creek, CA  94596
Telephone: (925) 300-4455
8
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com
9
         jvenditti@bursor.com

10
*Class Counsel*

11

12
**IN THE UNITED STATES DISTRICT COURT**

13
**NORTHERN DISTRICT OF CALIFORNIA**

14
DEBORAH JORDAN, individually and on
behalf of all others similarly situated,
15

16
                      Plaintiff,

17
        v.

18
WP COMPANY LLC, d/b/a THE
WASHINGTON POST,
19

20
                      Defendant.

21

Case No. 3:20-cv-05218-WHO

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR AN AWARD OF
ATTORNEYS' FEES, COSTS AND
EXPENSES, AND INCENTIVE
AWARD; SUPPORTING
MEMORANDUM OF POINTS AND
AUTHORITIES**

Date:   November 17, 2021
Time:   2:00 p.m.
Courtroom:  2, 17th Floor
Judge:  Hon. William H. Orrick

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on November 17, 2021, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, located at the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 2 on the 17th Floor before the Honorable William H. Orrick, Plaintiff Deborah Jordan ("Plaintiff") and Class Counsel, Bursor & Fisher, P.A., will and hereby do move, pursuant to Fed. R. Civ. P. 23(e) and the Court's July 8, 2021 Order Preliminarily Approving Class Action Settlement, ECF No. 50, for an order: (1) awarding $2,000,000 in attorneys' fees, costs, and expenses to Class Counsel; (2) approving the payment of an incentive award in the amount of $5,000 to Plaintiff as the Class Representative, in recognition of Plaintiff's efforts on behalf of the Settlement Class; and (3) awarding such other and further relief as the Court deems reasonable and just.

This motion is made on the grounds that an award of attorneys' fees, costs and expenses, and payment of incentive fees is proper, given that the Parties have agreed that Class Counsel may make such applications in the Settlement Agreement, the work of Class Counsel has conferred substantial benefits to the Class, and such awards are permitted under the laws of this Circuit.

This Motion is based on the attached Memorandum of Points and Authorities, the accompanying Declaration of Frederick J. Klorczyk III (the "9/3/21 Klorczyk Decl.") and the exhibits attached thereto, including the Parties' Stipulation of Class Action Settlement and Release (the "Settlement" or "Settlement Agreement"); the Declaration of Deborah Jordan (the "Jordan Decl."); the [Proposed] Final Approval Order submitted herewith; the pleadings and papers on file in this Action; and any other such evidence and argument as may subsequently be presented to the Court.

1

Dated: September 3, 2021               Respectfully submitted,

2

**BURSOR & FISHER, P.A.**

3

By:     */s/ Frederick J. Klorczyk III*

4

Frederick J. Klorczyk III (State Bar No. 320783)

5

888 Seventh Avenue
New York, NY  10019

6

Telephone: (646) 837-7150
Facsimile: (212) 989-9163

7

E-Mail: fklorczyk@bursor.com

8

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)

9

Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, Suite 940

10

Walnut Creek, CA  94596
Telephone: (925) 300-4455

11

Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

12

          jvenditti@bursor.com

13

*Class Counsel*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

PAGE(S)

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

    A.   California's Automatic Renewal Law ........................................................ 3

    B.   Plaintiff's Allegations .............................................................................. 4

    C.   The Litigation History And Work Performed To Benefit The Class ........ 4

III. SUMMARY OF THE SETTLEMENT ............................................................... 7

IV.  CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS
    FAIR AND REASONABLE AND SHOULD BE APPROVED............................ 8

    A.   The Court Should Award Attorneys' Fees Under The Percentage Of
        The Benefit Method .................................................................................. 9

        1.   The Total Value Of The Settlement Exceeds $6.7 Million ........... 9

        2.   The Automatic Account Credit Codes Should Be Valued At
            Their Face Value ......................................................................... 10

        3.   All Relevant Factors Favor An Upward Departure From The
            Ninth Circuit's 25% Benchmark To 29% ................................... 13

            a.   Class Counsel Achieved Extraordinary Results For
                The Class .......................................................................... 13

            b.   Plaintiff's Novel Claims Carried Substantial
                Litigation Risk .................................................................. 14

            c.   Class Counsel Generated Benefits Beyond The
                Settlement Fund ................................................................ 16

            d.   Market Rates As Reflected by Awards in Similar
                Cases ................................................................................ 17

            e.   The Contingent Nature Of The Fee And Financial
                Burden Borne By Class Counsel ...................................... 20

        4.   The Requested Attorneys' Fees Are Also Reasonable Under
            A Lodestar Cross-Check ............................................................. 21

            a.   Class Counsel Spent A Reasonable Number Of Hours
                On This Litigation At A Reasonable Hourly Rate ............ 21

            b.   All Relevant Factors Support Applying A Multiplier
                 To Class Counsel's Lodestar ............................................ 22

1

2

V.      THE REQUESTED INCENTIVE AWARD FOR THE CLASS
REPRESENTATIVE IS FAIR AND REASONABLE ........................................24

VI.    CONCLUSION ............................................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

4

**CASES**

5

*Aguilar v. Wawona Frozen Foods*,
   2017 WL 2214936 (E.D. Cal. May 19, 2017) ............................................................ 23

6

7

*Alvarez v. Farmers Ins. Exch.*,
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .................................................. 9, 13, 19

8

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................... 21

9

10

*Bebchick v. Washington Metro. Area Transit Comm'n*,
   805 F.2d 396 (D.C. Cir. 1986) .................................................................................. 17

11

12

*Blandino v. MCM Constr., Inc.*,
   2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ...................................................... 3, 17

13

14

*Blum v. Stenson*,
   465 U.S. 886 (1984) ................................................................................................. 23

15

*Bos. & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*,
   778 F.2d 890 (1st Cir. 1985) ..................................................................................... 23

16

17

*Browning v. Yahoo! Inc.*,
   2007 WL 4105971 (N.D. Cal. 2007) ......................................................................... 11

18

*Cicero v. DirecTV, Inc.*,
   2010 WL 2991486 (C.D. Cal. July 27, 2010) ........................................................... 19

19

20

*Cody v. SoulCycle Inc.*,
   2017 WL 6550682 (C.D. Cal. Oct. 3, 2017) ...................................................... 12, 15

21

*Consumer Privacy Cases*,
   175 Cal. App. 4th 545 (2009) ...................................................................................... 9

22

23

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y. 1991) ............................................................................ 23

24

*Craft v. Cnty. Of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................. 19, 23

25

26

*Fernandez v. Victoria Secret Stores, LLC*,
   2008 WL 8150856 (C.D. Cal. July 21, 2008) ........................................................... 12

27

28

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ........................................................................ 8

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) .......................................... 18

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................................... 20

*Greko v. Diesel U.S.A., Inc.*,
   2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) .......................................... 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................. 8, 23

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ............................................................... 9

*Hendricks v. Ference*,
   754 F. App'x 510 (9th Cir. 2018) ..................................................... 11, 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................ 22

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................... 18

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................... 21, 22

*In re Beverly Hills Fire Litig.*,
   639 F. Supp. 915 (E.D. Ky. 1986) .......................................................... 23

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935, 942 (9th Cir. 2011) ............................................................. 9

*In re Cenco Inc. Sec. Litig.*,
   519 F. Supp. 322 (N.D. Ill. 1981) ........................................................... 23

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) ................................................................. 12

*In re HPL Techs., Inc. Sec. Litig.*,
   366 F. Supp. 2d 912 (N.D. Cal. 2005) .................................................... 21

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .......................................... 9

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................................. 18

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)...................................................................... 8, 20

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ...................................................................... passim

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)...................................................................... 17, 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)...................................................................... 23, 24

*Ingalls v. Spotify USA, Inc.*,
   2017 WL 3021037 (N.D. Cal. Jul. 17, 2017) ...................................................................... 2

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975)...................................................................... 23

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017)...................................................................... 2, 12, 16, 17

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. July 11, 2014) ...................................................................... passim

*Lealao v. Beneficial California, Inc*,
   82 Cal. App. 4th 19 (2000)...................................................................... 10

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ...................................................................... 18

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ...................................................................... 21

