**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
        jvenditti@bursor.com

*Class Counsel*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH JORDAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WP COMPANY LLC, d/b/a THE WASHINGTON POST,<br><br>Defendant. | Case No. 3:20-cv-05218-WHO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: November 17, 2021<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 17, 2021, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 2 on the 17th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable William H. Orrick presiding, Plaintiff Deborah Jordan ("Plaintiff"), by and through her undersigned counsel of record, will and hereby does move, pursuant to Fed. R. Civ. P. 23(e), for an order:  (1) granting final approval of the Stipulation of Class Action Settlement and Release (the "Settlement" or "Settlement Agreement") submitted herewith; (2) certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); (3) finding the class notice as implemented satisfies Rule 23 and due process; (4) finally appointing Plaintiff as Class Representative; (5) finally appointing Bursor & Fisher, P.A. as Class Counsel under Rule 23(g); (6) finally appointing JND Legal Administration ("JND") as the Settlement Administrator; and (7) any other relief the Court deems just and proper.

This motion is made on the grounds that final approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.  In support of the Motion, Plaintiff will rely upon the attached Memorandum of Points and Authorities; the Declaration of Frederick J. Klorczyk III (the "11/3 Klorczyk Decl.") filed contemporaneously herewith, and the exhibits attached thereto (including the Settlement Agreement); the Declaration of Jennifer M. Keough, and the exhibits attached thereto; the records, pleadings, and papers filed in this Action; and any other written and oral arguments that may be presented to the Court.  This Motion is unopposed by Defendant and Settlement Class Members.

**PLEASE TAKE FURTHER NOTICE THAT** the undersigned hereby requests oral argument.

* * *

A Proposed Final Approval Order and Judgment is submitted herewith.

## CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should grant final approval to the class action settlement in this case and certify the Settlement Class.

Dated: November 3, 2021                    Respectfully submitted,

                                           **BURSOR & FISHER, P.A.**

                                           By:  _/s/ Frederick J. Klorczyk III_
                                                    Frederick J. Klorczyk III

                                           Frederick J. Klorczyk III (State Bar No. 320783)
                                           888 Seventh Avenue
                                           New York, NY  10019
                                           Telephone: (646) 837-7150
                                           Facsimile: (212) 989-9163
                                           E-Mail: fklorczyk@bursor.com

                                           **BURSOR & FISHER, P.A.**
                                           Neal J. Deckant (State Bar No. 322946)
                                           Julia K. Venditti (State Bar No. 332688)
                                           1990 North California Boulevard, Suite 940
                                           Walnut Creek, CA  94596
                                           Telephone: (925) 300-4455
                                           Facsimile: (925) 407-2700
                                           E-Mail: ndeckant@bursor.com
                                                    jvenditti@bursor.com

                                           *Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND, AND SETTLEMENT
        TERMS ................................................................................................................1

III.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
        APPROPRIATE ...................................................................................................2

IV.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS AND RULE 23 ......4

V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE, AND SHOULD BE APPROVED BY THE COURT ....................7

        A.      Procedural Fairness: The Negotiation Process ..........................................9

        B.      Substantive Fairness: The *Hanlon* Factors .............................................10

                1.      The Strength Of Plaintiff's Case ..................................................10

                2.      The Risk Of Continuing Litigation...............................................11

                3.      The Risk Of Maintaining Class Action Status .............................13

                4.      The Settlement Provides Excellent Relief To The Class..............14

                5.      The Extent Of Discovery..............................................................17

                6.      The Views Of Experienced Counsel Support Granting Final
                        Settlement Approval......................................................................18

                7.      The Response Of Class Members Has Been Overwhelmingly
                        Positive..........................................................................................18

        C.      The Rule 23(e)(2) Factors .......................................................................19

                1.      The Class Representative And Class Counsel Have
                        Adequately Represented The Class ...............................................19

                2.      The Settlement Was Negotiated At Arm's Length........................20

                3.      The Settlement Provides Adequate Relief To The Class .............21

                4.      The Settlement Treats All Class Members Equally ......................24

VI.     CONCLUSION ..................................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ............................................................................. 7

*Alvarez v. Farmers Ins. Exch.*,
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .................................................... 23

*Alvarez v. Sirius XM Radio Inc.*,
   2020 WL 7314793 (C.D. Cal. July 15, 2020) ............................................... 21, 22

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................. 2

*Arreola v. Shamrock Foods Co.*,
   2021 WL 4220630 (C.D. Cal. Sept. 16, 2021) ............................................... 8, 19

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .......................................................... 3, 7, 8, 11

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ............................................................................... 2

*Blandino v. MCM Constr., Inc.*,
   2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) .................................................. 23

*Boyd v. Avanquest N. Am. Inc*,
   2015 WL 4396137 (N.D. Cal. July 17, 2015) ............................................... 20, 24

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .......................................................... 7, 18, 21

*Carlotti v. ASUS Computer Int'l*,
   2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .................................................... 7

*Carter v. XPO Logistics, Inc.*,
   2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ................................................ 8, 17

*Chambers v. Whirlpool Corp.*,
   214 F. Supp. 3d 877 (C.D. Cal. 2016) ................................................................. 3

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................................... 4, 8

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ............................................................................ 9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ........................................................................... 7

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................... 4

*Ferrell v. Buckingham Prop. Mgmt.*,
    2021 WL 488314 (E.D. Cal. Feb. 10, 2021) ...................................................... 7

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................ 10, 20, 22

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ................................................... 23

*Greko v. Diesel U.S.A., Inc.*,
    2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................................................... 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................ 2, 4, 7, 8

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 23

*In re Apple Computer Sec. Litig.*,
    1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ..................................................... 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................................................................. 8

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................... 24

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
    2014 WL 7240144 (N.D. Cal. Dec. 19, 2014) .................................................... 7

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) .......................................................................... 15

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ................................................. 23

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................... 17, 23

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................. 3, 13

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 18

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................... 7, 20, 23

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ............................................................................ 7, 20

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1079 (N.D. Cal. Apr. 12, 2007) ................................................... 24

