1   **BURSOR & FISHER, P.A.**
    Frederick J. Klorczyk III (State Bar No. 320783)
2   888 Seventh Avenue
    New York, NY  10019
3   Telephone: (646) 837-7150
    Facsimile: (212) 989-9163
4   Email: fklorczyk@bursor.com

5   **BURSOR & FISHER, P.A.**
    Neal J. Deckant (State Bar No. 322946)
6   Julia K. Venditti (State Bar No. 332688)
    1990 North California Boulevard, Suite 940
7   Walnut Creek, CA  94596
    Telephone: (925) 300-4455
8   Facsimile: (925) 407-2700
    Email: ndeckant@bursor.com
9           jvenditti@bursor.com

10  *Class Counsel*

11

12                  **IN THE UNITED STATES DISTRICT COURT**

13                  **NORTHERN DISTRICT OF CALIFORNIA**

14                                          Case No. 3:20-cv-05218-WHO

15  DEBORAH JORDAN, individually and on        **PLAINTIFF'S NOTICE OF RENEWED**
    behalf of all others similarly situated,   **MOTION AND RENEWED MOTION**
16                                              **FOR AN AWARD OF ATTORNEYS'**
                      Plaintiff,                **FEES, COSTS AND EXPENSES, AND**
17                                              **INCENTIVE AWARD; MEMORANDUM**
              v.                                **OF POINTS AND AUTHORITIES IN**
18                                              **SUPPORT THEREOF**

19  WP COMPANY LLC, d/b/a THE                   Date:   September 7, 2022
    WASHINGTON POST,                            Time:   2:00 p.m.
20                                              Courtroom:  2, 17th Floor
                      Defendant.                Judge:  Hon. William H. Orrick
21

22                                              [Filed concurrently with the Declarations of
                                                Elizabeth Diaz and Jennifer M. Keough]
23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on September 7, 2022, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, located at the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 2 on the 17th Floor before the Honorable William H. Orrick, Plaintiff Deborah Jordan ("Plaintiff"), on behalf of herself and all others similar situated, and Class Counsel, Bursor & Fisher, P.A., will and hereby do move, pursuant to Fed. R. Civ. P. 23(e) and the Court's November 19, 2021 Order Finally Approving Class Action Settlement (ECF No. 57) and Minute Order Regarding Final Approval Proceedings (ECF No. 56), for an Order: (1) granting Plaintiff's renewed motion for an award of attorneys' fees to Class Counsel in the amount of $2,000,000, inclusive of costs and expenses; (2) approving the payment of an incentive award in the amount of $5,000 to Plaintiff as the Class Representative, in recognition of Plaintiff's efforts on behalf of the Settlement Class; (3) approving the Legal Aid Association of California as the *cy pres* beneficiary of any remaining funds, and approving the San Francisco Unified School District as the *cy pres* beneficiary of any non-deliverable Automatic Account Credit Codes; and (4) awarding such other and further relief as the Court deems reasonable and just.

This motion is made on the grounds that an award of attorneys' fees, costs and expenses, and payment of incentive fees is proper, given that the Parties have agreed that Class Counsel may make such applications in the Settlement Agreement, the work of Class Counsel has conferred substantial benefits to the Class, and such awards are permitted under the laws of this Circuit.

This Motion is based upon this Notice of Renewed Motion and Renewed Motion for an Award of Attorneys' Fees, Costs and Expenses, and Incentive Award, and the attached Memorandum of Points and Authorities in support thereof (the "Renewed Fee Motion"); the concurrently filed Declarations of Elizabeth Diaz and Jennifer M. Keough in support thereof ("Diaz Decl." and "Supplemental Keough Decl.," respectively); the [Proposed] Order submitted herewith; Plaintiff's initial Unopposed Motion for an Award of Attorneys' Fees, Costs and

Expenses, and Incentive Award filed with the Court on September 3, 2021 (ECF No. 52) ("First

Fee Motion"); the Declaration of Frederick J. Klorczyk III previously filed with the Court (ECF

No. 52-1) ("9/3/21 Klorczyk Decl."), including the Parties' Stipulation of Class Action Settlement

and Release ("Settlement" or "Settlement Agreement")[1] attached thereto as Exhibit 1; the

Declaration of Deborah Jordan previously filed with the Court (ECF No. 52-2) ("9/3/21 Jordan

Decl."); Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, filed with

the Court on November 3, 2021 (ECF No. 53) ("Final Approval Motion"); the Declaration of

Jennifer M. Keough Regarding Settlement Administration submitted with Plaintiff's Final

Approval Motion (ECF No. 53-2) ("11/3/21 Keough Decl."); Plaintiff's Reply Memorandum of

Law in Further Support of Plaintiff's First Fee Motion filed with the Court on November 3, 2021

(ECF No. 54) ("Reply ISO Fees"); all other papers previously filed with the Court in support of the

Settlement Agreement (ECF Nos. 46, 46-1, 48, 49, 50, 52-3, 53-1, 53-3, 56-59); the argument of

counsel; the pleadings and all papers and records on file in this Action; and any other such

evidence and argument as may subsequently be presented to the Court.

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Parties' Stipulation of Class Action Settlement Agreement and Release (the "Settlement" or "Settlement Agreement"), a true and correct copy of which was submitted as Exhibit 1 to the Declaration of Frederick J. Klorczyk III in support of Plaintiff's First Fee Motion, previously filed with the Court on September 3, 2021. *See* 9/3/21 Klorczyk Decl. Ex. 1 at ECF pp. 21-114.

1    Dated:  August 3, 2022                    Respectfully submitted,

2                                              **BURSOR & FISHER, P.A.**

3                                              By:  _____/s/ Frederick J. Klorczyk III_____

4                                              Frederick J. Klorczyk III (State Bar No. 320783)
                                               888 Seventh Avenue
5                                              New York, NY  10019
                                               Telephone: (646) 837-7150
6                                              Facsimile: (212) 989-9163
                                               Email: fklorczyk@bursor.com
7
                                               **BURSOR & FISHER, P.A.**
8                                              Neal J. Deckant (State Bar No. 322946)
                                               Julia K. Venditti (State Bar No. 332688)
9                                              1990 North California Boulevard, Suite 940
                                               Walnut Creek, CA  94596
10                                             Telephone: (925) 300-4455
                                               Facsimile: (925) 407-2700
11                                             Email: ndeckant@bursor.com
                                                          jvenditti@bursor.com
12
                                               *Class Counsel*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ........................................................................................................... 1

II.   RELEVANT BACKGROUND ...................................................................................... 3

III.   CLASS COUNSEL'S REQUESTED AWARD OF ATTORNEYS' FEES IS
        FAIR AND REASONABLE AND SHOULD BE APPROVED ...................................... 5

    A.   Legal Standard: The Court Should Award Attorneys' Fees Under
              "The Percentage Of The Benefit Method" .......................................................... 5

    B.   The Total Value Of The Settlement Fund Is $6.6 Million, And Class
              Counsel Should Receive 30% In Attorneys' Fees ............................................... 7

        1.   The Distribution And Utilization Of Automatic Account
                   Credit Codes Has Been A Success ......................................................... 7

        2.   Respectfully, The Redemption Rate Is Not A Relevant
                   Consideration To The Calculation Of Attorneys' Fees, As
                   This Is Not A Coupon Settlement ........................................................... 8

        3.   The "Total Settlement Value" Includes All Benefits Made
                   Available To Class Members ................................................................. 9

        4.   The Codes Should Be Valued At Their Face Value .............................. 14

        5.   All Relevant Factors Favor An Upward Departure From The
                   Ninth Circuit's Benchmark ................................................................... 17

IV.   THE PARTIES HAVE SELECTED APPROPRIATE *CY PRES*
        RECIPIENTS ............................................................................................................... 21

V.   THE REQUESTED INCENTIVE AWARD FOR THE CLASS
        REPRESENTATIVE IS FAIR AND REASONABLE ...................................................... 24

VI.   CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
   2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) .............................................................. 6

*Alvarez v. Farmers Ins. Exch.*,
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017).................................................... passim

*Arredondo v. Sw. & Pac. Specialty Fin., Inc.*,
   2022 WL 2052681 (E.D. Cal. June 7, 2022) ............................................................ 25

*Williams v. MGM-Pathe Communs. Co.*,
   129 F.3d 1026 (9th Cir. 1997) .................................................................. 3, 9, 10, 11

*Barnes v. The Equinox Grp., Inc.*,
   2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ...................................................... 6, 20

*Beaver v. Tarsadia Hotels*,
   2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) .................................................. 17, 20

*Bergman v. Thelen LLP*,
   2016 WL 7178529 (N.D. Cal. Dec. 9, 2016) ............................................................ 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .......................................................................................... 10, 11

*Brown v. Hain Celestial Grp., Inc.*,
   2016 WL 631880 (N.D. Cal. Feb. 17, 2016).......................................................... 11

*Browning v. Yahoo! Inc.*,
   2007 WL 4105971  (N.D. Cal. Nov. 16, 2007) ...................................................... 16

*Burden v. SelectQuote Ins. Servs.*,
   2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) .......................................................... 21

*Chaikin v. Lululemon USA Inc.*,
   2014 WL 1245461 (S.D. Cal. Mar. 17, 2014) ........................................................ 16

*Chavez v. PVH Corp.*,
   2015 WL 9258144 (N.D. Cal. Dec. 18, 2015) ........................................................ 12

*Chu v. Wells Fargo Investments, LLC*,
   2011 WL 672645 (N.D. Cal. Feb. 16, 2011).......................................................... 6

---

*Cicero v. DirecTV, Inc.,*
   2010 WL 2991486 (C.D. Cal. July 27, 2010) ........................................................ 20

*CLRB Hanson Indus., LLC v. Weiss & Assocs., PC,*
   465 F. App'x 617 (9th Cir. 2012) ............................................................... 2, 8, 14

*Connor v. JPMorgan Chase Bank, N.A.,*
   2021 WL 1238862 (S.D. Cal. Apr. 2, 2021) ...................................................... 23, 24

*Cooks v. TNG GP,*
   2020 WL 5535397 (E.D. Cal. Sept. 15, 2020) .......................................................... 23