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ...................................................................... 22

*Morey v. Louis Vuitton North America, Inc.*,
   2014 WL 109194 (S.D. Cal. 2014)...................................................................... 12

*Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*,
   1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) ...................................................................... 23

*Municipal Auth. of Bloomsburg v. Pennsylvania*,
   527 F. Supp. 982 (M.D. Pa. 1981)...................................................................... 23

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   2015 U.S. Dist. LEXIS 168586 (C.D. Cal. Mar. 17, 2015)...................................................................... 22

*Perez v. Rash Curtis & Assocs.*,
   2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ...................................................................... 22

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ............................................................................... 23

*Rabin v. Concord Assets Grp., Inc.*,
   1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) .......................................... 23

*Robinson v. OnStar, LLC*,
   2020 WL 364221 (S.D. Cal. Jan. 22, 2020) .................................................................. 2

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................... 2, 24

*Roz v. Nestle Waters N Am., Inc.*,
   2017 WL 6942657 (C.D. Cal. Sept. 13, 2017) ............................................................. 2

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ...................................................................................... 8

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................................ 9

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ............................................................................... 23

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................................. 20, 24, 25

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ................................................................................ 18

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................. passim

*Wellens v. Sankyo*,
   2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ..................................................... passim

*Williamson v. McAfee, Inc.*,
   2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ............................................................ 15

*Williamson v. McAfee, Inc.*,
   2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) .............................................................. 12

*Zakskorn v. Am. Honda Motor Co.*,
   2015 WL 3622990 (E.D. Cal. Jun. 9, 2015) ............................................................... 22

**STATUTES**

Cal. Bus. & Prof. Code § 17602(a)(1) ........................................................................... 1, 15

Cal. Bus. & Prof. Code § 17602(c) .................................................................................... 2

Cal. Bus. & Prof. Code §§ 17200 ............................................................................. 4

Cal. Bus. & Prof. Code §§ 17500 ............................................................................. 4

Cal. Bus. & Prof. Code §§ 17600 ............................................................................. 1

Cal. Civ. Code §§ 1750 ............................................................................................. 4

**RULES**

Fed. R. Civ. P. 23(e) ................................................................................................... i

Fed. R. Civ. P. 26 ...................................................................................................... 6

Federal Rule of Civil Procedure 23(h) ................................................................. 3, 8

**OTHER AUTHORITIES**

Manual for Complex Litigation § 21.71 at 525 (4th ed. 2008) ............................... 9

I.     **INTRODUCTION**

Plaintiff Deborah Jordan (the "Class Representative" or the "Plaintiff") and Bursor & Fisher, P.A. ("Class Counsel") respectfully submit this memorandum of law in support of Plaintiff's motion for an award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of an incentive award in connection with the class-wide settlement of this action.  The Class Action Settlement Agreement[1] between Plaintiff and Defendant WP Company LLC ("Defendant" or "WaPo") (together with Plaintiff, the "Parties"), if finally approved, resolves Plaintiff's and Class Members' claims stemming from WaPo's alleged violations of California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*.

On July 8, 2021, the Court granted preliminary approval to the Settlement, which consists of cash and non-cash benefits and has a total value of approximately $6,736,690.  *See* 7/8/21 Order Granting Preliminary Approval (ECF No. 50).  Under the terms of the Settlement, WaPo will establish a non-reversionary cash Settlement Fund in the amount of $2,400,000, which will be used to pay all approved claims by Class Members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court.  Settlement ¶ 1.45.  WaPo will also automatically provide over $4,336,690 worth of Automatic Account Credit Codes to Class Members who do nothing during the claims process.  *Id*. ¶¶ 1.46, 2.2.  In other words, no claim form will be necessary for Class Members to realize the benefits of the Settlement, and in lieu of such benefits Class Members may choose to receive a *pro rata* cash payment by submitting a simple cash election form.  WaPo also agreed to injunctive relief in the form of revising the presentation and wording of the automatic renewal terms in its mobile and desktop platforms and in its direct mail offers to be consistent with the requirements of Cal. Bus. & Prof. Code § 17602(a)(1)-(2).  WaPo has further agreed to provide subscribers with a revised acknowledgment email that includes the automatic renewal terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Parties' Stipulation of Class Action Settlement Agreement and Release (the "Settlement" or "Settlement Agreement"), a true and correct copy of which is submitted as Exhibit 1 to the contemporaneously filed Declaration of Frederick J. Klorczyk III (the "9/3/21 Klorczyk Decl.").

retained by the consumer, consistent with Cal. Bus. & Prof. Code § 17602(c).  *Id*. ¶ 2.3.  This prospective relief will benefit Class Members for years to come.

To date, the response to the Settlement has been overwhelmingly positive.  As of the date of this filing, there have been only 11 opt-outs, and no objections.[2]  *See* 9/3/21 Klorczyk Decl. ¶ 37.  Yet, obtaining this exceptional relief came with significant risks.  *See id*. ¶¶ 4-7, 30-33.  For instance, when Plaintiff filed her Complaint in this matter, not only was there little authority interpreting the ARL's requirements of "visual proximity" and "affirmative consent" under Section 17602(a) of the ARL (neither of which are defined by statute), there were also few cases applying the "gift provision" under Section 17603 of the ARL or the "safe harbor" provision under Section 17604(b) of the ARL.  *Id*. ¶¶ 5-6, 32.  Thus, the scope of the statute, the relief available, and potential affirmative defenses were all in dispute.  Moreover, to Class Counsel's knowledge, at that time only two courts had issued an opinion on a contested class certification motion based on ARL violations, *see Robinson v. OnStar, LLC*, 2020 WL 364221 (S.D. Cal. Jan. 22, 2020) and *Roz v. Nestle Waters N Am., Inc.*, 2017 WL 6942657, at *3-6 (C.D. Cal. Sept. 13, 2017), and only one ARL case had progressed through summary judgment, *see Ingalls v. Spotify USA, Inc.*, 2017 WL 3021037 (N.D. Cal. Jul. 17, 2017).  *Id*. ¶¶ 4-5, 32.  As a result, in pursuing class-wide relief based on Defendant's alleged ARL violations, Plaintiff endured significant risk and was prepared to battle through hard-fought litigation involving complex factual investigation into WaPo's disclosure practices and dispositive motion practice on novel legal issues.  *Id*.  Ultimately, however, when the Parties thought that there was a potential for resolution, they sought the assistance of a well-respected mediator.  *Id*. ¶¶ 14-15.  That is, rather than put the arguments raised in WaPo's motion to dismiss to the test and then procced through the class certification and

---

[2] "'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.' 'A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it. … [T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) (Orrick, J.); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming district court's finding that 54 objections out of 376,301 putative class members reflected a favorable reaction).

1  summary judgment, Plaintiff elected to achieve meaningful, immediate relief for her fellow Class

2  Members. *Id*. ¶¶ 30-33.  The settlement was only reached in connection with two mediation

3  sessions with Jill R. Sperber, Esq., who is an experienced neutral affiliated with Judicate West. *Id*.

4  ¶¶ 15, 19, 29.  Thus, while resolution was achieved in a relatively short period of time, obtaining

5  the excellent settlement relief did not come easily.

6  In light of the exceptional relief obtained by the Parties, Plaintiff respectfully requests,

7  pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve attorneys' fees, costs,

8  and expenses of approximately 29% of the settlement fund, or $2,000,000, as well as an incentive

9  award of $5,000 for Plaintiff for her service as the Class Representative.  This method of

10  calculating the fee award, based on a percentage of the Settlement Fund, is straightforward, is fair

11  under the circumstances, and is supported by the laws of this Circuit.  Indeed, Courts in this Circuit

12  routinely approve fee requests for up to one-third of a settlement fund.  *See, e.g.*, *Blandino v. MCM*

13  *Constr., Inc.*, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (Orrick, J.) (awarding 33% of

14  settlement fund in attorneys' fees); *Wellens v. Sankyo*, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11,

15  2016) (Orrick, J.) (awarding 36% of $8,200,000 settlement fund in fees).  The 29% in attorneys'

16  fees, costs, and expenses requested here is within the range of reasonableness, and is supported by

17  a lodestar cross-check.  *See supra* Part IV(A)(4)(b), below (discussing the factors supporting the

18  application of a multiplier to Class Counsel's lodestar); *see also* 9/3/21 Klorczyk Decl. Ex. 2

19  (Bursor & Fisher's detailed billing diaries for this case).  The Court should approve the requested

20  fee and incentive award.