*Johnson v. Triple Leaf Tea Inc.*,
    2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ......................................................... 14

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................ passim

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................................... passim

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................................ 14

*Linney v. Cellular Alaska P'ship*,
    1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................................... 23

*Miguel-Sanchez v. Mesa Packing, LLC*,
    2021 WL 4893394 (N.D. Cal. Oct. 20, 2021) ......................................................... 11

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................................. 4

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 11, 14, 19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .................................................................... 4, 8, 10, 14

*Pena v. Taylor Farms Pac., Inc.*,
    2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ............................................................ 8

*Perks v. Activehours, Inc.*,
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ................................................... 20, 24

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .......................................................................... passim

*Ross v. Trex Co., Inc.*,
    2013 WL 6622919 (N.D. Cal. 2013) ........................................................................ 9

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) .................................................................. 5, 6

*State of California v. eBay, Inc.*,
   2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ................................................ 25

*Torchia v. W.W. Grainger, Inc.*,
   304 F.R.D. 256 (E.D. Cal. 2014) ................................................................... 19

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ................................................................... 23

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............................................... 21

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................. 22, 23

*Wellens v. Sankyo*,
   2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ................................................ 23

*Young v. Polo Retail, LLC*,
   2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .................................................... 9

**RULES**

Fed. R. Civ. P. 8 ................................................................................................. 12

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 12

Fed. R. Civ. P. 23 ........................................................................................ passim

**OTHER AUTHORITIES**

4 Newberg on Class Actions § 11:53 (4th ed. 2013) ........................................... 5

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) ................... 7

Federal Judicial Center, Manual for Complex Litigation § 21.62 (4th ed. 2004) ........................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

On July 8, 2021, this Court preliminarily approved the Class Action Settlement between Plaintiff Deborah Jordan ("Plaintiff") and Defendant Washington Post ("Defendant" or "WaPo"), and directed that notice shall be sent to the Settlement Class.  *See* Order Granting Preliminary Approval of Class Action Settlement, ECF No. 50.  The settlement administrator, JND Legal Administration ("JND"), has implemented the Court-approved notice plan, and notice has reached more than 96% of the certified Settlement Class.  The reaction from the Class has been overwhelmingly positive.  Specifically, of the approximately 320,000[1] Settlement Class Members, there were only 12 requests for exclusion, and **no** objections.[2]  The lack of any objection demonstrates that the Settlement has the support and approval of the Class.[3]

The Settlement was reached after months of settlement negotiations, including two private mediation sessions with Jill R. Sperber, Esq., an experienced neutral affiliated with Judicate West. The Settlement consists of cash and non-cash benefits and has a total value of approximately $6,736,690.  Under the terms of the Settlement, WaPo will automatically provide over $4,336,690 worth of access codes (the "Automatic Account Credit Codes") for WaPo offers to Class Members who did nothing during the claims process (*i.e.*, did not opt for a cash claim), and will also establish a non-reversionary cash Settlement Fund in the amount of $2,400,000, which will be used to pay all approved cash claims[4], notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to the extent awarded by the Court.  In all, this is an excellent deal.  The Court should have no hesitation in granting final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND, AND SETTLEMENT TERMS

The factual and procedural background of this matter, including the key terms of the

---

[1] The number of class members was initially estimated as approximately 321,671 persons. Defendant provided JND with spreadsheets containing subscriber contact information and other identifying data that resulted in a list containing 319,395 members of the Settlement Class.  *See* Declaration of Jennifer M. Keough Regarding Settlement Administration ("Keough Decl.") ¶ 6.

[2] The deadline to object or opt-out of the Settlement was September 19, 2021.  *See* Order Granting Preliminary Approval (ECF No. 50) ¶¶ 14, 20.

[3] *See, e.g.*, *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) (Orrick, J.); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *Arreola v. Shamrock Foods Co.*, 021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021).

[4] As of the Claims Deadline, 10,804 Class Members filed valid cash claims.  Keough Decl. ¶ 24.

Settlement Agreement, are discussed at pages 2-4 and 6-10 of Plaintiff's motion for preliminary

approval, *see* ECF No. 46; *see also* 9/3 Klorczyk Declaration (ECF No. 52-1) ¶¶ 4-38.  *See also* ¶¶

3-17 of the Declaration of Frederick J. Klorczyk III in Support of Plaintiff's Motion for Final

Approval of Class Action Settlement ("11/3 Klorczyk Decl."), filed contemporaneously herewith.

## III.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer

lawsuits is a common occurrence.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

When presented with a proposed settlement, a court must first determine whether the proposed

settlement class satisfies the requirements for class certification under Federal Rule of Civil

Procedure 23.  Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a)

are met, as well as one of the prongs of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 620 (1997).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members

is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P.

23(a).  Rule 23(b)(3) requires the Court to find that:

> [Q]uestions of law or fact common to class members predominate
> over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and
> efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  The Ninth Circuit "has directed that [Rule 23] be liberally construed to

effectuate its remedial purposes," and courts are to adopt a standard of flexibility in evaluating

class certification.  *Blackie v. Barrack*, 524 F.2d 891, 906 n.22 (9th Cir. 1975); *see also id*. at 904

n.19 ("[Avoidance of duplicative proceedings] is a major purpose of a class action; the 'common

question' requirement should be interpreted to obtain that objective. … The common question

requirement should not be restrictively interpreted … as to do so would eliminate the class action

deterrent for those who engage in [unlawful schemes].").  Additionally, in assessing whether the

class certification requirements of Rule 23 have been satisfied, a court may properly consider that

there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted

with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Here, the Court's Preliminary Approval Order provisionally certified a Class for settlement purposes of defined as: "[a]ll persons who, from July 29, 2016, to and through April 1, 2021, enrolled in any of Defendant's digital subscription offerings using a California billing address and who, during that time period, were charged and paid one or more automatic renewal fee(s) in connection with such subscription" (the "Settlement Class").  ECF No. 50 ¶ 6.  The Court found that "the Settlement Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure[.]"  *Id*. at ¶ 7.  Notably, no substantive changes have occurred since that finding, and, more importantly, no objections have challenged that conclusion.  The Court may therefore rely on the same rationale as explained in the preliminary approval order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and (b) in connection with final approval.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) ("Because the Objections do not appear to raise a viable challenge to th[e] conclusion [that certification of a settlement class is appropriate], the Court will rely on the rationale for class certification as explained in the Preliminary Approval Order.").