*Deluca v. Farmers Ins. Exch.,*
   2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ..................................................... 18, 20

*Dennis v. Kellogg Co.,*
   697 F. 3d 858 (9th Cir. 2012) ................................................................................. 24

*Dixon v. Cushman & Wakefield W., Inc.,*
   2022 WL 1189883 (N.D. Cal. Apr. 21, 2022) .................................................... 21, 25

*Elkies v. Johnson & Johnson Servs., Inc.,*
   2020 WL 10055593 (C.D. Cal. June 22, 2020) ................................................... 5, 18

*Fischel v. Equitable Life Assur. Soc'y of U.S.,*
   307 F.3d 997 (9th Cir. 2002) ...................................................................................... 5

*Foos v. Ann, Inc.,*
   2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) ................................................. 9, 14, 16

*Foster v. Adams & Assocs., Inc.,*
   2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ...................................................... 18, 20

*Glass v. UBS Fin. Servs. Inc.,*
   331 Fed. Appx. 452 (9th Cir. 2009) ........................................................................ 10

*Hadley v. Kellogg Sales Co.,*
   2020 WL 836673 (N.D. Cal. Feb. 20, 2020) ........................................................... 14

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ............................................................................ 5, 17

*Harris v. Amgen Inc.,*
   2017 WL 6048215 (C.D. Cal. Apr. 4, 2017) ........................................................... 19

*Harris v. Vector Mktg. Corp.,*
   2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .............................................................. 25

*Harrison v. Bank of Am. Corp.,*
   2021 WL 5507175 (N.D. Cal. Nov. 24, 2021) ...................................................... 6, 11

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ................................................................. 22

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) .............................................................................. 24

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................................... 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................... 12

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ................................................................ 25

*In re Easysaver Rewards Litig.*,
  906 F.3d 747 (9th Cir. 2018) ................................................................................... 23

*In re Google Buzz Priv. Litig.*,
  2011 WL 7460099 (N.D. Cal. June 2, 2011) ............................................................... 11

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .............................................................. 24

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
  2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ................................................................ 6

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................... 20, 25

*In re Netflix Priv. Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................................ 11, 13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 18, 20

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................ passim

*In re Pacific Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .................................................................................... 20

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................... 15, 16

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*,
  2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ........................................................... 6, 10

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) .................................................................................... 17

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017)........................................................................ 18

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009)................................................................. 18

*Ko v. Natura Pet Products, Inc.*,
  2012 WL 3945541 (N.D. Cal. Sept. 10, 2012)........................................................... 25

*Koenig v. Lime Crime, Inc.*,
  2018 WL 11358228 (C.D. Cal. Apr. 2, 2018)............................................................. 20

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012)................................................................................ 22, 23

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014)......................................................... 18, 20

*Lee v. Enter. Leasing Co.-W*,
  2015 WL 2345540 (D. Nev. May 15, 2015) ................................................................ 10

*Linney v. Cellular Alaska P'ship*,
  1997 WL 450064 (N.D. Cal. July 18, 1997)............................................................... 19

*Lopez v. Youngblood*,
  2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ........................................................... 13

*Martin v. Monsanto Co.*,
  2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ........................................................ 14, 15

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ...................................................................................... 24

*McKnight v. Uber Techs., Inc.*,
  2021 WL 4205055 (N.D. Cal. Sept. 2, 2021) ............................................................... 9

*Miller v. Ghirardelli Chocolate Co.*,
  2015 WL 758094 n.8 (N.D. Cal. Feb. 20, 2015) ......................................................... 11

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
  2021 WL 4133860 (N.D. Cal. Sept. 10, 2021)........................................................ 21, 25

*Morey v. Louis Vuitton N. Am., Inc.*,
  2014 WL 109194 (S.D. Cal. Jan. 9, 2014) .................................................................. 16

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003)................................................................................. 20

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) ............................................................................... 22, 24

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).......................................................................... 18

*Nucci v. Rite Aid Corp.*,
  2022 WL 1693711 (N.D. Cal. May 26, 2022)................................................. 6, 10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................. 23

*O'Keefe v. Mercedes-Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) ........................................................................ 16

*Patel v. Trans Union, LLC*,
  2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) .................................................. 11

*Paul, Johnson, Alston, & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ........................................................................ 5, 20

*Pecover v. Elec. Arts Inc.*,
  2013 WL 12121865 (N.D. Cal. May 30, 2013)............................................ 12, 13

*Perkins v. Linkedin Corp.*,
  2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ........................................ 11, 12, 19

*Pokorny v. Quixtar, Inc.*,
  2013 WL 3790896 (N.D. Cal. July 18, 2013) ................................................... 19

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) .......................................................................... 12

*Rabin v. PricewaterhouseCoopers LLP*,
  2021 WL 837626 (N.D. Cal. Feb. 4, 2021) ....................................................... 25

*Rael v. Children's Place, Inc.*,
  2021 WL 1226475 (S.D. Cal. Mar. 31, 2021) ....................................... 8, 13, 15, 23

*Reibstein v. Rite Aid Corp.*,
  761 F. Supp. 2d 241 (E.D. Pa. 2011)................................................................. 16

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................. 18, 22, 24

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*,
  2020 WL 5074392 (N.D. Cal. Aug. 27, 2020) .................................................. 11

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) .......................................................................... 14

*Saavedra v. Eli Lilly & Co.*,
  2014 WL 7338930 (C.D. Cal. Dec. 18, 2014).............................................. 14, 15

*Schwab v. Comm'r*,
   715 F.3d 1169 (9th Cir. 2013) ................................................................. 14, 15

*Seegert v. Lamps Plus, Inc.*,
   377 F. Supp. 3d 1127 (S.D. Cal. 2018) ............................................................. 13

*Singer v. Becton Dickinson & Co.*,
   2010 WL 2196104 (S.D. Cal. June 1, 2010) ................................................. 18, 20

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ........................................................... 5, 10, 22

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................... 6, 12, 19

*Stern v. Gambello*,
   480 F. App'x 867 (9th Cir. 2012) ..................................................................... 10

*Tait v. BSH Home Appliances Corp.*,
   2015 WL 4537463 ............................................................................................. 6

*Taylor v. Meadowbrook Meat Co., Inc.*,
   2016 WL 4916955 (N.D. Cal. Sept. 15, 2016) ................................................. 11

*Taylor v. Shutterfly, Inc.*,
   2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) ............................................... 11, 13

*Tchoboian v. Fedex Off. & Print Servs., Inc.*,
   2014 WL 10102826 (C.D. Cal. Mar. 25, 2014) ......................................... 3, 9, 14

*Theodore Broomfield v. Craft Brew All., Inc.*,
   2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ................................................. 9, 11

*Torchia v. W.W. Grainger, Inc.*,
   304 F.R.D. 256 (E.D. Cal. 2014) ..................................................................... 18

*Tsyn v. Wells Fargo Advisors, LLC*,
   2018 WL 11424668 (N.D. Cal. Nov. 1, 2018) ................................................. 11

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................................. 21

*Villafan v. Broadspectrum Downstream Servs., Inc.*,
   2021 WL 6332128 (N.D. Cal. Apr. 8, 2021) ................................................... 11

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................. passim

*Williamson v. McAfee, Inc.*,
   2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) ............................................ 9, 10, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Young v. Polo Retail, LLC*,
  2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ............................................................... 11

**STATUTES**

28 U.S.C. § 1712 ........................................................................................................... 2, 4, 8, 9

28 U.S.C. § 1712(a) ............................................................................................................ 8

Cal. Bus. & Prof. Code § 17600 ........................................................................................ 1

Cal. Bus. & Prof. Code § 17602(a)(1)-(2) .......................................................................... 3

**RULES**

Fed. R. Civ. P. 23(e) .......................................................................................................... 4

**OTHER AUTHORITIES**

5 Newberg on Class Actions § 15:67 (5th ed. Dec. 2017) ................................................... 6

## I.     INTRODUCTION

Plaintiff Deborah Jordan (the "Class Representative" or the "Plaintiff") seeks an award of attorneys' fees to Bursor & Fisher, P.A. ("Class Counsel") totaling $2,000,000 – which is equal to approximately 30% of the $6,599,520 total settlement value – to compensate them for their work in achieving a substantial Settlement on behalf of a California class of consumers who purchased subscriptions to the Washington Post (the "WaPo Subscriptions") because of Defendant WP Company LLC's ("Defendant" or "WaPo") (together with Plaintiff, the "Parties") alleged failure to comply with California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, which imposes detailed information, notice, and consent requirements on businesses that make automatic renewal or continuous service offers to California consumers.  Plaintiff also seeks an incentive award of $5,000 for her service as Class Representative.  Such awards are permitted under the laws of this Circuit, are common in class action settlements in this District, and are appropriate in this case given the facts.

In its November 19, 2021 Minute Order Regarding Final Approval, the Court found that the Settlement provided "*very significant relief [] to the class.*"  ECF No. 56 ("Minute Order") at 1 (emphasis added).  Additionally, the Court further found that "*[a] significant award of fees is merited.*"  *Id.* (emphasis added).  Pursuant to the terms of the Settlement Agreement, all Class Members had the option to submit a Claim Form to receive a *pro rata* cash payment from the $2,400,000 non-reversionary Settlement Fund, and 10,808 Class Members did so.  *See* Settlement ¶ 2.2; ECF No. 53-2 ("11/3/21 Keough Decl.") ¶ 24.  JND estimates that these Class Members will receive $44.61 per Annual Class Member and $22.30 per Four-Week Class Member.  *See* Supplemental Declaration of Jennifer M. Keough Regarding Distribution of Settlement Benefits and Post-Distribution Interim Accounting ("Supplemental Keough Decl.") ¶ 6.  Otherwise, each Class Member who neither submitted a valid cash claim nor opted-out of the Settlement received an Automatic Account Credit Code for up to eight (8) weeks of free subscription services, with a face value of up to $20.  *See* Settlement ¶ 2.2.  The Codes will never expire and may be freely transferred.  *See id.* ¶¶ 1.8, 2.2(e).  In total, WaPo has automatically provided over $4,199,520 worth of Automatic Account Credit Codes to more than 307,000 Class Members who did nothing

during the claims period.  *See* Supplemental Keough Decl. ¶ 13.