21  ## II.    FACTUAL AND PROCEDURAL BACKGROUND

22  ### A.    California's Automatic Renewal Law

23  On December 1, 2010, the California Legislature enacted the Automatic Renewal Law

24  ("ARL") with the intent to "end the practice of ongoing charging of consumer credit or debit cards

25  or third-party payment accounts without the consumers' explicit consent for ongoing shipments of

26  a product or ongoing deliveries of service."  First Amended Complaint (ECF No. 22) ("FAC") ¶ 21

27  (citing statement of legislative intent).  In 2018, the California Legislature amended the ARL to

28  increase consumer protections for orders that contain free trial and promotional pricing, and

1   subscription agreements entered into online.  *See id.* ¶ 22.  Thus, the ARL's core requirements are

2   that: (1) businesses must clearly and conspicuously disclose automatic renewal terms of any offer,

3   as defined by the statute; (2) they must obtain a consumer's affirmative consent; and (3) they must

4   provide consumers with an acknowledgment containing the terms of the automatically renewing

5   offer and cancellation information.  *See id.* ¶ 23.  Private citizens in California may enforce ARL

6   violations as predicate claims under California's Unfair Competition Law ("UCL"), Cal. Bus. &

7   Prof. Code §§ 17200, *et seq.*, which prohibits "any unlawful[] … business act or practice[.]"  *Id.* ¶

8   72.  Additionally, ARL violations may constitute acts of false advertising in violation of

9   California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.  See id.* ¶¶

10   91-99.  Finally, ARL violations may also constitute violations under California's Consumers Legal

11   Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.  See id.* ¶¶ 100-111.

### B.   Plaintiff's Allegations

13   Defendant is an international media company that, among other activities, publishes and

14   distributes to California consumers digital editions of *The Washington Post* and provides

15   automatically renewing subscription plans for various digital products and services under the

16   Washington Post brand name (the "WaPo Subscriptions").  Plaintiff alleges that when consumers

17   sign up for a WaPo Subscription through the WaPo Website or App, Defendant enrolls consumers

18   in an automatically renewing subscription that results in monthly or annual charges to the

19   consumer's payment method.  FAC ¶ 1.  Defendant allegedly engages in these autorenewal

20   practices without first providing California consumers the requisite disclosures and authorizations

21   required under the ARL.  *Id.*  Plaintiff also alleges that every violation of the ARL constitutes an

22   "unlawful" practice under the UCL.  *Id.* ¶ 75.  And because these ARL violations involve

23   misrepresentations and/or omissions of material fact, Plaintiff contends Defendant also violated the

24   FAL and CLRA.  *See id.* ¶¶ 91-99, 100-111.  On that basis, Plaintiff also brought common law

25   claims against Defendant for conversion, unjust enrichment, negligent misrepresentation, and

26   fraud.  *See id.* ¶¶ 4, 85-90, 108-125.

### C.   The Litigation History And Work Performed To Benefit The Class

28   Beginning in or around August 2019, Class Counsel commenced a pre-suit investigation of

publishing companies' violations of the ARL.  *See* 9/3/21 Klorczyk Decl. ¶ 4.  By June of 2020,

Class Counsel was retained by Plaintiff to pursue claims against Defendant for alleged ARL

violations in connection with her WaPo Subscriptions.  *Id*. ¶ 8.  Because very few courts had issued

an opinion interpreting the statute – in particular, no court had definitively identified the distinction

between obtaining a consumer's "*ordinary* consent" (which is required for the formation of all

agreements) versus "*affirmative* consent" (which is a heightened form of consent that is required,

but not defined, by the ARL), interpreted the term "visual proximity" (another undefined term

under the ARL), or applied the gift provision under Section 17603 of the ARL – Class Counsel's

investigation was extensive, novel, and involved in-depth research into Defendant's billing

practices, textual analysis of the statute, and the legislative history of the ARL.  *Id*. ¶¶ 4-6.

Moreover, Class Counsel was aware that Defendant would likely challenge liability by arguing that

WaPo achieved a level of compliance sufficient to qualify for a purported "good faith safe harbor"

under Section 17604(b) of the ARL.  *Id*. ¶ 7.  Thus, Class Counsel performed extensive legal

research regarding the application of safe harbor provisions under similar statutes in California and

across the country.  *Id*.

Despite these litigation risks, July 29, 2020, Plaintiff filed her initial Class Action

Complaint in the United States District Court for the Northern District of California, alleging that

Defendant's renewal charge was in violation of the ARL, thus giving rise to claims under

California's UCL, FAL, CLRA (injunctive relief), and other common law claims.  *See* 9/3/21

Klorcyzk Decl. ¶ 9 (citing ECF No. 1).  On October 5, 2020, Plaintiff filed the operative FAC as of

right.  *Id.* ¶ 12 (citing ECF No. 22).  In addition to claims for relief brought by Plaintiff's initial

Complaint, the FAC contains a request for damages under the CLRA at Count IV.  *See id.* (citing

ECF No. 22 ¶ 104).  On October 19, 2020, Defendant moved to dismiss the FAC under Rule

12(b)(6).  *Id.* ¶ 13 (citing ECF No. 23).  Defendant argued that its pre-checkout disclosures

complied with the ARL because they provided all of the information required, in a clear and

conspicuous manner, and further argued that Plaintiff had not stated a claim for fraud and negligent

misrepresentation because, among other reasons, Plaintiff had not identified a false statement or

any specific omissions from the pre-purchase disclosures, and because any omissions in the post-

purchase disclosures could not have influenced Plaintiff's decision to purchase her subscription. *Id*. On November 19, 2020, the Parties filed a Joint Stipulation and Proposed Order with the Court, indicating that the Parties had agreed to engage in private mediation and requesting that the Court enter an order staying all upcoming deadlines pending settlement discussions. *Id*. ¶ 14 (citing ECF No. 28). On November 20, 2020, the Court entered an order granting the Parties' request. *Id*. (citing ECF No. 29).

From the outset of the case, the Parties engaged in direct communications and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of an early resolution. Those discussions eventually led to an agreement between the Parties to engage in early mediation, which the Parties agreed would take place before Jill R. Sperber, Esq., an experienced neutral affiliated with Judicate West. *Id*. ¶ 15. Prior to the mediation, the Parties exchanged informal discovery, including on issues such as: the size and scope of the putative class and their damages; digital acknowledgment emails that Defendant sent California consumers during the Class Period following their enrollment in a WaPo Subscriptions, as well as representative web and mobile pay flow and check out pages from Defendant's website during the relevant time period showing the content and presentation of the disclosures; and Defendant's current and historical Terms of Sale and Terms of Service, which recap the purchase terms other relevant practices and policies related to the WaPo Subscriptions. *Id*. ¶ 16. Given that this information would be produced early in formal discovery, the Parties were able to sufficiently assess the strengths and weaknesses of their cases based on the materials exchanged in informal discovery. *Id*. The Parties also exchanged detailed mediation statements, explaining their respective legal arguments. *Id*. ¶ 18. Additionally, before mediation, Class Counsel devoted substantial time to researching the viability of different class-wide settlement structures under the relevant Ninth Circuit case law. *Id*. ¶ 17.