Accordingly, the Court's previous finding should be made final here.  *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) ("Because circumstances have not changed, and for the reasons set forth in its Order of November 12, 2015, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).") (citation omitted); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal. 2015) ("In the Court's Order granting preliminary approval of the settlement, the Court found that the putative class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The Court is unaware of any changes that would alter its analysis, and the parties did not indicate either in their papers or at the fairness hearing that any such developments had occurred.  Thus, the

Court concludes that all four of Rule 23(a)'s requirements have been met.") (citations omitted).[5]

## IV.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS AND RULE 23

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Such notice to class members must be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal[.]"); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 6245 (9th Cir. 1982) (citation omitted) ("The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), *cert. denied*, 543 U.S. 818 (2004); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (same). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* (citation omitted). "The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out

---

[5] Plaintiff incorporates by reference her prior arguments regarding certification of the Settlement Class, as set forth in the Motion for Preliminary Approval, rather than repeating them here. *See* ECF No. 46 at 23-28.

and pursue their own remedies, or object to its terms." *Id.* "[N]otice is adequate if it may be understood by the average class member." 4 Newberg on Class Actions § 11:53, at 167 (4th ed. 2013); *see also Rodriguez*, 563 F.3d at 962 ("Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]"). Ultimately, "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (citation omitted). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010). As discussed below, the notice plan implemented in this case easily meets this standard of reasonableness. *See* Keough Decl. ¶ 13 (direct notice provided to "96.9% of total Settlement Class Members").

First, the Court approved the Parties' proposed Notice Plan in its July 8, 2021 Order granting preliminary approval. *See* ECF No. 50 ¶¶ 9-11. After an evaluation of the terms of these notices and the plan for their distribution, the Court found that the notice plan met the requirements of Rule 23 and due process. *See id.* ¶ 9 ("The Court approves, as to form, content, and distribution, the Notice Plan set forth in the Settlement Agreement … and finds that such Notice is reasonable and the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure."). The Settlement Administrator, JND, then implemented the notice plan precisely as set out in the Settlement Agreement and as ordered by the Court. *See* Keough Decl. ¶ 2.

The notice plan has now been fully carried out, and it was a resounding success on every level. Pursuant to the Settlement, Defendant provided JND with a list containing the names, email and/or mailing addresses, and status of a total of 319,395 potential Settlement Class Members. *See id.* ¶ 6. Initially, JND sent the notice by email and U.S. mail to all class members identified by Defendant. Specifically, on August 5, 2021, JND emailed 314,265 notices to Settlement Class Members, of which 5,694 emails bounced back as undeliverable, and it also mailed notices via USPS regular mail to 2 Settlement Class Members. *Id.* ¶¶ 8-10. JND then sent another 799 notices

by USPS regular mail, including to Class Members' addresses associated with 797 of the 5,694 undeliverable emails. *Id.* ¶ 11. JND also developed and hosted a dedicated settlement website (www.canewspaperrenewalsettlement.com) that provided detailed information about the settlement, provided downloadable claim and exclusion forms and online claim submission capabilities, and clearly set forth the deadlines for Class Members to act, and it further set up a toll-free hotline that Class Members could call if they had questions about the settlement, along with an email address and postal mailing address.[6] *Id.* ¶¶ 15-18. *Id.*

As a result of these efforts, JND successfully disseminated the Court-approved notices via email and/or postal mail to 309,358 of the 319,395 Settlement Class Members. *Id.* ¶ 13. Accordingly, the Court-approved notices successfully reached 96.9% of the Settlement Class directly.[7] *Id.* This comprehensive reach easily satisfies the standard of reasonableness against which its adequacy must be measured. *See Spann*, 314 F.R.D. at 330; Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010) (noting that a notice plan is reasonable if it reaches at least 70% of the class). Moreover, out of the hundreds of thousands of Settlement Class Members, only 12 Class Members have requested to be excluded from the Class, and **no** Class Members have objected to the Settlement. *See* Keough Decl. ¶¶ 20, 22. Therefore, the notice plan was a resounding success.

Given the broad reach of the notices and the comprehensive information such notices provided to Class Members, the requirements of due process and Rule 23 are easily met. *See, e.g.*, *Rodriguez*, 563 F.3d at 962 ("The Notice advises class members that a majority (hence, not all) of the class representatives approve the settlement. It describes the aggregate amount of the settlement fund and the plan for allocation, thereby complying with what we require.").

---

[6] Moreover, in addition to distribution of the Court-approved notices, on September 14, 2021, at the Parties' direction, JND sent a follow-up e-mail to 314,264 Class Members who had not yet submitted a request for a cash claim, reminding them of the upcoming Claims Deadline and containing a link to the Settlement Website's online claim form (the "Reminder E-mail Notice"), to ensure that any Class Member who wanted to submit a cash claim had plenty of opportunity to do so. *See* Keough Decl. ¶ 14.

[7] JND also notified the appropriate state and federal officials pursuant to CAFA. *See* Keough Decl. ¶¶ 3-5.

1

**V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED BY THE COURT**

2

Final approval of the Settlement is appropriate here because it is procedurally and

3

substantively fair, adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).

4

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement]

5

only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P.

6

23(e)(2); *see also Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19,

7

2019).  To determine whether to approve a settlement, courts examine procedural and substantive

8

fairness in light of the "strong judicial policy" in favor of settlement of class action suits.  *Boyd v.*

9

*Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979) (Orrick, J.) ("[T]he court should remain

10

cognizant of the overriding public interest in settling large class actions[.]"); *Ferrell v. Buckingham*

11

*Prop. Mgmt.*, 2021 WL 488314, at *3 (E.D. Cal. Feb. 10, 2021) (slip op.) ("The Ninth Circuit has

12

repeatedly affirmed that a strong judicial policy favors settlement of class actions.") (citing *Allen v.*

13

*Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D.