Here, the Settlement Administrator, JND Legal Administration ("JND"), implemented the Court-approved notice plan, whereby direct notice successfully reached nearly 97% of the certified Settlement Class.  *See* 11/3/21 Keough Decl. ¶ 13.  And even though it is not a required term under the Settlement Agreement, between May 19, 2022 and May 23, 2022, the Parties had JND send a follow-up e-mail to all Class Members who had not yet redeemed their Automatic Account Credit Codes, reminding them of the Codes' availability.  *See* Supplemental Keough Decl. ¶ 14.

To date, more than 26,000 of the approximately 307,000 Codes distributed pursuant to the Settlement have been redeemed by Class Members, for a *current* (but not final) redemption rate of over 8% as of July 1, 2022.  *Id*. at ¶ 15.  JND has noted that "this redemption rate is typical within the class action settlement context" and that, if anything, it "*exceeds* the expected redemption rate given the circumstances."  *Id*. (emphasis added).  JND further states that this redemption rate "indicates that the notice program has been a success and that the Settlement Class has found the Settlement to provide meaningful relief by choosing to participate in using the [Automatic Account Credit] Codes provided."  *Id*.  Given that the Codes <u>never</u> expire, *see* Settlement ¶¶ 1.8, 2.2(e), Class Counsel expects that this rate will continue to climb over time.

When the Court granted final approval, it "defer[red] ruling on [Plaintiff's] motion for an award of attorney fees," finding that, while "[a] significant award of fees is merited," the amount may "depend[] upon how many of the [Automatic] Acc[ount Credit] Codes are utilized by the Class Members."  Minute Order at 1-2.  As discussed herein, the redemption rate demonstrates the Settlement is a resounding success.  However, the redemption rate is, respectfully, not a proper consideration when determining the amount of attorneys' fees because (as this Court correctly found) this "is not a 'coupon' settlement under the Class Action Fairness Act, 28 U.S.C. § 1712." *Id*. at 1.  For settlements that do not fall under the "coupon" provisions of CAFA, considerations of redemption rates are simply not relevant to attorneys' fees.  *See, e.g.*, *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 465 F. App'x 617, 619 (9th Cir. 2012) ("This is not a 'coupon settlement' and therefore does not trigger the Class Action Fairness Act of 2005's limitations on contingent fees awarded in connection with such settlements.").  Indeed, under the "percentage of the benefit

approach," attorneys' fees should be determined by the amount *made available* to class members, *not* the amount of Automatic Account Credit Codes *actually redeemed*.  *See, e.g.*, *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund[.]"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949-50 (9th Cir. 2015) ("[The district court did not err in] calculating the fee award as a percentage of the overall settlement fund, including the total dollar value of the gift cards, instead of calculating the portion of the fee award based on the gift cards as a percentage of the gift cards that were actually redeemed."); *Tchoboian v. Fedex Off. & Print Servs., Inc.*, 2014 WL 10102826, at *6 (C.D. Cal. Mar. 25, 2014) ("The vouchers provided to class members are not properly deemed 'coupons.' … Therefore, the attorney's fee award is not properly based on the value of redeemed store value cards.").

Of the approximately 320,000 total Settlement Class Members, not a single Class Member objected to the Settlement, and only 12 Class Members opted out (*i.e.*, 0.00376% of Class Members).  Together with the above, the reaction from the Class was overwhelmingly positive.  Additionally, WaPo also agreed to prospective relief that will benefit Class Members for years to come, including injunctive relief in the form of, *inter alia*, revising the presentation and wording of the automatic renewal terms on its Checkout Pages to be consistent with the requirements of the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17602(a)(1)-(2), and to change its notices to consumers about applicable automatic renewal offer terms and how to cancel the WaPo Subscriptions.  The Settlement Class has spoken, and they overwhelmingly approve.  The Court should grant Plaintiff's requested attorneys' fees and incentive award in full.

## II.   RELEVANT BACKGROUND[2]

On November 19, 2021, the Court granted final approval to the Settlement Agreement between Plaintiff and Defendant WP Company LLC ("Defendant" or "WaPo") (together with Plaintiff, the "Parties"), which resolves Plaintiff's and Class Members' claims stemming from

---

[2] A comprehensive factual and procedural background of this matter, including the key terms of the Settlement, are discussed at pages 2-4 and 6-10 of Plaintiff's motion for preliminary approval.  *See* ECF No. 46 ("Preliminary Approval Motion"); ECF No. 52-1 ("9/3/21 Klorczyk Decl.") ¶¶ 4-38.

WaPo's alleged violations of California's ARL.  *See* ECF No. 57 ("Final Approval Order") at ¶ 2 ("The Court finds that the prerequisites for a settlement class under Federal Rules of Civil Procedure … 23(a) and (b)(3) have been satisfied."); *id*. at ¶ 3 ("The Court finds that the requirements of Rule 23(e) … [has] been satisfied, and the Court approves the settlement of this Action as memorialized in the Settlement Agreement as being fair, just, reasonable and adequate to the Settlement Class and its members.  The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class action and provides relief to the Settlement Class without the risks, burdens, costs or delays associated with continued litigation, trial and/or appeal."); *id*. at ¶ 6 ("The form and method of notifying the Settlement Class of the pendency of the Action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Fed. R. Civ. P. 23, due process, and any other applicable law, and constituted due and sufficient notice to all persons and entities entitled thereto."); *see also* Minute Order at 1 ("The Court will grant final approval of the settlement as fair, reasonable, and adequate."); *id*. ("[G]iven that the settlement was negotiated over two sessions with an experienced mediator and there is no reversion to defendant from the Cash Fund, I am comfortable that there was no collusion between counsel and defendants at the expense of the class.").

In the same Order, the Court determined "that the settlement is not a 'coupon' settlement under the Class Action Fairness Act, 28 U.S.C. § 1712 ('CAFA')" and that "[a] significant award of fees is merited."  *Id.*  However, the Court "defer[red] ruling on [Plaintiff's] motion for an award of attorney fees," indicating that the size of the fee award may "depend[] upon how many of the [Automatic] Acc[ount Credit] Codes are utilized by the Class Members."  *Id*. at 2.  Accordingly, the Court directed that, "[a]fter the [ ] Codes are provided to class members" and the redemption rate could be determined, "Class Counsel may re-notice their motion for an award of attorney fees and an incentive award and address" seven specific issues outlined by the Court.  *Id*.

After final approval of the Settlement, the Settlement Administrator carried out the terms of the Settlement with respect to distribution of the Automatic Account Credit Codes, as directed by the Court.  *See* Supplemental Keough Decl. ¶¶ 7-8, 12-14; *see also* ECF No. 58 ("Joint Status

1   Update Regarding Distribution of Class Settlement Benefits" or "Joint Status Report") at 1-2.[3]  On

2   March 7, 2022, the Settlement Administrator distributed the Automatic Account Credit Codes by

3   email to approximately 307,502 Class Members who neither opted out nor filed a valid cash claim.

4   Supplemental Keough Decl. ¶ 12.  Additionally, on May 20, 2022, the Settlement Administrator

5   sent a reminder e-mail to all Class Members who had not yet redeemed their Automatic Account

6   Credit Codes.  *Id*. ¶ 14.

### III.   CLASS COUNSEL'S REQUESTED AWARD OF ATTORNEYS' FEES IS FAIR AND REASONABLE AND SHOULD BE APPROVED

#### A.   Legal Standard: The Court Should Award Attorneys' Fees Under "The Percentage Of The Benefit Method"

Class Counsel seeks an award of attorneys' fees, costs, and expenses in the amount of

$2,000,000, which is approximately 30 percent of the nearly $6.6 million Settlement.  This fee

request is reasonable under Ninth Circuit precedent.

Although courts in the Ninth Circuit have discretion to apply one of two fee calculation

methods – the "percentage of the fund" method or the "lodestar" method[4] – the trend in this Circuit

is to use the percentage of recovery as the "dominant" approach in common fund cases.[5]  "The use

of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth

Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund

---

[3] As explained in the Joint Status Report, the Parties have deferred disbursement of *pro rata* cash payments to qualifying Class Members until after the Court reaches a final decision on Plaintiff's requested incentive award and attorneys' fees.  *See id.* at 2.  This is necessary under the terms of the Settlement Agreement, which provides that each Class Member who submitted an Approved Claim will receive a *pro rata* payment from the Net Settlement Fund within 60 days of the December 30, 2021 Effective Date (*i.e.*, by February 28, 2022), *see* Settlement ¶¶ 1.31, 2.2(a)-(f).  *See* Joint Status Report at 2.  However, without certainty as to the amounts of any fee and incentive awards and final administrative costs to be deducted from the gross settlement fund, it is not possible to determine the Net Settlement Fund.  *See id.*  Correspondingly, until such inputs are determined, the *pro rata* amount of the Net Settlement Fund to which each individual cash claimant is entitled also remains uncertain.  *Id*. at 2-3; *see also* ECF No. 59 ("Order Re: Joint Status Report") ("[T]he Court has no objection to proceeding with the settlement activation plan outlined in the Status Report[.]").

[4] *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

[5] *Elkies v. Johnson & Johnson Servs., Inc.*, 2020 WL 10055593, at *8 (C.D. Cal. June 22, 2020) ("In the Ninth Circuit, use of the percentage method in common fund cases appears to be dominant.") (citations omitted) (citing, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

---

conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013).[6] Courts prefer the percentage method because it confers "significant benefits … including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at* 11 (C.D. Cal. July 27, 2015).

The nature of this action warrants application of the percentage-of-the-fund approach, the principal and "prevailing practice in the Ninth Circuit" to determine the reasonableness of Class Counsel's fee request. *Korean Air Lines*, 2013 WL 7985367, at *1. As the court determined in *Barnes v. The Equinox Grp., Inc.*, "the percentage-of-the-fund method is appropriate where – as here – the amount of the settlement is fixed without any reversionary payment to the defendant." *Barnes v. The Equinox Grp., Inc.*, 2013 WL 3988804, at *3 (N.D. Cal. Aug. 2, 2013) (citing *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16, 2011)). Additionally, the percentage method is appropriate given Class Counsel's efficiency in litigation of this case. *See id.* ("[A] lodestar method … can encouraged [sic] unjustified work and protracting the litigation."). These factors weigh in favor of employing the percentage of the fund method.