The Parties participated in two mediation sessions before Ms. Sperber, which were both conducted by Zoom. *Id*. ¶ 19. The first session took place on March 16, 2021 and lasted approximately nine hours. *Id*. Although no settlement was reached that day, the parties promptly arranged for a second mediation session which took place on March 25, 2021, was conducted via Zoom, and lasted nearly six hours. *Id*. The Parties' negotiations were conducted in good faith and

at arms'-length at all times.  *Id.*  At the end of the second mediation session, the Parties reached an agreement to settle the case and executed a binding Settlement Term Sheet as to all material terms of a class-wide settlement.  *Id.*  Only once all other terms were agreed to, and with the assistance of Ms. Sperber, did the Parties negotiate the attorneys' fee and incentive award.  *Id.*

After reaching an agreement in principle on the Settlement, Class Counsel worked extensively with defense counsel to finalize and memorialize a formal Class Action Settlement Agreement, including proposed class notice documents.  *Id.* ¶ 27.  That process included multiple rounds of redlines and phone calls to discuss proposed edits.  *Id.*  Thus, the formal Settlement Agreement was reached as a result of extensive arm's-length negotiations between the Parties and their counsel.  *Id.*  Further, after finalizing and executing the Class Action Settlement Agreement, Class Counsel prepared Plaintiff's Motion for Preliminary Approval and Certification of a Settlement Class, which was filed on May 28, 2021.  *Id.* ¶ 28 (citing ECF No. 46).  The Court preliminarily approved the Settlement on July 8, 2021.  *Id.* (citing ECF Nos. 47, 50).

## III.    SUMMARY OF THE SETTLEMENT

The Settlement provides an exceptional result for the class by delivering immediate relief to the more than 319,395 persons "who, from July 29, 2016, to and through April 1, 2021, enrolled in an automatically renewing WaPo Subscription using a California billing address and who, during that time period, were charged and paid one or more automatic renewal fees in connection with such subscription."  Settlement ¶ 1.46; *see also* 9/3/21 Klorczyk Decl. ¶¶ 22, 37.

The Settlement consists of cash and non-cash benefits and has a total value of approximately $6,736,690.  Settlement ¶ 1.49.  Under the terms of the Settlement, WaPo will automatically provide over $4,336,690 worth of access codes (the "Automatic Account Credit Codes") to Class Members who do nothing during the claims process.  *Id.* ¶¶ 1.8, 2.2. Additionally, WaPo will establish a non-reversionary cash Settlement Fund of $2,400,000, which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court.  *Id.* ¶ 1.48.  Pursuant to the Settlement, every Settlement Class Member will be entitled to receive either an Automatic Account Credit Code for up to eight (8)

weeks of a free Washington Post digital subscription (valued at up to $20), or, at their election, a *pro rata* cash payment from the Settlement Fund. *Id*. ¶ 2.2. The type of WaPo Subscription a particular Class Member is eligible to receive using the Automatic Account Credit Codes depends on whether his or her WaPo Subscription was Active or Inactive as of April 1, 2021,[3] and the duration of the WaPo Subscription varies from four (4) to eight (8) weeks, depending on whether the Class Member's most recently active WaPo Subscription was for an Annual or Four-Week renewal term.[4] *Id*. Alternatively, each Settlement Class Member may opt to receive a *pro rata* cash payment from the $2.4 million Settlement Fund, in lieu of any Automatic Account Credit Code, by submitting a valid and timely Claim Form to the Settlement Administrator, subject to *pro rata* adjustment based on total claims volume. *Id*. The Parties estimate that the cash award will be $20 per Annual Class Member and $10 per Four-Week Class Member, based an expected claims rate of 5%. *Id*.

## IV.   CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Class Counsel seeks an award of attorneys' fees, costs, and expenses in the amount of $2,000,000, which is approximately 29 percent of the $6.7 million Settlement.

Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). In determining a reasonable fee award, courts in the Ninth Circuit apply one of two fee calculation methods – the "percentage of the fund" method or the "lodestar" method. *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The trend in this Circuit is to use the percentage of recovery as the "dominant" approach in common fund cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311

---

[3] Active Class Members who do nothing during the claims period will receive Codes for free weeks to his or her *then-current digital* WaPo subscription, while Inactive Class Members will receive Codes for free weeks to a *premium digital* WaPo Subscription. Settlement ¶ 2.2.

[4] Class Members that have or had Annual WaPo Subscriptions at any point during the Class Period and do not exclude themselves or opt for cash will be entitled to eight (8) weeks of free subscription services, valued at $20; Class Members with Four-Week WaPo Subscriptions will receive four (4) weeks of free subscription services, valued at $10. Settlement ¶ 2.2.

(9th Cir. 1990); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  In any case, both methods are commonly used as "cross-checks" to ensure a fee award is reasonable. *Vizcaino*, 290 F.3d at 1050; *see also Larsen*, 2014 WL 3404531, at *8 (noting that courts may "use the lodestar method as a cross-check to determine the fairness of the fee award") (internal quotation marks omitted).  Ultimately, courts are bound to exercise their discretion "so as to achieve a reasonable result."  *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (internal quotations omitted).  As discussed below, Class Counsel's fee request is fair and reasonable and should be approved in full.

### A.   The Court Should Award Attorneys' Fees Under The Percentage Of The Benefit Method

#### 1.   The Total Value Of The Settlement Exceeds $6.7 Million

To calculate attorneys' fees based on the percentage of the benefit, the Court must first determine the value of the settlement fund.  *See Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *2 (N.D. Cal. Jan. 18, 2017) ("Under the percentage-of-the-fund method, the court compares the fee recovery against the total settlement value."); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (noting that a percentage-of-recovery fee award is calculated by taking a percentage of the "common fund for the benefit of the entire class").  In doing so, the Court must include the value of the benefits made available to the Class, including the value of any in-kind relief, as well as attorneys' fees, litigation expenses, and notice and claims administration payments to be made.  *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses.  We have repeatedly held 'that the reasonableness of attorneys' fees is not measured by the choice of the denominator.'") (quotation omitted); *see also Staton v. Boeing*, 327 F.3d 938, 974-75 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).  Stated otherwise, California courts include the value of both the monetary and non-monetary benefits made available to the Class when calculating the total value of the settlement.  Thus, "the sum of the two amounts ordinarily should be treated as a settlement

1   fund for the benefit of the class ….” *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 554

2   (2009) (quoting the Manual for Complex Litigation § 21.71 at 525 (4th ed. 2008)); *see also Lealao*

3   *v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000).

4          Here, the total value of the common fund is estimated at $6,736,690.00, which includes the

5   $2,400,000.00 non-reversionary cash Settlement Fund and the $4,336,690.00 in Automatic

6   Account Credit Codes.  Class Counsel’s requested fee award (inclusive of costs and expenses),

7   Plaintiff’s Jordan’s proposed incentive award, and the costs of notice and administration are to be

8   paid from the Settlement Fund.  Settlement ¶¶ 1.20, 8.1.

9                    **2.      The Automatic Account Credit Codes Should Be Valued**
                             **At Their Face Value**

10         The $6.7 million valuation of the Settlement Fund necessarily values the Automatic

11  Account Credit Codes at the face value of the WaPo Subscriptions to which the Codes provide

12  access (*i.e.*, 100 cents on the dollar).  This is consistent with the Ninth Circuit’s approach in *In re*

13  *Online DVD-Antitrust Litig.* (“*Online DVD*”), 779 F.3d 934 (9th Cir. 2015), which held that gift

14  cards or vouchers should be valued at 100 cents on the dollar for purposes of calculating attorneys’

15  fees under the percentage-of-the-benefit method.