14

245, 252 (N.D. Cal. 2015) ("Judicial policy strongly favors settlement of class actions.").[8]  This is

15

particularly true in complex litigation where substantial resources can be conserved by avoiding the

16

time, cost, and rigor of prolonged litigation.  *See Ferrell*, 2021 WL 488314, at *3.  Fairness is

17

determined upon review of both the terms of the settlement agreement (substantive fairness) and

18

the negotiating process that led to such agreement (procedural fairness).  *See, e.g.*, *In re Pac.*

19

*Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

20

1027 (9th Cir. 1998).

21

In terms of procedural fairness, a presumption of fairness, adequacy, and reasonableness

22

attaches to a class action settlement reached in arm's-length negotiations between experienced,

23

capable counsel after meaningful discovery.  *See In re Pac.*, 47 F.3d at 378; *Carlotti v. ASUS*

24

*Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are

25

---

26

[8] *See also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (acknowledging the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Hewlett-*

27

*Packard Co. S'holder Derivative Litig.*, 2014 WL 7240144, at *4 (N.D. Cal. Dec. 19, 2014); Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.41 (4th ed. 2002) ("The

28

compromise of complex litigation is encouraged by the courts and favored by public policy.").

presumed fair when they are reached 'following sufficient discovery and genuine arms-length

negotiation.'") (citations omitted).  As the Ninth Circuit has recognized, although the Court has

discretion regarding the approval of a proposed settlement, it should give "proper deference to the

private consensual decision of the parties."  *Hanlon*, 150 F.3d at 1027.  "[T]he court's intrusion

upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit

must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Knapp v. Art.com,*

*Inc.*, 283 F. Supp. 3d 823, 830 (N.D. Cal. 2017) (Orrick, J.) (quoting *Officers for Justice*, 688 F.2d

at 625); *see also id.* ("[I]t must not be overlooked that voluntary conciliation and settlement are the

preferred means of dispute resolution.  This is especially true in complex class action litigation.")

(internal quotation marks omitted); accord Fed. R. Civ. P. 23(e)(2) (settlement must be "fair,

reasonable, and adequate").

Courts must also consider whether a proposed settlement is substantively fair.  In making

this determination, the Ninth Circuit has instructed district courts to balance several factors (the

"*Hanlon* factors"):  (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and

likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the

trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage

of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a

governmental participant;" and (8) "the reaction of the class members of the proposed settlement."

*Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir.

2004) (same); *Pena v. Taylor Farms Pac., Inc.*, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021)

(same); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019) (Orrick,

J.) (same).  "The court need not consider all of these factors, or may consider others."

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015); *see also In re*

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("The factors in a court's

fairness assessment will naturally vary from case to case."); *Arreola v. Shamrock Foods Co.*, 2021

WL 4220630, at *4 (C.D. Cal. Sept. 16, 2021) ("Each factor does not necessarily apply to every class action settlement, and other factors may be considered.").

In addition to these factors, when a settlement agreement is negotiated prior to formal class certification, courts should also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).  There is significant overlap between the Rule 23(e)(2) and *Hanlon* factors, which complement, rather than displace each other.

A.    **Procedural Fairness: The Negotiation Process**

In this case, there is no question that the Settlement was arrived at through genuine arm's length bargaining after a developed factual record that allowed the parties to have a "clear view of the strengths and weaknesses of their case[]."  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citations omitted).  Accordingly, it is entitled to a presumption of reasonableness.  *Ross v. Trex Co., Inc.*, 2013 WL 6622919, at *3 (N.D. Cal. 2013) ("[T]here is no fraud or collusion underlying this Settlement, and it was reached after good faith, arms'-length negotiations, warranting a presumption in favor of approval.") (citation omitted); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution[.]").

As is discussed further below, the circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair.  Here, the Settlement was reached after months of

negotiation and two mediation sessions before a well-respected mediator affiliated with Judicate West, Jill Sperber, and the Parties continued negotiations over the next several weeks following the second mediation.  *See* 11/3 Klorczyk Decl. ¶¶ 11-14.  Additionally, the Parties had engaged in informal written discovery prior to mediation.  *See* 9/3 Klorczyk Decl. ¶ 16.  Moreover, the negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients.  *See* 11/3 Klorczyk Decl. ¶¶ 24-30.  In such situations, the Ninth Circuit adopts a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement is reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.  *See Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (noting that the court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery") (citation omitted).  Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.  *Id.*

Thus, as the Court found at preliminary approval, "the Settlement Agreement … is the result of arm's-length negotiations between the parties and experienced counsel[.]"  Order Granting Preliminary Approval (ECF No. 50) ¶ 4.  The Settlement is therefore entitled to a presumption of reasonableness.

## B. Substantive Fairness: The *Hanlon* Factors

### 1. The Strength Of Plaintiff's Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotation marks omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories,

and defenses on both sides before engaging in arms-length negotiations with Defendant's counsel. *See* 9/3 Klorczyk Decl. ¶¶ 16-20.  Although Plaintiff and Class Counsel had confidence in their claims, they recognize that a favorable outcome was not assured and that they would face risks at class certification, summary judgment, and trial.  *See* 11/3 Klorczyk Decl. ¶¶ 19-21.  Defendant vigorously denies Plaintiff's allegations and asserts that neither Plaintiff nor the Class suffered any harm or damages.  In addition, Defendant would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks.  In other words, "[a]lthough the class members (or some of them) arguably might have received more if they had proceeded to trial and prevailed on the merits of their case, they also faced a risk that the resulting recovery would be smaller than what is currently expected."  *Miguel-Sanchez v. Mesa Packing, LLC*, 2021 WL 4893394, at *6 (N.D. Cal. Oct. 20, 2021).  The Settlement abrogates these risks to Plaintiff and the Class.  *See Rodriguez*, 563 F.3d at 965–66 ("[O]ne factor 'that may bear on review of a settlement'" is "the advantages of the proposed settlement versus the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]'") (citing Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004)).  "Further, the benefit of receiving an award in the immediate future has its own value." *Miguel-Sanchez*, 2021 WL 4893394, at *6 (citing *Bellinghausen*, 306 F.R.D. at 255).  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

### 2.    The Risk Of Continuing Litigation

Next, approval of the proposed settlement is appropriate given the risks associated with continued litigation.  By reaching a favorable settlement now, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class.  "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (Orrick, J.) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D.