Calculating reasonable attorneys' fees pursuant to the percentage-of-the-fund method is a two-step process:

---

[6] *See also Nucci v. Rite Aid Corp.*, 2022 WL 1693711, at *7 (N.D. Cal. May 26, 2022) ("The 'percentage of the fund' method is typically used."); *accord In re Zoom Video Commc'ns, Inc. Priv. Litig.*, 2022 WL 1593389, at *10 (N.D. Cal. Apr. 21, 2022) (same); *Harrison v. Bank of Am. Corp.*, 2021 WL 5507175, at *8 (N.D. Cal. Nov. 24, 2021) ("Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the settlement fund."); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, 2018 WL 8949777, at *8 (N.D. Cal. Oct. 15, 2018) ("The lodestar method has also been criticized as encouraging lawyers to prolong the litigation and discourage early settlements that would benefit the class. The percentage-of-the-fund method is therefore typically used to award a fee in common fund cases like this one.") (internal citation omitted) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002)); *Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *2 (N.D. Cal. Jan. 18, 2017) (Orrick, J.) ("The Ninth Circuit has consistently awarded attorneys' fees under the common fund method, reasoning that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'") (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003)); *see also* William B. Rubenstein, *5 Newberg on Class Actions* § 15:67 (5th ed. Dec. 2017) (empirical data shows that "only about 10% of courts use a pure lodestar method" to determine fees in common fund cases).

> The determination of the percentage of recovery usually proceeds in two steps.  First, courts must ascertain the size of the fund against which the percentage will be assessed.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015).  Second, courts must examine relevant factors to determine the appropriate percentage of the fund that should be awarded to counsel.  *Vizcaino* [*v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)].

*In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *6 (N.D. Cal. Aug. 17, 2018).

First, as explained below, the total value of the common fund is $6,599,520.00, which includes $4,199,520.00 in Automatic Account Credit Codes and the $2,400,000.00 non-reversionary cash Settlement Fund from which Class Counsel's requested fee award (inclusive of costs and expenses), Plaintiff's Jordan's proposed incentive award, and the costs of notice and administration are to be paid.  *See* Settlement ¶¶ 1.20, 8.1; Supplemental Keough Decl. ¶ 13. Second, Class Counsel seeks an award of attorneys' fees, costs, and expenses in the amount of $2,000,000, which is approximately 30% of the $6.6 million Settlement.

**B.      The Total Value Of The Settlement Fund Is $6.6 Million, And Class Counsel Should Receive 30% In Attorneys' Fees**

To calculate attorneys' fees based on the percentage of the benefit, the Court must first determine the value of the settlement fund.  *See Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *2 (N.D. Cal. Jan. 18, 2017) ("Under the percentage-of-the-fund method, the court compares the fee recovery against the total settlement value.").

**1.      The Distribution And Utilization Of Automatic Account Credit Codes Has Been A Success**

As a preliminary matter, upon granting final approval of the Settlement, the Court ordered Class Counsel to distribute the Automatic Account Credit Codes to Class Members, deferred a decision regarding attorneys' fees, and directed Plaintiff to address, in a renewed fee petition, "how many [] Codes have been utilized by class members to date."  Minute Order at 2.

On March 7, 2022, JND distributed the Automatic Account Credit Codes by email to the approximately 307,502 Class Members that received direct notice and neither excluded themselves from the Settlement nor filed a valid cash claim.  *See* Supplemental Keough Decl. ¶ 12.  Following distribution, Class Counsel closely monitored the rate at which Class Members redeemed these Codes.  Further, even though it is not required under the Settlement Agreement, pursuant to the

Parties' request, on May 20, 2022, JND sent a follow-up e-mail to all such Class Members who had not yet redeemed their Automatic Account Credit Codes to remind them to use the Codes (the "Reminder Email"). *Id*. at ¶ 14.

To date, more than 26,000 of the approximately 307,000 Codes distributed pursuant to the Settlement have been redeemed by Class Members, for a *current* (but not final) redemption rate of over 8% as of July 1, 2022. *Id*. ¶ 15. According to JND, "[t]his redemption rate is typical within the class action settlement context" and, if anything, "*exceeds* the expected redemption rate given the circumstances." *Id*. (emphasis added). Indeed, as JND further notes in its experience as a notice and claims administration firm, the redemption rate to date "indicates that the notice program has been a success and that the Settlement Class has found the Settlement to provide meaningful relief by choosing to participate in using the [Automatic Account Credit] Codes provided." *Id*. Given that the Codes <u>never</u> expire, *see* Settlement ¶¶ 1.8, 2.2(e), Class Counsel expects that this rate will continue to climb over time.

### 2. <u>Respectfully, The Redemption Rate Is Not A Relevant Consideration To The Calculation Of Attorneys' Fees, As This Is Not A Coupon Settlement</u>

In "defer[ring] ruling on [Plaintiff's] motion for an award of attorney fees," the Court indicated that the ultimate size of the fee award may "depend[] upon how many of the [Automatic Account Credit] Codes are utilized by the Class Members." Minute Order at 1-2. To be sure, the redemption rate of the Codes would be relevant if this were a "coupon settlement" subject to the Class Action Fairness Act, 28 U.S.C. § 1712 ("CAFA"): "CAFA requires district courts to consider the value of only those coupons 'that were actually redeemed' when calculating the relief awarded to a class." *Rael v. Children's Place, Inc.*, 2021 WL 1226475, at *16 (S.D. Cal. Mar. 31, 2021) (citing 28 U.S.C. § 1712(a)). However, this Court already expressly held that "*the settlement is not a 'coupon' settlement under [CAFA].*" Minute Order at 1 (emphasis added).

As this is not a "coupon settlement" under CAFA, redemption rates are, respectfully, not an appropriate basis for considering an award of attorneys' fees. *See, e.g.*, *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 465 F. App'x 617, 619 (9th Cir. 2012) ("This is not a 'coupon settlement' and therefore does not trigger the Class Action Fairness Act of 2005's limitations on contingent

fees awarded in connection with such settlements."); *McKnight v. Uber Techs., Inc.*, 2021 WL 4205055, at *5 (N.D. Cal. Sept. 2, 2021) ("Having determined that the settlement is not coupon-like, the Court now analyzes Plaintiffs' original fee request, using traditional class action attorney's fees criteria unburdened by the coupon requirements of CAFA."); *Williamson v. McAfee, Inc.*, 2017 WL 6033070, at *2 (N.D. Cal. Feb. 3, 2017) (ARL case) ("Courts apply heightened scrutiny to 'coupon settlements.'  But this is not a coupon settlement, since class members had the option to receive cash instead of value certificates, even though they received certificates by default."); *Foos v. Ann, Inc.*, 2013 WL 5352969, at *3 (S.D. Cal. Sept. 24, 2013) ("[T]he Court does not view this settlement as a 'coupon settlement' requiring the application of 28 U.S.C. § 1712.").  Stated otherwise, because "[t]he vouchers provided to class members are not properly deemed 'coupons[,]' … the attorney's fee award is not properly based on the value of redeemed [Automatic Account Credit Codes]."  *Tchoboian v. Fedex Off. & Print Servs., Inc.*, 2014 WL 10102826, at *5-6 (C.D. Cal. Mar. 25, 2014).

### 3. The "Total Settlement Value" Includes All Benefits Made Available To Class Members

The law in the Ninth Circuit is clear – in common fund cases not subject to CAFA's provisions on "coupon" settlements, attorneys' fees are assessed against the *total value* of all settlement benefits *made available* to Class Members, *not* just the benefits claimed or "redeemed."  *See, e.g.*, *Online DVD*, 779 F. 3d 934, 953 (9th Cir. 2015) ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses.  We have repeatedly held 'that the reasonableness of attorneys' fees is not measured by the choice of the denominator.'"); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class); (citations omitted and emphasis added); *Theodore Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *16 (N.D. Cal. Feb. 5, 2020) ("[T]he amount of the constructive fund against which the Court [calculates the fee award] is based on the gross value of the settlement – not the net value."); *Alvarez*, 2017 WL 2214585, at *2 (Orrick, J.) ("Under the percentage-of-the-fund method, the court compares the fee

recovery against the <u>total settlement value</u>.") (emphasis added); *Williamson*, 2017 WL 6033070, at *2 (ARL case) (same).  In estimating total settlement value, courts take into account all cash and quantifiable non-cash relief distributed pursuant to the Settlement, whether or not the checks are ever cashed, the cash is ever spent, or the vouchers are ever activated.  *See In re Zoom Video Commc'ns, Inc. Priv. Litig.*, 2022 WL 1593389, at *10 (N.D. Cal. Apr. 21, 2022) ("When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers."); *Lee v. Enter. Leasing Co.-W.*, 2015 WL 2345540, at *5 n.5 (D. Nev. May 15, 2015) ("[T]he Ninth Circuit considers the value *available* to the class in determining total value, rather than merely the amount redeemed.") (emphasis in original) (citation omitted).

By way of analogy, in the context of claims-made settlements, the Ninth Circuit has held that it is improper to calculate attorneys' fees based on the amount of claims ultimately submitted rather than the amount of total funds made available to the Class.  *See, e.g.*, *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund[.]"); *Stern v. Gambello*, 480 F. App'x 867, 870 (9th Cir. 2012) ("[N]or was it error to consider, in cross-checking the fees against the recovery, the potential recovery rather than the claims actually made."); *Glass v. UBS Fin. Servs. Inc.*, 331 Fed. Appx. 452 (9th Cir. 2009) (noting that district court's calculation of attorneys' fees as a percentage of total award rather than a percentage of amount actually collected by the class was proper and in line with Ninth Circuit precedent); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The district court did not abuse its discretion by calculating attorneys' fees as a percentage of the total fund.  The Supreme Court has stated that attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980)).  Courts in this District have repeatedly followed suit.  *See Nucci v. Rite Aid Corp.*, 2022 WL 1693711, at *7 (N.D. Cal. May 26, 2022) ("Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is

ultimately claimed.") (citations omitted)[7]; *Taylor v. Shutterfly, Inc.*, 2021 WL 5810294, at *8 (N.D. Cal. Dec. 7, 2021) ("The Court is not required to base attorney's fees based only on the amount paid to Class Members who submitted claims."); *Miller v. Ghirardelli Chocolate Co.*, 2015 WL 758094, at *5 n.8 (N.D. Cal. Feb. 20, 2015) ("To the extent that Ms. Ference's objection suggests that fees should be based on amounts claimed, that objection is therefore overruled."); *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("One issue concerning the settlement amount remains: the discrepancy between the total settlement and the amount actually claimed by the class. ... The fact that the class will recover about half of the total settlement gives the court pause.  The Ninth Circuit, however, bars consideration of the class's actual recovery in assessing the fee award, drawing on an expansive reading of *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). ... [The court] <u>follows Ninth Circuit case law and declines to reduce the award of attorney fees based on the actual distribution to class</u>.") (emphasis added) (citing *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997)).