16         Furthermore, the Settlement does not implicate CAFA’s restrictions on coupon settlements

17  because the Automatic Account Credit Codes, like the product vouchers at issue in *In re Online*

18  *DVD*, are not “coupons.”  In that case, the Ninth Circuit “conclude[d] the district court properly

19  decided that the portion of the settlement that will be paid in Walmart gift cards was not a ‘coupon

20  settlement’ within the meaning of CAFA[,]” emphasizing the distinctions between the non-

21  monetary portion of the settlement in that case “from the settlements that drew the attention of

22  Congress” when enacting CAFA:

23                    The Walmart-Netflix settlement differs from the settlements that drew the
                      attention of Congress.  Affording over 1 million class members $12 in cash
24                    or $12 to spend at a low-priced retailer does not leave them with “little or no
                      value.” … Moreover, this case is distinguishable from every single coupon-
25                    settlement example in the Senate report.  The report focuses on settlements
                      that involve a discount – frequently a small one – on class members’
26                    purchases from the settling defendant.  <u>These discounts require class
                      members to hand over more of their own money before they can take</u>
27                    <u>advantage of the coupon</u>, and they often are only valid for select products or

28

1
2
3

> services.  The gift cards in this case are different.  Instead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items at Walmart, the settlement gives class members $12 to spend[.] … <u>The class member need not spend any of his or her own money</u>

4   *In re Online DVD*, 779 F.3d at 949-51 (internal citations omitted and emphasis added).  Further,

5   "the option of obtaining cash instead of a gift card, undercut[s] the argument that the settlement

6   forces them to buy from the defendant."  *Id*. at 952.  As discussed below, the Automatic Account

7   Credit Codes here share the same characteristics as the gift cards in *In re Online DVD*.

8   <u>First</u>, the Settlement Agreement provides that "[n]o payment or billing information will be

9   required for an Inactive Class Member to use the Automatic Account Credit Code."  Settlement ¶

10  2.2(e).  That means that, unlike the automatically renewing WaPo Subscriptions that Class

11  Members purchased during the Class Period, an Inactive Class Member's failure to cancel will not

12  result in subsequent charges to that individual's payment method.  Instead, the Settlement provides

13  "<u>free</u> access to various WaPo-branded subscription products … to Active and Inactive Subscribers

14  who do not submit an Approved Claim by the Claims Deadline."  Settlement ¶ 1.8 (emphasis

15  added); *see also id*. Ex. E, Long Form Notice at 5 (noting that there will be "no expectation or

16  obligation to continue using or paying the services beyond the free period").  Therefore, this

17  settlement is fundamentally different from the "problematic coupon settlements" described in

18  CAFA's legislative history, as the Automatic Account Credit Codes do not "require class members

19  to hand over more of their own money before they can take advantage of the[m]," *Online DVD*,

20  779 F.3d at 950-51.  *See also, e.g.*, *Browning v. Yahoo! Inc.*, 2007 WL 4105971, *5 (N.D. Cal.

21  2007) ("[T]he in-kind relief offered in this case is not a 'coupon settlement' because it does not

22  require class members to spend money in order to realize the settlement benefit."); *Hendricks v.

23  Ference*, 754 F. App'x 510, 512 (9th Cir. 2018) ("Here, the claims center on Starkist's alleged

24  under-filling of tuna cans, and the settlement supplies the missing tuna.").[5]

25
26
27
28

---

[5] Notably, although Section 17602(a) explicitly requires both "visual proximity" and "affirmative consent," neither the statute nor caselaw defines these terms, and so Class Counsel would have been required to craft its arguments from scratch.  *See id*. ¶ 6.

Second, the Automatic Account Credit Codes are not "coupons" within the meaning of CAFA because they "will not expire and may be freely transferred." *See* Settlement ¶ 2.2(f); *see also id.* ¶ 1.8.  Because there is no expiration date, a Class Member is free to activate the Codes immediately upon their receipt, or the Class Member may choose to delay activation for a matter of weeks, month, or years.  And, because the Codes are freely transferrable, Class Members may, at any time, give the Codes to someone else as a gift or sell them for cash on a secondary market.  *See In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 941 (affirming finding that "CAFA's coupon-settlement provisions should not apply because the Walmart gift cards were sufficiently different from coupons—especially given the fact that …. [The] gift cards were freely transferrable, and they had no expiration date"); *see also Morey v. Louis Vuitton North America, Inc.*, 2014 WL 109194, *8 (S.D. Cal. 2014); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *6 (C.D. Cal. July 21, 2008).

Third, every Class Member has the option to submit a valid Claim Form and receive a *pro rata* cash payment from the Settlement Fund, in lieu of the Automatic Account Credit Codes. Settlement ¶ 2.2(f).  As this Court has noted, the fact that Class Members have an "option of obtaining cash instead of [Codes], undercut[s] the argument that the settlement forces [Class Members] to buy from the defendant." *Knapp*, 283 F. Supp. 3d at 837 (Orrick, J.); *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 941 (finding CAFA's coupon-settlement provisions inapplicable to product vouchers "especially given the fact that claimants could choose between gift cards and cash"); *Cody v. SoulCycle Inc.*, 2017 WL 6550682, at *7 (C.D. Cal. Oct. 3, 2017) ("Because class members here may elect the 'Cash Option' or keep the 'cash-equivalent' of the reinstated classes, without spending any money of their own or receiving any 'discount,' this Settlement is not a 'coupon settlement' and therefore not subject to CAFA's limitations on contingent fees."); *Williamson v. McAfee, Inc.*, 2017 WL 6033070, at *1 (N.D. Cal. Feb. 3, 2017) ("But this is not a coupon settlement, since class members had the option to receive cash instead of value certificates, even though they received certificates by default.").

In sum, the existence of a $2.4 million cash settlement fund and the ability of Class Members to seek cash payments, as well as the transferability and non-expiration of the Automatic

Account Credit Codes, distinguishes the instant Settlement from those found to be coupons. *Compare In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013) ("For instance, a coupon settlement is likely to provide less value to class members if, like here, the coupons are non-transferable, expire soon after their issuance, and cannot be aggregated."), *with Hendricks v. Ference*, 754 F. App'x 510, 512 (9th Cir. 2018) ("Virtually all of the factors identified in *Online DVD-Rental* weigh in favor of the district court's conclusion that the vouchers were not coupons under CAFA.  The vouchers did not expire, they were freely transferrable, they could be used at a wide variety of stores (any retailer selling Starkist products), and the vouchers had sufficient value that class members could use them to purchase tuna without additional out-of-pocket expense. … Here, the claims center on Starkist's alleged under-filling of tuna cans, and the settlement supplies the missing tuna.  …  Supplying missing tuna or providing a replacement for a defective product may be accomplished most efficiently by way of a voucher, and the use of a voucher to deliver an in-kind settlement to class members will not by itself transform a non-coupon settlement into a coupon settlement subject to CAFA.  Accordingly, we affirm the district court's determination that the settlement was not subject to CAFA's coupon-settlement requirements.").

### 3.   <u>All Relevant Factors Favor An Upward Departure From The Ninth Circuit's 25% Benchmark To 29%</u>

"The typical range of acceptable attorneys' fees in the Ninth Circuit under [the percentage] method is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Alvarez*, 2017 WL 2214585, at *3 (Orrick, J.).  That "benchmark … can be adjusted upward or downward based on several factors, including (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases." *Id.* (citing *Vizcaino*, 290 F.3d at 1048–50).  As shown below, an upward departure from the 25% benchmark is warranted here.

#### a.   *Class Counsel Achieved Extraordinary Results For The Class*

First, an upward adjustment to the 25% benchmark is justified because, Class Counsel "achieved exceptional results for the class." *Vizcaino*, 290 F.3d at 1048.  Specifically, Class

Counsel's requested fees are reasonable given the unique circumstances of this case, which are discussed in greater detail at Parts IV(A)(2)(b)-(c), below:

- Class members will receive relief of substantial value quickly, with an estimated 95% or more of class members receiving such benefits automatically, without the need for a claims process.

- The litigation was conducted and the Settlement was obtained in an efficient manner, by experienced and qualified counsel.

- The case involved complex and novel legal issues and factual theories, which involved significant litigation risks.

- Class Counsel devised a litigation and settlement strategy that factored in the complex and uncertain nature of the case.

- This Settlement also compares favorably to settlements reached in similar cases, especially a recent settlement reached in another ARL case brought on behalf of California purchasers. *Compare Moses v. The New York Times Company*, No. 1:20-cv-04658-RA (S.D.N.Y.); *see also* Part IV(A)(2)(d), *supra* (comparing settlements).

Thus, Class Counsel's efforts in this case resulted in an exceptional recovery for the Settlement Class. Class Counsel should be rewarded for achieving this result.