523, 526 (C.D. Cal. 2004)) (internal quotation marks omitted).  "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal."  *Id.* (citing *Rodriguez*, 563 F.3d at 966).

Here, the Parties engaged in informal written discovery prior to mediation.  9/3 Klorczyk Decl. ¶ 16.  The next steps in the litigation would have been for Plaintiff to oppose Defendant's Motion to Dismiss and resolution of the Motion by the Court, the start of discovery, including Party depositions, substantial document discovery, and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.  *See* Settlement ¶¶ J-K.  For example, Plaintiff is aware that Defendant would continue to assert defenses on the merits, including that Plaintiff's allegations are insufficient under Fed. R. Civ. P. 8 and 12(b)(6) because, according to Defendant, it provided all of the requisite pre-purchase disclosures under the applicable statutes and laws at issue, presented them in a clear and conspicuous manner, and obtained Plaintiff's affirmative consent to the automatically renewing subscription, and any alleged omissions in the post-purchase subscription acknowledgment sent to Plaintiff do not rise to the level of fraud or negligent misrepresentation. Defendant would also challenge Plaintiff's standing under California's consumer protection statutes, including Plaintiff's ability to show that Defendant's conduct caused Plaintiff economic injury.  Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, including because Defendant would contend that Plaintiff is not entitled to bring at least some of her claims on a class-wide basis and that Plaintiff cannot present a workable damages model.  Plaintiff and Class Counsel further understand that Defendant would prepare a competent defense at trial.  Even assuming that Plaintiff were to survive summary judgment, she would likely face the risk of establishing liability at trial as a result of conflicting expert testimony between her own expert witnesses and Defendant's expert witnesses.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.  Additionally,

looking beyond trial, WaPo could appeal the merits of any adverse decision.  Even if Plaintiff were to prevail at every stage of this litigation, there remains a substantial likelihood that Class Members would not be awarded significantly more than (or even as much as) is offered to them under this Settlement.  *See, e.g.*, *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs awarding over $100 million in damages, entering judgment in favor of individual defendants, and ordering new trial for corporate defendant).

In sum, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery."  *Larsen*, 2014 WL 3404531, at *4 (Orrick, J.).  The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty.  "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement."  *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### 3.    The Risk Of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiff would also face risks in certifying a class and maintaining class status through trial.  The Court has not yet certified the proposed Class for merits purposes, and the Parties anticipate that such a determination would be reached only after decision on Defendant's Motion to Dismiss, after discovery is completed, and after exhaustive class certification briefing is filed.  Moreover, even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  From their prior experience, Class Counsel anticipates that, should the Court certify the class, Defendant may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.   Risk, expense, and delay permeate such a process.  "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that

is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at \*4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks, expenses, and delay.

### 4. The Settlement Provides Excellent Relief To The Class

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp*, 283 F. Supp. 3d at 832 (Orrick, J.) (citing *Rodriguez*, 563 F.3d at 965). Instead, the Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* In assessing the consideration available to Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).[9]

In this case, the total value of the proposed Settlement is $6,736,690, consisting of cash and in-kind relief. *See* Plaintiff's Notice of Motion and Motion for an Award of Attorneys' Fees, Costs, and Expenses ("Fee Petition") (ECF No. 52), at 9; *see also* Settlement ¶ 1.49.

---

[9] In Plaintiff's operative complaint, the damages sought are alleged to be the full amount of renewal charges charged to California Class Members' payment methods during the Class Period. *See* FAC ¶¶ 3-4. The proposed Settlement Class includes 319,395 California consumers who enrolled in and were charged renewal fees in connection with the WaPo Subscriptions during the Class Period. *See* Keough Decl. ¶ 6. The amount charged to each Class Member per renewal period varied by the type of subscription—$10.00 per month for Basic Four-Week WaPo Subscribers, $15.00 per month for Premium Four-Week WaPo Subscribers, $100 per month for Basic Annual WaPo Subscribers, and $150 per month for Premium Annual WaPo Subscribers. *See* https://subscribe.washingtonpost.com/checkout. Assuming WaPo's subscriber base is evenly split between Basic Four-Week, Premium Four-Week, Basic Annual, and Premium Annual WaPo Subscribers, and that each Class Member's WaPo Subscription was automatically renewed once during the Class Period at the full standard rate associated with the Class Members' WaPo Subscriptions, Defendant's total exposure would be approximately $22,114,884.25. If each Class Member's WaPo Subscription renewed multiple times, the estimated total exposure would be far greater. However, Plaintiff's and Class Members' entitlement to relief in that amount is highly uncertain for the reasons discussed above. *See supra.*

Settlement Class Members who neither submitted a valid Claim Form nor opted-out of the settlement will be automatically provided with an Automatic Account Credit Code for up to eight (8) weeks of free subscription services.  *See* Settlement ¶¶ 2.2(a)(1), (b)(1), (c)(1), (d)(1), (e). Specifically, Annual Class Members who did nothing during the claims period will receive an Automatic Account Credit Code for up to eight (8) weeks of free WaPo Subscription services (valued at $20), *see id.* ¶¶ 2.2(a)(1), (c)(1), and Four-Week Class Members who did nothing will receive an Automatic Account Credit Code for up to four (4) weeks of free WaPo Subscription services (valued at $10), *see id.* ¶¶ 2.2(b)(1), (d)(1).  <u>In all cases, the Codes will **never** expire and they may be freely transferred</u>.  *See* Settlement ¶¶ 1.8, 2.2(e).  The Automatic Account Credit Codes therefore provide Class Members with a real and substantial dollar value.  *See Knapp*, 283 F. Supp. 3d at 833 (Orrick, J.) ("[C]lass members who choose to use their voucher have the opportunity to realize a $10 value."); *cf. In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013) (noting that in-kind relief "is likely to provide less value to class members if[ the non-monetary benefits] … are non-transferable, expire soon after their issuance, and cannot be aggregated").