Likewise, when unclaimed cash funds remain in the Settlement Fund following distribution to all Class Members, and the Settlement provides for distribution of the residue via *cy pres*, Ninth Circuit law requires that those funds, too, be included in the estimated total settlement value for the purposes of calculating the fee award as a percentage of that value.  *See, e.g.*, *In re Netflix Priv. Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) ("A *cy pres* remedy is a settlement structure wherein class members receive an indirect benefit ...  rather than a direct monetary payment. ... Accordingly, the Court finds that the settlement amount[ ] ... includes ... the *cy pres* method of distribution[.]") (internal citations and quotation marks omitted); *Perkins v. Linkedin Corp.*, 2016 WL 613255, at *16 (N.D. Cal. Feb. 16, 2016); *In re Google Buzz Priv. Litig.*, 2011

---

[7] *Accord Harrison*, 2021 WL 5507175, at *8 (N.D. Cal. Nov. 24, 2021); *Villafan v. Broadspectrum Downstream Servs., Inc.*, 2021 WL 6332128, at *8 (N.D. Cal. Apr. 8, 2021) (slip op.); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392, at *9 (N.D. Cal. Aug. 27, 2020); *Theodore Broomfield*, 2020 WL 1972505, at *16; *Tsyn v. Wells Fargo Advisors, LLC*, 2018 WL 11424668, at *10 (N.D. Cal. Nov. 1, 2018); *Patel v. Trans Union, LLC*, 2018 WL 1258194, at *6 (N.D. Cal. Mar. 11, 2018); *Bergman v. Thelen LLP*, 2016 WL 7178529, at *9 (N.D. Cal. Dec. 9, 2016); *Taylor v. Meadowbrook Meat Co., Inc.*, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016); *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *8 (N.D. Cal. Feb. 17, 2016).

1    WL 7460099, at *4 (N.D. Cal. June 2, 2011).[8]

2    　　　Otherwise, if this Court were to determine total settlement value without respect to the

3    aggregate value of the Automatic Account Credit Codes distributed but not yet utilized by Class

4    Members to date, that would be akin to determining total settlement value in a claims made

5    settlement by the number of claims filed – or, in an all-cash settlement, by the number of checks

6    actually cashed (*i.e.*, by deducting the value of uncashed checks from the total settlement fund

7    made available).  But, of course, for the purposes of determining a reasonable attorneys' fee award

8    under the percentage method, courts do not decrease the estimated total settlement fund by the

9    value of uncashed checks that expired following their distribution.  Instead, as noted above, where

10    the settlement relief of the common fund is non-reversionary and the parties to the litigation agree

11    to distribute the value of uncashed checks to a *cy pres* recipient following their expiration, as is

12    often the case, courts in this Circuit include any funds distributed via *cy pres* in their estimation of

13    total settlement value for the purposes of calculation attorneys' fees as a percentage of the common

14

15

16    ――――――――――――
[8] The same is true with regard to notice costs, litigation expenses, and the attorneys' fees

17    themselves – courts in this Circuit do not deduct these amounts from the gross settlement fund
before awarding attorneys' fees as a percentage of that fund.  *See, e.g.*, *In re Online DVD-Rental*

18    *Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("The district court did not abuse its discretion in
calculating the fee award as a percentage of the total settlement fund, including notice and

19    administrative costs, and litigation expenses. … [A]dministrative costs in particular make it
possible to distribute a settlement award 'in a meaningful and significant way.'  Similarly, notice

20    costs allow class members to learn about a settlement and litigation expenses make the entire
action possible."); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942, 945 (9th Cir.

21    2011) (noting that a percentage-of-recovery fee award is calculated by taking a percentage of the
"common fund for the benefit of the entire class" and including the fees in the denominator, but not

22    the numerator, when calculating the percentage of the constructive common fund that the
attorneys' fees constituted); *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (rejecting an

23    objector's argument that a fee award should be based on "net recovery," which does not include
"expert fees, litigation costs, and other expenses"); *Staton*, 327 F.3d 938.  *See also Pecover v. Elec.*

24    *Arts Inc.*, 2013 WL 12121865, at *6 (N.D. Cal. May 30, 2013) ("The valuation of the total fund to
calculate this percentage reasonably includes the notice and administration costs, which were part

25    of the benefit obtained for the class.") (emphasis added and internal citations omitted) (citing
*Staton*, 327 F.3d 938); *Perkins*, 2016 WL 613255, at *16 ("Two objectors[] … contend that Class

26    Counsel's fee request is improper because it seeks [a percentage] of the total settlement fund[]
before deducting administrative costs[.] … However, [there is no requirement that the fees] be

27    determined according to the net Settlement fund.  The rule proposed by [the objectors] is not the
law in the Ninth Circuit, and, indeed, would contradict the precedent of this district.") (citations

28    omitted); *Chavez v. PVH Corp.*, 2015 WL 9258144, at *8 (N.D. Cal. Dec. 18, 2015) (awarding
attorneys' fees as percentage of common fund calculated before deductions for costs or
administrative expenses).

fund.  *See, e.g.*, *In re Netflix*, 2013 WL 1120801, at *7.[9]  That is because any remaining funds from

expired checks – like distributed but unredeemed vouchers, notice costs, litigation expenses, and

the attorneys' fees themselves – are "part of the benefit obtained for the class."  *Pecover v. Elec.*

*Arts Inc.*, 2013 WL 12121865, at *6 (N.D. Cal. May 30, 2013); *Online DVD*, 779 F.3d at 953.  In

this case, the same is true of the Automatic Account Credit Codes distributed to, but not yet

redeemed by, Class Members as of the date of this filing; their aggregate value must be included in

determining total settlement value.

Further, given that the Automatic Account Credit Codes <u>never expire</u>, under the terms of

the instant settlement, *see* Settlement ¶ 2.2(f), Class Members have much more time to activate

their Codes than they have to cash their checks, which expire 180 days following distribution.  In

that sense, the value of the Codes holds up better than cash from a settlement fund distributed to

Class Members by check.  The lack of any expiration date associated with the Automatic Account

Credit Codes is just one characteristic (among others) that distinguishes the Codes from "coupon"

relief subject to CAFA.  *See* Minute Order at 1; *see also, e.g.*, *Online DVD*, 779 F.3d at 941

(affirming finding that "CAFA's coupon-settlement provisions should not apply because the

Walmart gift cards were sufficiently different from coupons—especially given the fact that … [the]

gift cards … had no expiration date"); *Taylor*, 2021 WL 5810294, at *10-11 ("[The] Promotional

Codes are not 'coupons' because they do not expire, can be used at any time, and are freely

transferrable.").[10]

---

[9] *Cf. Lopez v. Youngblood*, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) ("It is well established that, in <u>claims made or class reversion cases</u> where there is a maximum fund, <u>and unclaimed funds revert to the defendant,</u> it is appropriate to award class fund attorneys' fees based on the gross settlement fund.") (emphasis added).

[10] In fact, the lack of expiration date altogether "precludes the calculation of the redemption value of the" Automatic Account Credit Codes, *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127, 1133 (S.D. Cal. 2018), because "[t]he Court will be unable to determine what the value of the 'actually redeemed [Codes] will be until the expiration date … is reached."  *Rael*, 2021 WL 1226475, at *16.  Given the Codes' flexible characteristics, which Class Counsel carefully negotiated for the benefit of the Class, that day will never come.  The redemption period is, and will remain, ongoing.  This fact *would be* problematic if the Codes were "coupons" subject to the strictures of "CAFA[, which] requires district courts to consider the value of only those coupons 'that were actually redeemed' when calculating the relief awarded to a class."  *Id.*; *see also Seegert*, 377 F. Supp. 3d at 1133 ("To comply with § 1712(a), the coupons must first be distributed and then valued based on the number of coupons redeemed.").  But, as discussed, the Codes are not coupons, *see* Minute

---

Ultimately, the Automatic Account Credit Codes should be treated like cash for the purpose of calculating attorneys' fees as a percentage of the total settlement value.  Once distributed, Class Members have the option to use the Codes immediately or save them for a later date.  Because the Codes do not expire, their value does not revert to Defendant as a result of disuse; that value remains with Class Members.[11]

### 4.   The Codes Should Be Valued At Their Face Value

The Automatic Account Credit Codes should be treated like cash and valued at an amount equivalent to the aggregate face value, or "fair market value," of the WaPo Subscriptions to which the Codes provide access (*i.e.*, 100 cents on the dollar).  In this case, a total of 307,502 Automatic Account Credit Codes have been distributed to Class Members, including 112,450 Codes to Annual Class Members and 195,052 Codes to Four-Week Class Members.  Each of the Codes 112,450 distributed to Annual Class Members has a $20 face value and each of the 195,052 distributed to Four-Week Class Members has a $10 face value, giving the Automatic Account Credit Codes distributed under the Settlement an aggregate value of approximately $4.2 million.  Supplement Keough Decl. ¶¶ 12-13.