> b.     *Plaintiff's Novel Claims Carried Substantial Litigation Risk*

Second, this case was "extremely risky for class counsel[,]" particularly because of its relative novelty. *Vizcaino*, 290 F.3d at 1048. This case involved California's ARL, a statute that is still in its nascent stages of litigation. As a result, the resolution of several of Plaintiff's claims turned on open question of law. *See* 9/3/21 Klorczyk Decl. ¶¶ 4-7. For example, the Parties would have likely argued over whether various of WaPo's Checkout Page disclosures were presented in "visual proximity" to the request for consent on that page, and whether Defendant obtained Plaintiff's and Class Members' "affirmative consent" despite the fact that the Checkout Page for the WaPo Subscriptions contained no checkbox or other mechanism that requires consumers to expressly manifest their assent to the automatic renewal offer terms associated with the WaPo Subscriptions. Similarly, the Parties have opposing views as to whether the WaPo Subscriptions qualify as "goods, wares, merchandise, or products" and are therefore subject to the gift provision under Section 17603 of the ARL, which in turn would give rise to disputes amongst the Parties concerning the proper measure of class-wide damages. *See, e.g.*, *McKee v. Audible, Inc.*, No. 17-

1    CV-1941-GW (C.D. Cal.) ("[For] Audible members whose only complaint is that they would have

2    paid less for their membership if Audible's disclosures were better[,] … [th]e measure of these

3    [price premium] damages would have been very difficult to quantify[] … and would have required

4    a battle of experts at great cost to both sides."); *id.* ("Several of Plaintiffs' other claims … raised

5    questions of whether causation and damages could be proved if Audible members had reasonable

6    notice of credit expiration terms, auto-pay terms, and back-up card charging terms even though the

7    technical requirements of the … [ARL] were not met at sign up."); *Williamson v. McAfee, Inc.*,

8    2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014) ("Plaintiff cannot state a CLRA claim [based

9    on alleged violations of the ARL] because [the products at issue do not] constitute 'goods' or

10    'services' under that statute. … Accordingly, the court will dismiss Plaintiff's CLRA claim without

11    leave to amend."); *Cody v. SoulCycle Inc.*, 2017 WL 6550682, at *3 (C.D. Cal. Oct. 3, 2017)

12    (observing causation of damages from expired classes would be difficult to prove); *see also* 9/3/21

13    Klorczyk Decl. ¶ 5.  Defendant would also probably raise an affirmative defense that it is exempt,

14    pursuant to Section 17604, from liability for purely technical ARL violations because it

15    substantially complied with its statutory obligations under the ARL in good faith.  9/3/21 Klorczyk

16    Decl. ¶¶ 7, 32.  Thus, the magnitude and complexity of the litigation support the requested fee.[6]

17          Moreover, given the early stage of this litigation, there are numerous risks associated with

18    continued litigation.  The next steps in the litigation would have been for Plaintiff to oppose

19    Defendant's Motion to Dismiss and resolution of the Motion by the Court, the start of discovery,

20    including Party depositions, substantial document discovery, and contested motions for summary

21    judgment and class certification, which would be at minimum costly and time-consuming for the

22    Parties and the Court and create risk that a litigation class would not be certified and/or that the

23    Settlement Class would recover nothing at all.  *See* Settlement ¶¶ J-K.  For instance, even assuming

24    that Plaintiff were to survive a summary judgment motion, she would likely face the risk of

25

26    _____

[6] Open questions of law include, but are not limited to, issues concerning:  application of the ARL's
27    gift provision under Section 17603 to digital products; application of the good faith safe harbor
provision under Section 17604 of the ARL; and what it means under the ARL to present disclosures
28    "in visual proximity" (Cal. Bus. & Prof. Code § 17602(a)(1)), to obtain "affirmative consent" (*id.* §
17602(a)(2)), and to "compl[y] … [with the ARL] in good faith" (*id.* § 17604).

1    establishing liability at trial as a result of conflicting expert testimony between her own expert

2    witnesses and Defendant's expert witnesses.  In this "battle of experts," it is virtually impossible to

3    predict with any certainty which testimony would be credited, and ultimately, which expert version

4    would be accepted by the jury.  The experience of Class Counsel has taught them that these

5    considerations can make the ultimate outcome of a trial highly uncertain.  And certainly, the

6    "parties would incur significant additional costs in discovery, including depositions, … a survey of

7    [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert

8    discovery." *Larsen*, 2014 WL 3404531, at *4.   In sum, given that "significant procedural hurdles

9    remain, including class certification and an anticipated appeal[,]" continuation of this lawsuit

10   would entail "lengthy and expensive litigation with uncertain results.'" *Id.* (citation and quotations

11   omitted).  This uncertainty of recoupment based on the merits of Plaintiff's claims further justifies

12   Class Counsel's fee request.

13                      c.      *Class Counsel Generated Benefits Beyond The Settlement Fund*

14           Third, an upward adjustment is justified here because Class Counsel's "performance

15   generated benefits beyond the cash settlement fund." *Vizcaino*, 290 F.3d at 1049.  Plaintiff's and

16   Class Counsel's claims and arguments thus caused Defendant to change its conduct in multiple

17   ways that benefit both current Class Members and future California consumers who may enroll in

18   an automatically renewing WaPo Subscription.  Specifically, in addition to the monetary and in-

19   kind relief provided, the Settlement also provides injunctive relief that requires WaPo to revise its

20   advertisements, disclosures, and terms to ensure that millions of current and future subscribers

21   make informed decisions related to purchasing decisions and cancellation.  Settlement ¶ 2.3; *see*

22   *also* 9/3/21 Klorczyk Decl. ¶ 26.  The injunctive relief is broad, meaningful, and resolves most of

23   the complaints that Plaintiff raised concerning Defendant's advertising and notice practices.  *Id.*

24   The lawsuit focused largely on the clarity, content, and timing of Defendant's disclosures and

25   statements (and omissions) concerning its billing practices, cancellation policy, and other material

26   automatic renewal offer terms associated with the WaPo Subscriptions.  The formal injunctive

27   relief ensures that every future WaPo subscriber will receive – at the time of sign-up – clear and

28   conspicuous written notice of all of WaPo's subscription membership terms, cancellation policies,

billing practices in a manner consistent with the intentions of the California legislature. *See* 9/3/21

Klorczyk Decl. ¶ 5; *see also Knapp*, 283 F. Supp. 3d at 833 ("The Settlement Agreement also

provides for injunctive relief, so class members that choose to continue doing business with

Art.com will benefit from this aspect as well.").[7]

Although the $6.7 million valuation does not account for the value of this injunctive relief,

these changes are meaningful and constitute significant benefits to the class. *See, e.g.*, *Larsen*,

2014 WL 3404531, at \*9 (Orrick, J.) ("The Settlement Agreement also provides the equitable relief

that Trader Joe's will stop using the disputed labels.  These are significant benefits to the class.");

*Vizcaino*, 290 F.3d at 1049 (allowing an upward adjustment to the lodestar in part because

"counsel's performance generated benefits beyond the cash settlement fund"); *id.* ("[A]s a result of

this litigation, many workers who otherwise would have been classified as contingent workers

received the benefits associated with full time employment.  Incidental or non-monetary benefits

conferred by the litigation are a relevant circumstance."); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d

373, 379 (9th Cir. 1995) (finding upward adjustment from 25% benchmark "justified because of

the complexity of the issues and the risks … [and the $12 million settlement valuation] *does not*

*reflect the nonmonetary benefits in the derivative settlement*" affirming 33% fee award) (emphasis

added); *see also Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C.

Cir. 1986) ("[W]e think that an upward adjustment to the lodestar is appropriate to reflect the

benefits to the public flowing from this litigation.").

> d.    *Market Rates As Reflected by Awards in Similar Cases*

Fourth, an award of 29% of the total settlement value in fees here is consistent with market

rates as reflected by awards made in similar cases.  Indeed, courts in this Circuit routinely approve

fee requests for up to one-third of a common fund.  *See, e.g.*, *Blandino*, 2014 WL 11369763, at \*3

---

[7] WaPo is also providing Class Members with an Active Annual WaPo Subscription with "a one-time additional acknowledgement email at least 30 days before their next renewal date that provides those subscribers with notice that their subscription will renew and includes a clear link to directions on how to cancel that subscription."  Settlement ¶ 2.3.  WaPo will also provide Class Members with an Active Four-Week WaPo Subscription as of June 27, 2021 with a similar "one-time additional acknowledgement email at least 7 days before their next renewal date[.]"  *Id.*  These supplemental notice emails are designed ensure that Class Members are able to cancel their active WaPo subscriptions before they are charged yet again.