Alternatively, in lieu of the Automatic Account Credit Codes, Settlement Class Members that submitted a valid and timely Claim Form to the Settlement Administrator will receive a *pro rata* cash payment from the $2,400,000 non-reversionary[10] Settlement Fund, which JND estimates will be approximately $36.72 per Annual Class Member and $18.36 per Four-Week Class Member, based on the ultimate claims rate.[11]  *See* Keough Decl. ¶ 24.  In any case, the overwhelming majority of Class Members have opted to receive an Automatic Account Credit Code rather than the cash award.  Of the 319,395 Settlement Class Members, 10,804[12] have opted for the cash award.  *See id.* ¶¶ 24.  Those 10,804 Settlement Class Members will receive a cash award in lieu of

---

[10] As *cy pres*, funds for checks not cashed within 180 days of issuance shall revert to the Legal Aid Association of California, a 501(c)(3) entity, or, if it is unable to receive these funds, another California-based, non-sectarian, not-for-profit organization(s) with a similar mission recommended by Class Counsel and Defendant, and approved by the Court.  *See* Settlement ¶¶ 2.2(i), 5.8.

[11] These estimates assume that "all claims are valid, and that the requested attorneys' fees and costs, administration costs, and incentive awards are approved by the Court[.]"  Keough Decl. ¶ 24.

[12] This figure excludes "four (4) untimely claims postmarked after the filing deadline[.]"  *Id.*

any Automatic Account Credit Code.  Thus, notwithstanding the fact that JND, at the Parties'

direction, supplemented the court-approved notices by sending out the Reminder E-mail Notice,

*see supra* at 6 n.6, only 3.38% of the Settlement Class opted for cash in lieu of the Automatic

Account Credit Codes.

In addition, Defendant has agreed to provide injunctive relief, and to pay the costs of notice,

administration, and reasonable attorneys' fees and costs for Class Counsel from the all-in fund

established by the Settlement.  Settlement ¶ 2.3; *see also Knapp*, 283 F. Supp. 3d at 833 ("The

Settlement Agreement also provides for injunctive relief, so class members that choose to continue

doing business with Art.com will benefit from this aspect as well.").

Moreover, in judging the adequacy of this Settlement, it is appropriate to compare the relief

offered here to settlements in other ARL matters.  Viewed in this light, the relief offered under this

Settlement plainly meets or exceeds settlements in other ARL matters.  Indeed, the $6,736,690

settlement value and individual relief per Class Member are outstanding in comparison to other,

larger ARL cases.  For example, on September 13, 2021, the Southern District of New York

granted final approval to a similar class-wide settlement under California's ARL in *Moses v. The*

*New York Times Company*, No. 1:20-cv-04658-RA (S.D.N.Y.).  *See* 11/3 Klorczyk Decl. ¶ 26; *see*

*also id.* Ex. 3, Plaintiff's Motion for Final Approval of Class Action Settlement in *Moses v. The*

*New York Times Company*, No. 1:20-cv-04658-RA (S.D.N.Y.) (ECF No. 53) ("*Moses* Final

Approval Brief"); *id.* Ex. 4, Plaintiff's Reply in Support of Motion for Final Attorneys' Fees in

*Moses v. The New York Times Company*, No. 1:20-cv-04658-RA (S.D.N.Y.) (ECF No. 54)

("*Moses* Fee Reply"); *id.* Ex. 5, Order Granting Final Approval in *Moses v. The New York Times*

*Company*, No. 1:20-cv-04658-RA (S.D.N.Y.) (ECF No. 60) ("*Moses* Final Approval Order"); *id.*

Ex 6, Final Approval Hearing Transcript in *Moses v. The New York Times Company*, No. 1:20-cv-

04658-RA (S.D.N.Y.) (ECF No. 61) ("*Moses* Final Approval Hearing Tr.").  Under the terms of

the *Moses* settlement, the defendant agreed to "automatically provide over $3,900,000 worth of

access codes … to Class Members who did nothing during the claims process" and to "establish a

non-reversionary cash Settlement Fund in the amount of $1,650,000, which will be used to pay all

approved cash claims" by class members.  Klorczyk Decl. ¶ 26; *id.* Ex. 3, *Moses* Final Approval

Brief at 1.  Thus, the total value of the *Moses* settlement was approximately $5,563,000, with a class of 876,606 California subscribers.  *Id.*  By comparison, the proposed Settlement here distributes <u>more cash</u> and <u>more credits</u> to <u>fewer persons</u> than the *Moses* settlement.  *Compare id. with supra* at 1, 5 (noting that "[t]he Settlement … has a total value of approximately $6,736,690[,]" including "over $4,336,690 worth of access codes … [and] a non-reversionary cash Settlement Fund in the amount of $2,400,000[,]" which will be distributed to "a total of 319,395 [] Settlement Class Members").  Thus, if the *Moses* settlement can be said to "provide[] substantial relief to the Settlement Class[,]" – and it has been, *see* 11/3 Klorczyk Decl. Ex. 5, *Moses* Final Approval Order ¶ 3 – then the proposed Settlement here, which provides more value to class members, certainly does so as well.

Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.  *See Carter*, 2019 WL 5295125, at *3 (Orrick, J.) ("The amount of the settlement is fair, adequate and reasonable given the risks of continued litigation.").

### 5. <u>The Extent Of Discovery</u>

Under this factor, courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Plaintiff, by and through her counsel, has conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation, through: (i) review of documents produced by Defendant through informal discovery; (ii) the review of other publicly available reports and tests concerning the WaPo Subscriptions; and (iii) review of publicly available information regarding Defendant, its business practices, and prior litigation involving it.  *See* 11/3 Klorczyk Decl. ¶ 12.  The parties also held numerous telephonic and written discussions regarding Plaintiff's allegations, discovery, and the prospects of settlement, as well as two mediation sessions with Jill Sperber of Judicate West.  *Id.* ¶¶ 6, 10-13.  Thus, the proposed Settlement is the result of fully informed negotiations.