As the Ninth Circuit has acknowledged, "[f]air market value is generally understood to be '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect.'"  *Schwab v. Comm'r*, 715 F.3d 1169, 1178 (9th Cir. 2013) (quoting Black's Law Dictionary (9th ed. 2009)); *accord Martin v. Monsanto Co.*, 2017 WL 1115167, at *9 (C.D. Cal. Mar. 24, 2017); *Saavedra v. Eli Lilly*

---

Order at 1, and therefore CAFA's coupon provisions do not apply.  *See, e.g.*, *Online DVD*, 779 F. 3d 934, 953; *CLRB*, 465 F. App'x 617, 619; *Williamson*, 2017 WL 6033070, at *2; *Foos*, 2013 WL 5352969, at *3; *Tchoboian*, 2014 WL 10102826, at *5-6.

[11] *Cf. Hadley v. Kellogg Sales Co.*, 2020 WL 836673, at *5 (N.D. Cal. Feb. 20, 2020) ("The settlement in the instant case contains reversionary aspects.  Specifically, the settlement secures an $8,250,000 'voucher component' for the class.  Each voucher that makes up this component of the settlement expires after four months.  When a voucher expires, the value of the voucher effectively 'reverts' to Kellogg, as Kellogg is then under no obligation to make any payment.  Indeed, the Ninth Circuit has held that arrangements of this kind, in a case that involved vouchers that expired after two years, and not just four months, are reversionary in nature."); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1041 (9th Cir. 2019) ("The dance fee payment vouchers were set to expire in two years, at which time the 'value' of any unredeemed claims (i.e., of dance fee payments that class members had claimed, but had not yet cashed in by working on a scheduled Date of Performance) would revert to the defendant nightclubs.") (internal citations omitted).

*& Co.*, 2014 WL 7338930, at *4 (C.D. Cal. Dec. 18, 2014); *see also id.* (noting that "consumer value[, defined as] … the measure of the benefit that consumers believe they will obtain by using or owning a product[,] … is a subjective concept distinct from the fair market value concept") (internal quotation marks omitted).  "In other words, the fair market value of a thing is the amount of consideration someone would pay to acquire it." *Schwab*, 715 F.3d at 1178–79.  "In an ordinary market, price is a proxy for value.  Thus, the price paid for a good … can serve as a proxy for the value of a product[.]" *Saavedra*, 2014 WL 7338930, at *5; *Martin*, 2017 WL 1115167, at *9.[12]

Moreover, Class Counsel's valuation is consistent with the Ninth Circuit's approach in *Online DVD*, 779 F.3d 934, which held that gift cards or vouchers should be valued at 100 cents on the dollar for purposes of calculating attorneys' fees under the percentage-of-the-benefit method.  *See id.* at 952 n.11 ("[We] conclude the court did not abuse its discretion in valuing the Walmart gift cards at 100% of their face value. … [T]he court was within its discretion to value the gift cards at 100% of their face value."); *see also id.* at 951 n.9 ("[T]he gift cards in this settlement agreement … have cash value … because they are equal to a certain dollar amount[.]").  Numerous other courts in this Circuit have likewise valued non-coupon vouchers at their face value in determining total settlement value for the purpose of calculating an appropriate award of attorneys' fees.  *See, e.g.*, *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 n.87 (C.D. Cal. 2014) ("Where a settlement agreement provides for the distribution of transferrable vouchers that can be used to obtain free merchandise, courts treat the vouchers as having monetary value."); *Rael*, 2021 WL 1226475, at *8 ("[T]he Court concludes that the $6 vouchers provide Class Members with meaningful compensation and adequate purchasing power given the low prices common to much of Defendant's inventory. …

---

[12] The alternative to valuing the Codes based on "an objective evaluation of relative fair market values" associated with the WaPo Subscriptions would be to value them based on a "subjective inquiry of what an average consumer wants[.]" *Saavedra*, 2014 WL 7338930, at *5.  However, valuation based on "consumers' willingness to pay irrespective of what would happen in a functioning market (i.e. what could be called sellers' willingness to sell)" is not the proper method of valuation here.  *Id.*  Instead, the value of the Codes should be based on the objective purchase price of the WaPo Subscriptions.  Otherwise, a subjective valuation would yield an arbitrary amount unrelated to the amount of harm incurred by Class Members (*i.e.*, the amount paid for their WaPo Subscriptions, the purchase of which gave rise to their injuries).

[E]ach Claimant is guaranteed at least $6 in value if they elected the $6 voucher."); *Chaikin v. Lululemon USA Inc.*, 2014 WL 1245461, at *5 (S.D. Cal. Mar. 17, 2014) ("[T]he Court adopts the approach of the line of federal district court cases distinguishing credit vouchers, which require no additional purchase to redeem and <u>therefore operate like cash</u>, from coupons, which provide a discount or subsidy from a larger purchase and thus fall under the restrictions of section 1712(e).") (emphasis added); *Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, at *8 (S.D. Cal. Jan. 9, 2014) ("[T]he Merchandise Certificates are not 'coupons' because <u>they provide dollar-for-dollar value and are 'properly characterized as akin to cash.</u>'") (emphasis added); *Foos*, 2013 WL 5352969, *2 (finding that the "voucher is [ ] like a gift card or cash [because it has] an <u>actual cash value</u>") (emphasis added); *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *4, *14 & n.20 (N.D. Cal. Nov. 16, 2007).[13]  Thus, for the purpose of calculating attorneys' fees as a percentage of total settlement value, the Automatic Account Credit Codes here, like the product vouchers at issue in *Online DVD*, should be treated like cash in an amount equivalent to their face value.[14]

\* \* \*

In sum, in order to determine total settlement value for the purpose of calculating attorneys' fees under the percentage method, the Court should include the value of all Codes distributed to Class Members (including both redeemed and currently unredeemed Automatic Account Credit Codes), as well as notice and administration costs, any distribution of the residue via *cy pres*, any

---

[13] *See also In re Toys*, 295 F.R.D. at 454 ("[Defendant] has agreed to give all class members who submit valid and timely claims during the claims period transferable vouchers ranging from $5 to $30 in value. … <u>[T]he vouchers have a cash value and can be used to purchase items for which class members would otherwise have to pay money</u>[.] … Assuming there are 13.05 million class members, … the aggregate value of the relief to the settlement class would be between $65.25 million (assuming all class members received a $5 voucher) and $391.5 million (assuming all class members received a $30 voucher).") (emphasis added and internal footnote omitted).

[14] *See also Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255 (E.D. Pa. 2011) (finding that "the gift cards have actual cash value" in part because they "have no expiration date[ and] are freely transferable"); *id*. at 256 ("[T]he gift cards are more like 'cash' than 'coupons.'  In fact, because the class members are likely to shop at Rite Aid again, they may even prefer the $20 gift cards to the lesser value that would have been awarded had the parties opted to provide a cash award."); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 305 (E.D. Pa. 2003) ("The parties agree that the vouchers are worth $12,300,365 to the class.  We agree.  The vouchers have a face value of $35.  There are 351,439 class members who will receive the vouchers.  A simple multiplication yields $12,300,365.00.").

award of attorneys' fees and litigation expenses, and any incentive award granted.  As noted above, 307,502 Automatic Account Credit Codes have been distributed to Class Members and, based the face value of the WaPo Subscriptions to which those Codes provide access (*i.e.*, the ordinary retail price of the WaPo Subscriptions sold in the consumer market), the aggregate value of the Codes is estimated at $4,199,520.00.  Adding that figure to the $2,400,000.00 non-reversionary cash Settlement Fund – from which Class Counsel's requested fee award (inclusive of costs and expenses), Plaintiff's Jordan's proposed incentive award, and the costs of notice and administration are to be paid – the total value of the common fund is estimated at $6,599,520.00.  Under Ninth Circuit precedent, this estimated nearly $6.6 million total settlement value functions as the denominator against which Class Counsel's fee award should be assessed for the purpose of awarding fees as a percentage of total settlement value, and it should not be reduced by any amounts ultimately distributed via *cy pres*, administrative costs, litigation expenses, any incentive award to the Class Representative, the value of any Automatic Account Credit Codes still unredeemed as of this date, or the fee award itself.

### 5. <u>All Relevant Factors Favor An Upward Departure From The Ninth Circuit's Benchmark</u>

Under the "percentage of the benefit" method for determining attorneys' fees, "[t]he Ninth Circuit has adopted a benchmark of 25% of the total settlement; however, that amount may be 'adjusted upward or downward to account for any unusual circumstances involved in [the] case.'" *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017).[15]  Here, the percentage that Class Counsel seeks is slightly in excess of the benchmark of 25% established by the Ninth Circuit.  Nevertheless, an upward adjustment from the benchmark for a fee award of 30%

---

[15] Specifically, the "benchmark … can be adjusted upward or downward based on several factors, including (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases." *Alvarez*, 2017 WL 2214585, at *3 (Orrick, J.) (citing *Vizcaino*, 290 F.3d at 1048-50).  Similarly, where a court is calculating a fee award based solely on counsel's lodestar, the lodestar figure may be adjusted upward or downward by use of a multiplier to account for many of the same factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (identifying twelve factors courts may consider in analyzing the reasonableness of an attorneys' fee request).

of the common fund is appropriate for the reasons previously discussed in detail at Part

IV(A)(3)(a)-(e) of Plaintiff's First Fee Motion. *See* ECF No. 52 at 13-21 (discussing factors

supporting upward adjustment to the Ninth Circuit's 25% benchmark). Without repeating every

argument made therein, Plaintiff will elaborate on a few factors particularly relevant here.

First, Class Counsel "achieved exceptional results for the class." *Vizcaino*, 290 F.3d at

1048.[16] Indeed, in granting final approval, this Court acknowledged that "there is potentially very

significant relief provided to the class given the value and transferability of the [Automatic

Account Credit] Codes[,]" and that, therefore, "[a] significant award of fees is merited[.]" Minute

Order at 1. Class Counsel's exceptional results are underscored by, among other things, the fact

that not a single one of the approximately 320,000 total Settlement Class Members objected to the

Settlement. *See* 11/3/21 Keough Decl. ¶¶ 7, 22; *see also* Supplemental Keough Decl. Ex. A.

"[T]he lack of any Class Member objections also supports the fee award." *Foster v. Adams &*

*Assocs., Inc.*, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022) (citation omitted); *see also Elkies*

*v. Johnson & Johnson Servs., Inc.*, 2020 WL 10055593, at *10 (C.D. Cal. June 22, 2020) ("The

dearth of opposition from class members perhaps speaks most loudly in favor of approving the fee,

litigation cost, settlement administration cost and service award requests."); *accord Rodriguez v.*

*W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).[17]

---

[16] "'The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award.'" *Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700, at *6 (N.D. Cal. Aug. 24, 2020) (quoting *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009)); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) (Orrick, J.).