1   (Orrick, J.) (awarding fee of 33%) ("In accordance with the terms set forth in the Settlement

2   Agreement, Class Counsel shall be paid a fee award of thirty percent of the Gross Settlement

3   Payment[.]"); *Larsen*, 2014 WL 3404531, at *9 (Orrick, J.) ("[Class counsel's] request for

4   attorneys' fees in the amount of 28% of the common fund falls within the range of acceptable

5   attorneys' fees in Ninth Circuit cases."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 460

6   (9th Cir. 2000) (affirming 33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064,

7   at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming 33.3% fee award)

8   ("The $2,000,000 requested by class counsel amounts to one-third of this common fund. … Courts

9   in this district have consistently approved attorneys' fees which amount to approximately one-third

10  of the relief procured for the class. … As the attorneys' fees requested by class counsel are

11  reasonable in amount and were procured in an adversarial manner, the Court hereby GRANTS

12  class counsel's motion for the provision of attorneys' fees in the amount of $2,000,000."); *In re*

13  *Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee award); *Vasquez*

14  *v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical

15  range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement

16  value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding fee of

17  32.8%); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687829, at *1 (N.D. Cal. Apr. 22,

18  2010) ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit

19  courts award in common fund cases."); *Vizcaino*, 290 F.3d at 1050 (finding a 28% fee award "to be

20  at or below the market rate" and affirming district court award of same).

21       Further, the relief offered under this Settlement plainly meets or exceeds settlements in

22  other ARL matters.  For example, the Southern District of New York recently granted preliminary

23  approval to a similar class-wide settlement under California's ARL, negotiated by the same

24  proposed Class Counsel, in *Moses v. The New York Times Company*, No. 1:20-cv-04658-RA

25  (S.D.N.Y.).  *See* 9/3/21 Klorczyk Decl. ¶ 49; *see also id.* Ex. 16, Plaintiff's Unopposed Motion for

26  Preliminary Approval of Class Action Settlement in *Moses v. The New York Times Company*, No.

27  1:20-cv-04658-RA (S.D.N.Y.) (ECF No. 42) ("*Moses* Preliminary Approval Brief"); *id.* Ex. 17,

28  Order Granting Preliminary Approval in *Moses v. The New York Times Company*, No. 1:20-cv-

04658-RA (S.D.N.Y.) (ECF No. 43) ("*Moses* Preliminary Approval Order").  Under the terms *the*

*Moses* settlement, the defendant agreed to "automatically provide over $3,900,000 worth of access

codes … to Class Members who do nothing during the claims process," and to "establish a non-

reversionary $1,650,000 cash Settlement Fund which will be used to pay all approved claims by

class members."  9/3/21 Klorczyk Decl. Ex. 4, *Moses* Preliminary Approval Brief at 1.  Thus, the

total value of the *Moses* settlement was approximately $5,563,000, with a class of nearly 900,000

California subscribers.  *Id.*  By comparison, the proposed Settlement here distributes more cash and

more credits to fewer persons than the *Moses* settlement, ultimately resulting in significantly more

relief per Class Member:

|  | *Jordan* Settlement | *Moses* Settlement |
|---|---|---|
| **Settlement Fund** | $6,736,690 Total Value ($2,400,000 cash + $4,336,690 Automatic Account Credit Codes) | $5,563,000 Total Value ($1,650,000 cash + $3,913,000 Automatic Access Codes) |
| **Class Members** | 319,395 | 875,000 |
| **Value Per Class Member** | $21.09 | $6.36 |

*Compare* Settlement ¶ 2.2 (providing that Settlement Class Members that submit a valid Claim

Form are eligible to receive a *pro rata* cash payment, which the Parties estimate will be $20 per

Annual Class Member and $10 per Four-Week Class Member), *with* 9/3/21 Klorczyk Decl. Ex. 16,

*Moses* Preliminary Approval Brief at 14 (estimating a *pro rata* cash payment from the Settlement

Fund of "$5.00 per Class Member[.]").  Thus, if the *Moses* settlement is said to "provide[]

substantial relief to the Settlement Class[,]" then the relief of proposed Settlement in this case,

which indisputably provides more value to Class Members in this litigation, is truly exceptional.[8]

---

[8] Further, as this Court has noted, "[f]ee award percentages generally are higher [than 25%] in cases where the common fund is below $10 million." *Alvarez*, 2017 WL 2214585, at *3 (Orrick, J.); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) (noting that "it is common practice to award attorney's fees at a higher percentage than the twenty-five percent (25%) benchmark in cases that involve a relatively small – i.e., under ten million dollar ($10 Million) – settlement fund") (citation omitted); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("Indeed, California cases in which the common fund is small, tend to award attorneys' fees above the 25% benchmark."); *id.* ("[A] review of California cases in other districts reveals that courts usually award attorneys' fees in the 30-40% range in … class actions that result in recovery of a common fund under $10 million[.]"); *Craft v. Cnty. Of San Bernardino*,

1

        e.       *The Contingent Nature Of The Fee And Financial Burden Borne*
            *By Class Counsel*

2

      Fifth, the requested upward departure is justified given, *inter alia*, that the novelty of this

3

case that made it complex presented a substantial risk of non-payment for Class Counsel.  *See*

4

*Vizcaino*, 290 F.3d at 1050.  "Courts have recognized that the public interest is served by

5

rewarding attorneys who assume representation on a contingent basis with an enhanced fee to

6

compensate them for the risk that they might be paid nothing for their work."  *Larsen*, 2014 WL

7

3404531, at *9 (Orrick, J.); *In re Omnivision*, 559 F. Supp. 2d at 1047).  Here, the risk of non-

8

payment featured prominently throughout the current litigation.  Indeed, as there are few binding

9

decisions interpreting the ARL, success on the legal issues presented by this case was far from

10

certain.  9/3/21 Klorczyk Decl. ¶ 32.

11

      Moreover, given that "significant procedural hurdles remain" at this early stage of the

12

lawsuit, "including class certification and an anticipated appeal[,]" any continuation of the

13

litigation would further exacerbate the financial risk Class Counsel has undertaken in this matter.

14

*Larsen*, 2014 WL 3404531, at *9.  That is, "[i]n the absence of settlement now, the parties would

15

incur significant additional costs in discovery, including depositions, … a [consumer] survey …

16

regarding the materiality of the alleged misrepresentations[ and omissions of Defendant's

17

Checkout Page], and expert discovery addressing [consumer perception and the viability of

18

Plaintiff's theory of class-wide damages]."  *Id*. at *4.  As this Court has acknowledged, "[a]voiding

19

such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as

20

well as conserve judicial resources."  *Id*. (citing *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010

21

WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010)); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d

22

1043, 1048-50 (9th Cir. 2002).

23

      Given these risks associated with proceeding in litigation and in collecting on any

24

judgment, an award of 29% in fees is more than reasonable.  *See, e.g.*, *Chen v. W. Dig. Corp.*, No.

25

8:19-cv-00909-JLS-DFM (C.D. Cal. Jan. 13, 2021) ("[T]he Court finds that the requested upward

26

27

28

_____

624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in fees
above 25%."); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995)
(percentages greater than 30% tend to be awarded in cases with class funds of less than $10
million).

departure from the [Ninth Circuit's 25%] benchmark rate is warranted here, and awards Class

Counsel $2,382,510, which is equivalent to 30.7% of the Settlement Fund.").

### 4. The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check

Courts in the Ninth Circuit often examine the lodestar calculation as a crosscheck on the

percentage fee award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at

1050. The cross-check analysis is a two-step process. First, the lodestar is determined by

multiplying the number of hours reasonably expended by the reasonable rates requested by the

attorneys. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013).

Second, the court cross-checks the proposed percentage fee against the lodestar. *Id.* "Three figures

are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly

rate and (3) a multiplier thought to compensate for various factors (including unusual skill or

experience of counsel, or the *ex ante* risk of nonrecovery in the litigation)." *Id.* (citing *In re HPL*

*Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005)). Here, the lodestar cross-check

confirms the reasonableness of Class Counsel's requested fee.