### 6. The Views Of Experienced Counsel Support Granting Final Settlement Approval

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.* [hereinafter *Betchel Corp.*], 485 F. Supp. 610, 622 (N.D. Cal. 1979) (Orrick, J.); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Betchel Corp.*, 485 F. Supp. at 622; *see also Rodriguez*, 563 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Klorczyk Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A. Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### 7. The Response Of Class Members Has Been Overwhelmingly Positive

The objection and opt-out deadlines lapsed on September 19, 2021. By that date, not a single Class Member objected to the Settlement, and only 12 Class Members opted out (*i.e.*, 0.00376% of Class Members). *See* Keough Decl. ¶¶ 19-22. Such an overwhelmingly positive response from Class Members strongly supports final approval. *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) (Orrick, J.) ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.' A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it. … [T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming district court's finding that 54 objections out of 376,301 putative class members reflected a favorable reaction); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014); *In re Omnivision Techs.*,

*Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("[T]he absence of a large number of objections to a proposed class action settlement raises a *strong presumption* that the terms of a proposed class settlement action are favorable to the class members.") (emphasis added and citation omitted); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 270 (E.D. Cal. 2014) ("Significantly, no objections were filed by Class Members following service of the Class Notice Packet. … Therefore, this factor weighs in favor of the Settlement.") (internal citation omitted); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.  It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Arreola v. Shamrock Foods Co.*, 2021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021) ("[N]one [of the settlement class members] objected or opted out.  A low proportion of opts outs and objections 'indicates that the class generally approves of the settlement.'  Therefore, this factor weighs in favor of final approval.") (citations omitted).

### C.    The Rule 23(e)(2) Factors

#### 1.    The Class Representative And Class Counsel Have Adequately Represented The Class

As is discussed further below, Plaintiff's interests here are aligned with other class members' interests because she claims she suffered the same injuries:  paying a fee to Defendant due to its automatic renewal scheme.  Because Plaintiff and the Class suffered these alleged injuries as a result of Defendant's common course of conduct, Plaintiff has an interest in vigorously pursuing the claims of the class.  Further, as is briefly mentioned above and elaborated upon below, numerous other courts in this Circuit have previously found that Plaintiff's attorneys adequately meet the obligations and responsibilities of Class Counsel.  *See* 11/3 Klorczyk Decl. ¶ 27; *see also id*. Ex. 2, Firm Resume of Bursor & Fisher, P.A; *id*. Ex. 6, *Moses* Final Approval Hearing Tr. at 11 (noting that the settlement "was reached in arm's-length negotiation between experienced, capable counsel"); *Williams v. Facebook, Inc.*, No. 3:18-cv-01881, ECF No. 51 (N.D. Cal June 26, 2018) ("[The] Bursor firm … ha[s] extensive experience in handling class actions and complex litigation,

including products liability and consumer protection cases; appear[s] to have knowledge of applicable law; and ha[s] extensive resources.") (appointing Bursor & Fisher class counsel to represent a putative nationwide class of all persons who installed Facebook Messenger applications and granted Facebook permission to access their contact list).

### 2.    The Settlement Was Negotiated At Arm's Length

In evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations.  When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378; *Garner*, 2010 WL 1687832, at *9.  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate.  *See In re Syncor*, 516 F.3d at 1100.

Here, counsel for both Plaintiff and Defendant are experienced in class action litigation, engaged in protracted settlement discussions, and reached this settlement with the assistance of an experienced neutral.  11/3 Klorczyk Decl. ¶¶ 11-13, 19.  In other words, the negotiations were conducted at arm's length, non-collusive, well-informed (in that they were conducted after an assessment of the strengths and weaknesses of the claims on both sides), conducted between counsel on both sides with significant class action experience, and utilized at the appropriate time the assistance of a well-respected mediator.  Under such circumstances, the proposed Settlement is entitled to a presumption of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments.  *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("[T]he Court found that Class Counsel have substantial experience in litigating and settling consumer class actions.  Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case.  …  The Settlement was also the product of arm's-length negotiations through mediation sessions and follow-up communications supervised by [an experienced neutral].  There is no indication of any collusion between the parties."); *Boyd v. Avanquest N. Am. Inc* [hereinafter *Avanquest*], 2015 WL 4396137, at *3 (N.D. Cal. July 17, 2015)

1   (Orrick, J.) ("[U]se of mediator 'tends to support the conclusion that the settlement process was not

2   collusive.'") (quoting *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal.

3   Nov. 21, 2012)); *Bechtel Corp.*, 485 F. Supp. at 622-25 (Orrick, J.).  Accordingly, the second Rule

4   23(e)(2) factor has been met.

### 3.   The Settlement Provides Adequate Relief To The Class

6          Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and

7   appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

8   the method of processing class-member claims, if required; (iii) the terms of any proposed award of

9   attorney's fees, including timing of payment; and (iv) any agreement required to be identified

10  under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).  These factors subsume several *Hanlon* factors

11  including: "the risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor

12  2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the

13  amount offered in settlement" (*Hanlon* Factor 4).  As noted above, the Settlement has met each of

14  the *Hanlon* factors.  *Supra* §§ V.A(1)-(5).  As to "any agreement required to be identified by Rule

15  23(e)(3)[,]" no such agreement exists in this case other than the Settlement.

16         As to "the effectiveness of any proposed method of distributing relief to the class," it is

17  "important for the court to scrutinize the method of claims processing to ensure that it facilitates

18  filing legitimate claims."  *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal.

19  July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes).  "A claims

20  processing method should deter or defeat unjustified claims, but the court should be alert to

21  whether the claims process is unduly demanding."  *Id.*  Here, under the terms of the Settlement,

22  Settlement Class Members will receive Automatic Account Credit Codes for up to eight (8) weeks'

23  free access to WaPo Subscriptions services, without having to file any claim.  Settlement ¶ 2.2.