[17] *See also Deluca*, 2020 WL 5071700, at *6 ("The reaction of the Class has been unanimously positive. … All eligible individuals are participating in the settlement. The Settlement Administrator has not received any objections or requests for exclusion. … This factor therefore supports an award of the requested fees[ of 33%]."); *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) (Orrick, J.) ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.' 'A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it. … [T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8-9 (S.D. Cal. June 1, 2010) (awarding 33.33%: "[A] departure from the 25% 'benchmark' is warranted in this case … in [part because] not a single class member objected to Plaintiff's counsel's [fee request.]"); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 270 (E.D. Cal. 2014); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

1    Moreover, Class Counsel's "performance generated benefits beyond the cash settlement

2  fund." *Vizcaino*, 290 F.3d at 1049.  Specifically, in addition to the cash and in-kind relief

3  discussed above, the Settlement also provides injunctive relief that requires WaPo to revise its

4  advertisements, disclosures, and terms to ensure that millions of current and future subscribers

5  make informed decisions related to purchasing decisions and cancellation.  *See* Settlement ¶ 2.3;

6  *see also* 9/3/21 Klorczyk Decl. ¶ 26.[18]  As "Ninth Circuit courts consistently have held[], where

7  class counsel achieves significant benefits that are not accounted for in the dollar value of the

8  common settlement fund, the court 'should consider the value of [such] relief obtained as a

9  'relevant circumstance' in determining what percentage of the common fund class counsel should

10  receive as attorneys' fees.'"  *Perkins*, 2016 WL 613255, at *14 (citations omitted); *see also Staton

11  v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *see also Pokorny v. Quixtar, Inc.*, 2013 WL

12  3790896, at *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive

13  relief obtained as a result of settlement in determining the appropriate fee.") (citation omitted);

14  *Harris v. Amgen Inc.*, 2017 WL 6048215, at *7 (C.D. Cal. Apr. 4, 2017) ("[I]n common fund

15  cases, [courts in this Circuit] court may consider the value of injunctive … relief in setting

16  attorneys' fees[.]") (citation omitted).  Thus, although Class Counsel's nearly $6.6 million

17  valuation of the instant settlement does not account for the value of the injunctive relief secured by

18  the instant Settlement, it is relevant that their efforts in this case generated benefits beyond the

19  settlement fund, and they should be rewarded for achieving this exceptional result.  *See e.g.*, *Linney

20  v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234

21  (9th Cir. 1998) (granting fee award of one-third common fund where settlement provided

22  additional non-monetary relief, namely "injunctive relief with a value, although no doubt

23

---

[18] The injunctive relief is broad, meaningful, and resolves most of the complaints that Plaintiff
raised concerning Defendant's advertising and notice practices.  *Id.*  The lawsuit focused largely on
the clarity, content, and timing of Defendant's disclosures and statements (and omissions)
concerning its billing practices, cancellation policy, and other material automatic renewal offer
terms associated with the WaPo Subscriptions.  The formal injunctive relief ensures that every
future WaPo subscriber will receive – at the time of sign-up – clear and conspicuous written notice
of all of WaPo's subscription membership terms, cancellation policies, billing practices in a
manner consistent with the intentions of the California legislature.  *See* 9/3/21 Klorczyk Decl. ¶ 5.
Thus, Plaintiff's and Class Counsel's claims and arguments caused Defendant to change its
conduct in multiple ways that benefit both current Class Members and future California consumers
who may enroll in an automatically renewing WaPo Subscription.

1   substantial, that can only be estimated"); *Larsen*, 2014 WL 3404531, at *9 (Orrick, J.).

2   Furthermore, "the duration of the case—lasting over two years to date—counsels in favor

3   of the attorneys' fees award." *Koenig v. Lime Crime, Inc.*, 2018 WL 11358228, at *7 (C.D. Cal.

4   Apr. 2, 2018) ("Class Counsel has litigated this case on a contingent fee basis, receiving no

5   compensation at all and incurring significant expenses for the two years they have been litigating

6   this case; this too counsels in favor of approving the award."); *see also Singer v. Becton Dickinson*

7   *& Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (finding an upward "departure from the

8   25% 'benchmark' is warranted" in part because "class counsel took this case on a contingent fee

9   basis and had to forego other financial opportunities to litigate it for more than two years").[19]

10   Finally, the size of the total settlement indicates that a Class Counsel's requested fee award

11   is reasonable.[20]  A review of California cases in the Ninth Circuit "reveals that courts usually

12   award attorneys' fees in the 30-40% range in … class actions that result in recovery of a common

13   fund under $10 million." *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27,

14   2010).  Indeed, as this Court has explained, "[f]ee award percentages generally are higher in cases

15   where the common fund is below $10 million." *Alvarez*, 2017 WL 2214585, at *3 (Orrick, J.)

---

17   [19] Moreover, "'[t]he importance of assuring adequate representation for plaintiffs who could not
18   otherwise afford competent attorneys justifies providing those attorneys who do accept matters on
     a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.'" *Deluca*,
19   2020 WL 5071700, at *6 (quoting *In re Omnivision*, 559 F. Supp. 2d at 1047).  Here, Class
     "Counsel … did not receive any payment for their time spent[ litigating this case], and did not
20   receive reimbursement for out-of-pocket costs incurred during the litigation.  'This substantial
     outlay, when there [was] a risk that none of it [would] be recovered, further supports the award of
21   the requested fees.'"  *Id.*

22   [20] Generally, "[d]istrict courts in this [C]ircuit have routinely awarded fees of **one-third** of the
     common fund or higher after considering the particular facts and circumstances of each case."
     *Beaver*, 2017 WL 4310707, at *10 (emphasis added) (awarding 33% in fees); *see also, e.g.*, *Morris*
23   *v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Vizcaino*, 290
     F.3d at 1047; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming
24   33.5% fee award); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming
     award of 33% of $12 million common fund); *Paul*, 886 F.2d at 272; *Foster*, 2022 WL 425559, at
25   *10 (approving "Plaintiff's request for [attorneys' fees equal in the amount of] $1,000,000 or 33.3
     percent of the Settlement Fund" and reasoning that, although the request "is higher than the
26   benchmark for a reasonable award[, t]he Court nevertheless finds it appropriate under the
     circumstances"); *Barnes*, 2013 WL 3988804, at *4 (awarding fees in the amount of 33% of the
27   common fund where "[c]ounsel assumed substantial risk, litigated risk on a contingent basis, and
     are receiving fees that are fair considering those factors"); *Deluca*, 2020 WL 5071700, at *6 ("'[I]n
28   most common fund cases, the award exceeds that [25%] benchmark.'") (quoting *In re Omnivision*,
     2007 WL 4293467, at *10).

(citations omitted).  Thus, recent decisions out of this District confirm that similar class action settlements "with a relatively small fund of under $10 million will 'often result in <u>fees above 25%</u>.'"  *Dixon v. Cushman & Wakefield W., Inc.*, 2022 WL 1189883, at *10 (N.D. Cal. Apr. 21, 2022) (emphasis added and citations omitted); *accord Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, 2021 WL 4133860, at *5 (N.D. Cal. Sept. 10, 2021) ("Here, class counsel is seeking an award of … approximately one third (33%) of the common fund.  The court determines that the requested fees are warranted in this case for several reasons. … The relatively small common fund weighs in favor of an upward departure from the 25% benchmark.").[21]

Accordingly, an upward deviation from the benchmark is appropriate, and the Court should grant Plaintiff's fee request in full.

## IV.   THE PARTIES HAVE SELECTED APPROPRIATE *CY PRES* RECIPIENTS

Next, "assuming the Court grants a lower Fee or Inventive Award, [and] to avoid a windfall to class members who submitted claims," the Court directed Plaintiff to identify "a *cy pres* organization agreed-to by Class Counsel and Defendant[.]"  Minute Order at 2.  The Parties have selected the **Legal Aid Association of California** as the *cy pres* recipient for any excess cash funds remaining in the Settlement Fund following distribution of the Settlement Fund as provided for in the Settlement Agreement.  The Parties have further selected the **San Francisco Unified School District** as the *cy pres* recipient of any "Automatic Account Credit Code[s that were] emailed to a Settlement Class Member … [but] returned as non-deliverable."  Settlement ¶ 2.2(j).

Here, the Settlement Agreement approved by the District Court clearly contemplated the distribution of any excess funds that might remain after distribution to all Class Members.  In that case, none of the settlement fund will revert to Defendant; instead, any amount remaining in the Net Settlement Fund <u>after distribution</u> from <u>expired, uncashed settlement checks</u> are to be paid by the Settlement Administrator in a *cy pres* payment to the Legal Aid Association of California.  *See*

---

[21] *See also Burden v. SelectQuote Ins. Servs.,* 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) ("[A]n upward adjustment of the benchmark to 33% is warranted in this case. … Awarding fees at a rate higher than the 25% benchmark is appropriate in cases involving a relatively small settlement fund."); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (percentages greater than 30% tend to be awarded from class funds of less than $10 million).

*id*. ¶ 2.2(j) ("If a check issued to a Settlement Class Member is not cashed within one hundred and eighty (180) days after the date of issuance, such funds shall revert to the Legal Aid Association of California, a 501(c)(3) entity[.]").  In other words, only if funds remain at that point will any amount be distributed to the *cy pres* recipient.  The Settlement does not provide for distribution of any portion of the Settlement Fund to the *cy pres* recipient prior to distribution to Class Members.

As the Ninth Circuit has recognized, "the '*cy pres* doctrine allows a court to distribute underlined unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (emphasis added) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)).  "For purposes of the *cy pres* doctrine, a class-action settlement fund is 'non-distributable' when 'the proof of individual claims would be burdensome or distribution of damages costly.'"  *Id*.  However, under Ninth Circuit law, "this issue becomes ripe only if the entire settlement fund is not distributed to class members."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (citing *Six (6) Mexican Workers*, 904 F.2d at 1313 (Fernandez, J., concurring)).  And here, as noted, the cash Settlement Fund has not yet been distributed.  Thus, "[t]hat trigger point has not been reached[ and] no *cy pres* disbursement is imminent[,]" given that "the fund in this case may well be depleted before *cy pres* kicks in."  *Id*.