#### a. Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate

Class Counsel worked very efficiently and without co-counsel. There was no duplication of

effort. Class Counsel's detailed daily billing records, which show what work was done and by

whom confirm Bursor & Fisher's efficient billing in this case. *See* 9/3/21 Klorczyk Decl. Ex. 2.

The blended hourly rate for Bursor & Fisher's work of $572, which is quite reasonable. And the

hourly rates for each of the lawyers who staffed the case, which are set forth in Exhibit 2 of the

Klorczyk Declaration, are also reasonable and amply supported by the evidentiary material

submitted with the Klorczyk Declaration, *id*. Exs. 4-12. *See also id.* ¶ 42-46. These hourly rates

are comparable to rates charged by attorneys with similar experience, skill, and reputation, for

similar services in the California legal market. *See id.* ¶¶ 44-46.[9]  *See, e.g., In re Amgen Inc. Sec.*

---

[9] The Supreme Court and other courts have held that the use of current rates is proper since such
rates compensate for inflation and the loss of use of funds. *See, e.g., Missouri v. Jenkins*, 491 U.S.
274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the
application of current rather than historic hourly rates or otherwise").

*Litig.*, 2016 WL 10571773, at \*9 (C.D. Cal. Oct. 25, 2016) (approving "a billing rate ranging from $750 to $985 per hour for partners, $500 to $800 per hour for 'of counsels'/senior counsel, and $300 to $725 per hour for other attorneys"); *id.* ("The Court has reviewed the attorneys' hourly rates and hours worked, and found them reasonable, given the duration of this litigation and the favorable settlement for the class"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liability Litig.*, No. 10-ml- 02151 NS (FMOx), Dkt. No. 3933 (C.D. Cal. June 24, 2013) (finding that "[c]lass counsel's experience, reputation, and skill, as well as the complexity of the case" justified their rates that ranged from $150 to $950); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2015 U.S. Dist. LEXIS 168586, at \*51-52 (C.D. Cal. Mar. 17, 2015) (finding hourly rates ranging from $335 to $905 "reasonable for complex class action litigation in Los Angeles").

Furthermore, numerous courts have found Bursor & Fisher's rates reasonable. *See* 9/3/21 Klorczyk Decl. ¶¶ 44; *see also, e.g.*, *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at \*20 (N.D. Cal. Apr. 17, 2020) (approving Bursor & Fisher's fee motion and determined that their rates were "within a reasonable range for rates charged in this district for comparable work"); *West California Service Bureau*, Case No. 4:16-cv-03124-YGR, ECF No. 128 (N.D. Cal. Jan. 23, 2019); *Dei Rossi v. Whirlpool*, 2:12-cv-00125-TLN-CKD, ECF Nos. 181-1 and 188 (2017) (approving fee request where Bursor & Fisher submitted hourly rates of up to $875 per hour for partners and $450 per hour for associates); *Zakskorn v. Am. Honda Motor Co.*, 2015 WL 3622990, \*13-15 (E.D. Cal. Jun. 9, 2015) (approving fee request where Bursor & Fisher submitted hourly rates of up to $850 per hour for partners and $450 per hour for associates).

<h4 style="text-align:center">b.   *All Relevant Factors Support Applying A Multiplier To Class Counsel's Lodestar*</h4>

The lodestar analysis is not limited to the initial mathematical calculation of Class Counsel's base fee. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at

364.  Here, a fee award of 29%, or $2,000,000, represents a multiplier of approximately 5.5 over Class Counsel's base lodestar fee of $355,307.50.  9/3/21 Klorczyk Decl. ¶ 39; *see also, e.g.*, *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); *Craft*, 624 F. Supp. 2d at 1125 (approving fee award resulting in a multiplier of 5.2, collecting similar cases); *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *6 (E.D. Cal. May 19, 2017) ("courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher").[10]

In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, novelty and complexity of the litigation, skill and experience of counsel, the results obtained, and awards in similar cases. *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[11]  Class Counsel discussed most of these factors above and all weigh heavily in favor of a multiplier and the requested fee award in this action.  *See* Parts IV(A)(3)(a)-(e), *supra* (discussing the factors justifying an upward adjustment from the 25% benchmark).  In addition to the discussion above, a critical factor bearing on fee petitions in Ninth Circuit courts is the level of risk of non-payment faced by Class Counsel at the inception of the litigation.  *See, e.g., Vizcaino*, 290 F.3d at 1048.  The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are significant.  *In re Wash. Pub. Power Supply*

---

[10] *See, e.g., In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (approving multiplier of 4 in securities class action); *Rabin v. Concord Assets Grp., Inc.*, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) (approving multiplier of 4.4 in securities class action); *Municipal Auth. of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982 (M.D. Pa. 1981) (approving multiplier of 4.5); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to 5); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving multiplier of 5.5); *Bos. & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (approving multiplier of 6); *Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) (approving multiplier of 8.3 in a consumer class action); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (approving multiplier of 8.74); *Perera v. Chiron Corp.*, Civ. No. 95-20725-SW (N.D. Cal. 1999, 2000) (approving multiplier of 9.14; cited in California Class Actions and Coordinated Proceedings §15.05).

[11] Where a court is calculating a fee award based solely on counsel's lodestar, the lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *see also Kerr*, 526 F.2d at 70 (identifying twelve factors courts may consider in analyzing the reasonableness of an attorneys' fee request).

*Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases …. [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (citations and quotations omitted).

Throughout this case, Class Counsel expended substantial time and costs to prosecute a nationwide class action suit with no guarantee of compensation or reimbursement in the hope of prevailing against a sophisticated Defendant represented by high caliber attorneys.  *See* 9/3/21 Klorczyk Decl. ¶ 32.  Class Counsel obtained a highly favorable result for the Class, knowing that if its efforts were ultimately unsuccessful, it would receive no compensation or reimbursement for its costs.  This fact alone supports a finding that Class Counsel is entitled to a multiplier.

## V.     THE REQUESTED INCENTIVE AWARD FOR THE CLASS REPRESENTATIVE IS FAIR AND REASONABLE

In recognition of her efforts on behalf of the Class, and subject to the approval of the Court, Defendant has agreed to pay the Class Representative up to $5,000 as appropriate compensation for her time and effort serving as the class representative in this litigation.  Incentive awards "are fairly typical in class action cases."  *Rodriguez*, 563 F.3d at 958.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Id.* at 958-59.  Incentive awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Incentive awards are appropriate when a class representative will not benefit beyond ordinary class members.  For example, where a class

representative's claim makes up "only a tiny fraction of the common fund," an incentive award is justified. *Id.*, 901 F. Supp. at 299.

The requested amount of $5,000 for the Class Representative, Plaintiff Deborah Jordan, is appropriate to compensate her for her efforts in bringing this action for the benefit of hundreds of thousands of Class Members.  Throughout the litigation, Ms. Jordan held regular meetings with Class Counsel to receive updates on the progress of the case and to discuss strategy.  9/3/21 Klorczyk Decl. ¶¶ 53-55.  She assisted in Class Counsel's pre-suit investigation by discussing her experiences and providing information on her purchase and use of one of Defendant's WaPo Subscriptions, among other matters.  *Id.*  Ms. Jordan also assisted in drafting the Complaint, and she reviewed the Complaint for accuracy before it was filed.  *Id.*  She was also intimately involved in the settlement process, and has continued to keep abreast of settlement progress to date.  *Id.*  Ms. Jordan took significant time away from work and personal activities to initiate and litigate this action, and she was prepared to litigate this case to a verdict if necessary.  *Id.*  Her dedication and efforts have conferred a significant benefit on hundreds of thousands of California purchasers of WaPo Subscriptions.  *Id.*

## VI. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) approve attorneys' fees, costs, and expenses in the amount of $2,000,000; (2) grant Plaintiff an incentive award of $5,000 in recognition of her efforts on behalf of the Class; and (3) award such other and further relief as the Court deems reasonable and just.

Dated: September 3, 2021                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   _____ /s/ Frederick J. Klorczyk III_____

Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com
           jvenditti@bursor.com

*Class Counsel*