24  Alternatively, Settlement Class Members can submit a claim form and, if approved, receive a *pro*

25  *rata* payment from the Settlement Fund.  *Id.* ¶ 2.2(f).  The claims process is only required for

26  Settlement Class Members who opt to elect cash and it "requires logging on to the Settlement

27  Website and submitting a Claim there, or a Settlement Class Member may print the Claim form

28  from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer."

*Alvarez*, 2020 WL 7314793, at \*6.  The Court should find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective."  *Id.*

Next, as to "the terms of any proposed award of attorney's fees," Class Counsel will apply for attorneys' fees, costs, and expenses "not to exceed $2,000,000," which constitutes approximately 29 percent of the Settlement Value.  Settlement ¶ 8.1.  The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiff and the Class.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, Proposed Class Counsel has easily satisfied each factor.

First, with respect to the results achieved, Class Counsel's efforts have secured a settlement consisting of a mix of monetary and in-kind relief, with a total value of $6,736,690.  As discussed in detail above, this is an excellent result.  *See supra* § V.A(4).

Second, Plaintiff has established that there are significant risks in entering a protracted litigation.  *See supra* §§ V.A(2)-(3).  Thus, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at \*4.  "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal."  *Id.* (citing *Rodriguez*, 563 F.3d at 966).  "Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources."  *Id.* (citing *Garner*, 2010 WL 1687832, at \*10).  "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement."  *Id.* (citing *Rodriguez*, 563 F.3d at 964).

Third, as noted above, *see supra* § IV.E, Class Counsel's time and efforts in this litigation have generated benefits beyond the Class settlement fund.  *See also* Settlement ¶ 2.3.

Fourth, Plaintiff's counsel's requested fee is consistent with market rates as reflected by awards made in similar cases.  Indeed, courts in this Circuit routinely approve fee requests for up to

one-third of a common fund. *See, e.g., Blandino v. MCM Constr., Inc.*, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (Orrick, J.) (awarding 33% of settlement fund in attorneys' fees); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (Orrick, J.) (awarding 33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 460 (9th Cir. 2000) (affirming 33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming 33.3% fee award) ("The $2,000,000 requested by class counsel amounts to one-third of this common fund. … Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class.") (citations omitted); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379 (affirming 33% fee award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding fee of 32.8%); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687829, at *1 (N.D. Cal. Apr. 22, 2010) ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases."); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee award); *Larsen*, 2014 WL 3404531, at *9 (Orrick, J.) ("[Counsel's] request for attorneys' fees in the amount of 28% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.") (citations omitted); *Wellens v. Sankyo*, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (Orrick, J.) (awarding 36% of $8,200,000 settlement fund in fees).[13]

Finally, the requested fees are also fair given the significant time Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all absent a successful resolution. Thus, because of the contingent nature of the fee and the financial burden carried by Plaintiff and the Class, Plaintiff's Counsel's requested fee award of 29% of the total Settlement Value is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048–50.

---

[13] *See also Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) (Orrick, J.) ("Fee award percentages generally are higher in cases where the common fund is below $10 million.") (citations omitted); *accord Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *11 (N.D. Cal. Apr. 26, 2013).

1
2

The Settlement therefore provides adequate relief to the Class under Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

3

### 4.    The Settlement Treats All Class Members Equally

4
5
6
7
8

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'"  *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)).  In assessing this factor, "the Court considers whether the proposal 'improperly grant[s] preferential treatment to class representatives or segments of the class.'"  *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079).

9
10
11
12
13
14
15
16
17
18
19

Here, in addition to providing Automatic Account Credit Codes to those who do nothing, the Settlement also distributes Automatic Account Credit Codes (or cash relief to those who submitted a claim on a *pro rata* basis), and the amount each Class Member will receive depends on whether a given Class Member's most recently active WaPo Subscription was for an Annual or Four-Week renewal term, which had different renewal costs.  Settlement ¶ 2.2.  Settlement Class Members with Annual WaPo Subscriptions, whether active or inactive, will receive an Automatic Account Credit Code for eight (8) weeks of free subscription services, valued at $20 (or a *pro rata* cash payment from the Settlement Fund).  *Id.*  Settlement Class Members with Four-Week WaPo Subscriptions, whether active or inactive, will receive an Automatic Account Credit Code for four (4) weeks of free subscription services, valued at $10 (or a *pro rata* cash payment from the Settlement Fund).  *Id.*

20
21
22
23
24
25
26
27

Courts in this Circuit have found that allocating Settlement benefits among Class Members in this manner is equitable.  *See Perks*, 2021 WL 1146038, at *6 ("This *pro rata* distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *Avanquest*, 2015 WL 4396137, at *3 (Orrick, J.) ("[T]he proposed settlement agreement 'does not improperly grant preferential treatment to class representatives or segments of the class[]' because all class members are treated in the same way and there is no difference in treatment throughout the class.") (internal citations

28

omitted) (quoting *State of California v. eBay, Inc.*, 2014 WL 4273888, at \*5 (N.D. Cal. Aug. 29, 2014)). Thus, this factor weighs in favor of granting approval.

## VI.       CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her unopposed Motion for Final Approval of the Settlement. A Proposed Order granting final approval and certifying the Settlement Class is submitted herewith.

Dated: November 3, 2021                    Respectfully submitted,

                                           **BURSOR & FISHER, P.A.**

                                           By:    */s/ Frederick J. Klorczyk III*
                                                    Frederick J. Klorczyk III

                                           Frederick J. Klorczyk III (State Bar No. 320783)
                                           888 Seventh Avenue
                                           New York, NY 10019
                                           Telephone: (646) 837-7150
                                           Facsimile: (212) 989-9163
                                           Email: fklorczyk@bursor.com

                                           **BURSOR & FISHER, P.A.**
                                           Neal J. Deckant (State Bar No. 322946)
                                           Julia K. Venditti (State Bar No. 332688)
                                           1990 North California Boulevard, Suite 940
                                           Walnut Creek, CA 94596
                                           Telephone: (925) 300-4455
                                           Facsimile: (925) 407-2700
                                           Email: ndeckant@bursor.com
                                                    jvenditti@bursor.com

                                           *Class Counsel*