Pursuant to the terms of the Settlement Agreement, in the event the Court grants a lower award of attorneys' fees or incentive award than the amounts requested, the excess remaining in the Net Settlement Fund will result in a *pro rata* increase of the amount of each eligible Class Members' cash claim.  *See* Settlement ¶¶ 8.1, 8.3.  "This *pro rata* distribution ensures that Settlement Class Members will receive the maximum amount of the settlement fund and that no money will revert back to Defendant."  *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020).  In the same vein, the Settlement does not allow for that excess of funds to be re-routed to the *cy pres* recipient when a further distribution to Class Members is administratively feasible.  To do so would be to circumvent the intent of the Parties and the express terms of the Settlement.  "[S]uch an intrusion into the private parties' negotiations would be improper and disruptive to the settlement process[.]"  *Lane*, 696 F.3d at 820 (citation

1   omitted); *see also Connor v. JPMorgan Chase Bank, N.A.*, 2021 WL 1238862, at *2 (S.D. Cal.

2   Apr. 2, 2021) ("[T]he Settlement Agreement's brief reference to a *cy pres* distribution of remaining

3   funds does not necessarily suggest that the parties contemplated such a large sum[] … be directed

4   towards a *cy pres* recipient <u>when distribution to claimants remains viable</u>.") (emphasis added).  As

5   courts in this Circuit have repeatedly recognized, "[n]either the district court nor this court is

6   empowered to rewrite the settlement agreed upon by the parties." *Officers for Just. v. Civ. Serv.*

7   *Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982); *see also Rael*, 2021

8   WL 1226475, at *13 ("[T]he text of settlement agreements bind the Court.  Plaintiffs are masters of

9   their own case[.]") (citation omitted); *Cooks v. TNG GP*, 2020 WL 5535397, at *8 (E.D. Cal. Sept.

10  15, 2020) ("[The Court] cannot rewrite a settlement agreement.").

11          Additionally, as other courts in this Circuit have acknowledged, when funds remain "the

12  settlement should presumptively provide for further distributions to participating class members

13  unless the amounts involved are too small to make individual distributions economically viable or

14  other specific reasons exist that would make such further distributions impossible or unfair."

15  *Connor*, 2021 WL 1238862, at *2 (internal quotation marks omitted) (citation omitted).  Thus,

16  here, if funds remain in the Net Settlement Fund after a first round of distribution to all cash

17  claimants – whether because the Court awarded less than the full amounts Plaintiff requests for

18  attorneys' fees or an incentive award, or another reason – and a subsequent distribution to all Class

19  Members proves feasible, then the Class Members who submitted valid cash claims would still be

20  the "best class of beneficiaries" for those funds, not the *cy pres* recipient.  *In re Easysaver Rewards*

21  *Litig.*, 906 F.3d 747, 760 (9th Cir. 2018) ("*Cy pres* provides a mechanism for distributing

22  unclaimed funds to the next best class of beneficiaries."); *see also Connor*, 2021 WL 1238862, at

23  *2 ("Ninth Circuit precedent regarding *cy pres* distributions affirms the Court's view that <u>a second</u>

24  <u>distribution to class members, where possible and not contrary to the aims of the settlement</u>

25  <u>agreement, is often preferable to a *cy pres* distribution</u>.") (emphasis added and internal footnote

26  omitted); *Cooks*, 2020 WL 5535397, at *9 ("To ensure that the settlement retains some connection

27  to the plaintiff class and the underlying claims, however, a *cy pres* award <u>must qualify as 'the next</u>

28  <u>best distribution' to giving the funds directly to class members</u>.") (emphasis added and internal

quotation marks omitted) (citing *Dennis v. Kellogg* Co., 697 F. 3d 858, 865 (9th Cir. 2012));

*Rodriguez*, 563 F.3d at 966 (noting that *cy pres* distribution "is a disfavored substitute for

distribution of benefits directly to class members") (citations omitted); *In re Anthem, Inc. Data*

*Breach Litig.*, 327 F.R.D. 299, 333 (N.D. Cal. 2018) (acknowledging "the law's general preference

for *cy pres* awards to be limited to scenarios where it is not feasible to make further distributions to

class members"). "Accordingly, … directing the remaining funds towards the claimants would

further the settlement's purpose of compensating claimants for potential violations of the [ARL]."

*Connor*, 2021 WL 1238862, at *2.

Finally, any *cy pres* distribution pursuant to the Settlement in no way diminishes any

benefit available to the Class and should be considered as part of the constructive common fund

established for the benefit of the Class for the purpose of calculating attorneys' fees as a percentage

of Total Settlement Value.  *See In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL

1288377, at *8 (N.D. Cal. Mar. 18, 2020), *aff'd sub nom.*, 21 F.4th 1102 (9th Cir. 2021) ("The

Court hereby rejects Objector['s ] hyperbolic argument that because the *cy pres* does not benefit

the class, the appropriate fee award is zero.  The Court further rejects his argument that in

calculating attorneys' fees, the Court should discount the Settlement Fund to reflect that the money

is going to *cy pres* organizations rather than to class members. … [W]here the settlement fund is

non-distributable, counsel should not be penalized for fashioning a *cy pres*-only settlement that

stands to accomplish some good.") (emphasis added and internal citations omitted).[22]

## V.    THE REQUESTED INCENTIVE AWARD FOR THE CLASS REPRESENTATIVE IS FAIR AND REASONABLE

In recognition of her efforts on behalf of the Class, and subject to the approval of the Court,

Defendant has agreed to pay the Class Representative up to $5,000 as appropriate compensation for

her time and effort serving as the class representative in this litigation.  *See* Settlement ¶ 8.3.

"In the Ninth Circuit, courts typically find an incentive award of $5,000 to be

---

[22] *See also supra* (collecting cases); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437-38 (2d Cir. 2007) (holding that the attorneys' fee should be calculated on the entire value of the settlement fund, which would include a *cy pres* distribution, rather than on the amount that was directly distributed to class members: "the entire fund created by the efforts of counsel presumably is 'paid to the class,' even if some of the funds are distributed under the *Cy Pres* Doctrine"), cited with approval by Ninth Circuit in *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011).

1    'presumptively reasonable.'"  *Arredondo v. Sw. & Pac. Specialty Fin., Inc.*, 2022 WL 2052681, at

2    *15-16 (E.D. Cal. June 7, 2022) (citations omitted); *see also, e.g.*, *In re Mego*, 213 F.3d at 463

3    (endorsing $5,000 service awards to named representatives).  Following suit, "[s]everal courts in

4    this District have indicated that [an] incentive payment[] of … $5,000 is a reasonable amount."

5    *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012).[23]  Here,

6    throughout the litigation, Ms. Jordan held regular meetings with Class Counsel to receive updates

7    on the progress of the case and to discuss strategy.  *See* 9/3/21 Jordan Decl. ¶¶ 3-10; 9/3/21

8    Klorczyk Decl. ¶¶ 53-55.  She assisted in Class Counsel's pre-suit investigation by discussing her

9    experiences and providing information on her purchase and use of one of Defendant's WaPo

10   Subscriptions, among other matters.  *Id*.  Ms. Jordan also assisted in drafting the Complaint, and

11   she reviewed the Complaint for accuracy before it was filed.  *Id*.  She was also intimately involved

12   in the settlement process, and has continued to keep abreast of settlement progress to date.  *Id*.  Ms.

13   Jordan took significant time away from work and personal activities to initiate and litigate this

14   action, and she was prepared to litigate this case to a verdict if necessary.  *Id*.  Her dedication and

15   efforts have conferred a significant benefit on hundreds of thousands of California purchasers of

16   WaPo Subscriptions.  Thus, "given the time and effort Plaintiff expended on behalf of the class, an

17   award of $5,000 is not excessive."  *Ko v. Natura Pet Products, Inc.*, 2012 WL 3945541, at *15

18   (N.D. Cal. Sept. 10, 2012); *see also Moreno*, 2021 WL 4133860, at *7.

19   **VI.    CONCLUSION**

20          For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) approve

21   attorneys' fees, costs, and expenses in the amount of $2,000,000; (2) grant Plaintiff an incentive

22   award of $5,000 in recognition of her efforts on behalf of the Class; and (3) award such other and

23   further relief as the Court deems reasonable and just.

24

25   _____

26   [23] *See also Dixon*, 2022 WL 1189883, at *13 ("[A] service award of $5,000 … reflects the amount
     deemed presumptively reasonable in this Circuit[.]"); *Rabin v. PricewaterhouseCoopers LLP*, 2021
     WL 837626, at *9 (N.D. Cal. Feb. 4, 2021) ("A $20,000 award exceeds the typical incentive award

27   in the Ninth Circuit, where $5,000 is presumptively reasonable."); *In re Chrysler-Dodge-Jeep
     Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11,

28   2019) ("The request of $5,000 is reasonable as that amount is the presumptive incentive award in
     [the Northern District of California].").

1

Dated:  August 3, 2022                     Respectfully submitted,

2                                          **BURSOR & FISHER, P.A.**

3                                          By:  _____/s/ Frederick J. Klorczyk III_____

4                                          Frederick J. Klorczyk III (State Bar No. 320783)
                                           888 Seventh Avenue
5                                          New York, NY  10019
                                           Telephone: (646) 837-7150
6                                          Facsimile: (212) 989-9163
                                           E-Mail: fklorczyk@bursor.com

7                                          **BURSOR & FISHER, P.A.**

8                                          Neal J. Deckant (State Bar No. 322946)
                                           Julia K. Venditti (State Bar No. 332688)
9                                          1990 North California Boulevard, Suite 940
                                           Walnut Creek, CA  94596
10                                         Telephone: (925) 300-4455
                                           Facsimile: (925) 407-2700
11                                         E-Mail: ndeckant@bursor.com
                                                         jvenditti@bursor.com

12                                         *Class Counsel*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28